## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

_____

| | | |
|---|---|---|
| BLACKSMITH OTR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| vs. | ) | |
| | ) | |
| | ) | **Jury Trial Demanded** |
| OTR WHEEL | ) | |
| ENGINEERING, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

### COMPLAINT

### DEMAND FOR JURY TRIAL, INJUNCTIVE RELIEF SOUGHT

Plaintiff Blacksmith OTR, LLC (hereinafter "Blacksmith" or "Plaintiff"),

brings this action against OTR Wheel Engineering, Inc. ("Defendant") for infringing

Blacksmith's patented design, U.S. Patent No. D893,404 (" '404 Patent") (Exhibit

1); declaratory judgment of no implied patent license; breach of a trademark license

agreement; declaratory judgment that termination of the trademark license

agreement by Blacksmith was proper; trademark infringement, false designation or

origin and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq*.;

unfair and deceptive trade practices under the laws of the State of Georgia pursuant to the Uniform Deceptive Trade Practices Act, Ga. Code § 10-1-373; and common law unfair competition under Georgia law. Blacksmith seeks all available relief, including without limitation injunctive relief, declaratory relief, treble damages, accounting of profits, compensatory damages, reasonable royalty, pre-judgment interest, attorneys' fees, and all costs resulting from Defendant's infringement of Blacksmith's patented design, breach of the trademark license agreement by Defendant, breach of Blacksmith's trademarks, unfair competition, and unfair and deceptive trade practices.

## THE PARTIES

1.    Blacksmith is a limited liability company formed under the laws of Georgia, with a principal place of business at 6 Riverside Industrial Park NE, Rome, Georgia, 30161-7301.

2.    Upon information and belief, Defendant is a corporation formed under the laws of Georgia, with a principal place of business at 195 Chatillon Road, Ste. 4, Rome, Georgia 30161.

3.    Upon information and belief, Defendant may have reorganized itself into one or more related, affiliated, and/or successor entities.  As discovery proceeds, Blacksmith reserves the right to amend the pleadings to identify all proper defendants.

4. Defendant does business in the Northern District of Georgia and nationally in connection with the sale of tires and wheels.

5. Defendant conducts business in this District and Division at its corporate headquarters, located at 195 Chatillon Road, Ste. 4, Rome, Georgia 30161, which is a fixed physical location that it possesses and controls and where it has employees.

6. Defendant also does business nationally and internationally through one or more websites, including <https://www.otrwheel.com>, and through a national and international network of authorized dealers and retailers.

## JURISDICTION AND VENUE

7. This is an action arising under the patent laws of the United States, including 35 U.S.C. §§ 271, 281, 283, 284, 285, and 289; and also under the Lanham Act, 15 U.S.C. § 1121(a), *et seq*.

8. Blacksmith also files this action seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, concerning no implied license to use the patented design at issue, and for a declaratory judgment concerning Blacksmith's proper termination of a license agreement, discussed further below.

9. Blacksmith also files this action for breach of contract, unfair and deceptive trade practices, and unfair competition, as recited below.

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) as to those claims not within its original jurisdiction, based upon the principles of supplemental jurisdiction, as they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11.    This Court has personal jurisdiction over Defendant. Defendant's actions establish such minimum contacts that jurisdiction comports with the Georgia long-arm statute, O.C.G.A. § 9-10-91, and the United States Constitution.

12.    Upon information and belief, Defendant has conducted and does conduct business within the State of Georgia and maintains a regular and established place of business in the Northern District of Georgia, including but not limited to its headquarters in Rome, Georgia.

13.    Upon information and belief, Defendant, directly and/or through subsidiaries, intermediaries, affiliates, related entities, or others, ships, distributes, offers for sale, sells, and/or advertises (including through its web pages) its products and services (including those accused of infringement) described herein within this District.

14.    Upon information and belief, Defendant has committed acts of patent infringement within this District.

15.    Upon information and belief, Defendant has contributed to or induced (instructing and supplying others with infringing products and instructions for use) patent infringement by others in this District.

16.    Defendant has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that it will be purchased and used by purchasers in the Northern District of Georgia.

17.    Upon information and belief, Defendant has committed acts of patent infringement within the State of Georgia and, more particularly, within the Northern District of Georgia.

18.    Upon information and belief, Defendant is asserting that it has an implied license and other rights to use Blacksmith's design patent, with such implied license and other rights being asserted in this District and based on conduct allegedly occurring in or affecting this District.

19.    As to the license agreement that is part of this dispute and for which Blacksmith claims breach and seeks a declaratory judgment, that license agreement was entered into in this District, Defendant and Blacksmith are both located in this District, and Defendant has purported to perform its obligations under that license agreement in this District.

20.    Venue is proper in the Northern District of Georgia under 28 U.S.C. §§ 1391 and 1400(b) because Defendant has a regular and established place of business

in this District as described herein, Defendant is a resident of this State, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## **BACKGROUND**

21.    The late Fred Taylor was an innovative businessman in Rome, Georgia who grew successful businesses supplying the tire and wheel industry.

22.    Mr. Taylor and his businesses developed a variety of different intellectual property rights, including patents and trademarks.

23.    Mr. Taylor is the named inventor on Blacksmith's '404 Patent directed to a particular tire design.  A copy of the '404 Patent is attached hereto as Exhibit 1. One of the figures from the '404 Patent is depicted below:



24.    Blacksmith, which at one point was partially owned and/or controlled by Mr. Taylor, acquired ownership of the following trademarks: OUTRIGGER, STABILIZER, and WEARMASTER (collectively, the "Licensed Marks"), for use in connection with tires.  Those rights are evidenced by certain trademark filings in

the United States and foreign countries, including U.S. Trademark Registration Nos. 2288934, 2365742, 2640897, and U.S. Trademark Application No. 98004596. Copies of filings related to these trademarks are attached hereto as Exhibits 2-5.

25.    Blacksmith also owns trademark rights in the marks LIGHTNING and LIGHTNING BOLT (collectively, the "Unlicensed Marks") for use in connection with tires, including U.S. Trademark Registration No. 5,525,159. Exhibit 6.

26.    At one point during Mr. Taylor's lifetime, Blacksmith and Defendant (and related predecessors and affiliates) were affiliated due to Mr. Taylor's ownership interests in each entity.

27.    By virtue of decades of continuous use, Blackstone's Licensed Marks and Unlicensed Marks have become synonymous with high quality products that enables consumers to confidentiality associate Blacksmith and its products with its Licensed Marks and Unlicensed Marks. Blacksmith, including through its predecessors in interest, has built significant and valuable goodwill in its marks.

28.    Blacksmith has expended substantial funds development and protection of its marks and the associated goodwill that now accompanies those marks.

29.    Blacksmith and Defendant, with Mr. Taylor signing on behalf of both entities, entered a Trademark License Agreement concerning the Licensed Marks on or about May 2, 2019 (the "Trademark License Agreement").  A copy of this Trademark License Agreement is attached hereto as Exhibit 7.

30.    Through a series of transactions, Blacksmith and Defendant are no longer commonly-owned businesses and the companies no longer involve Mr. Taylor, who is now deceased. Indeed, the two companies are competitors.

31.    Through a separate series of transactions and agreements, Blacksmith became the owner of all right, title, and interest in and to the '404 Patent, including the right to seek remedies for any and all past, present, and future infringements.

32.    Therefore, Blacksmith is the owner of all rights associated with the Licensed Marks, including those rights licensed to Defendant under the Trademark License Agreement, the Unlicensed Marks, as well the '404 Patent.

## THE CURRENT DISPUTE

33.    Pursuant to the Trademark License Agreement, Blacksmith granted Defendant a license to advertise, sell, distribute, and exploit products using the Licensed Marks. In exchange, Defendant agreed to make quarterly royalty payments to Blacksmith in the amount of three percent of Net Sales of those products, beginning after 2020, all as set forth and defined in the Trademark License Agreement. Defendant was also obligated to provide quarterly royalty reports.

34.    As of early 2022, Blacksmith became aware that Defendant had not paid any royalties or provided any Royalty Reports for 2021, as it had agreed under the Trademark License Agreement. Through a series of communications in 2022, Blacksmith notified Defendant of its concerns over Defendant's breach of the

Trademark License Agreement and afforded Defendant various opportunities to cure the breach.

35.    Defendant finally sent a payment purportedly for its 2021 sales to Blacksmith on or about October 2022; however, the payment appeared to fall far short of royalties Blacksmith believed that Defendant owed in accordance with the Trademark License Agreement. Blacksmith believed, and continues to believe, that Defendant was underreporting its net sales of products sold under the Licensed Marks.

36.    On February 17, 2023, with Defendant having failed to cure the breach, Blacksmith notified Defendant that it was terminating the Trademark License Agreement. Shortly thereafter, Defendant sent a payment for its 2022 sales to Blacksmith, which again, Blacksmith believed to fall far short of royalties owed for the relevant time period.

37.    Thereafter, Defendant attempted to forestall the termination, claiming it had not been properly notified of any breach and that it had, in any event, cured the breach in a timely manner under the Trademark License Agreement.  Defendant also provided reports of its alleged sales of products under the Licensed Marks, purportedly to back up its royalty payments.  Defendant was adamant that it had reported all sales and paid the full royalty.

38.    Concerned that Defendant was not providing accurate information concerning its sales, Blacksmith repeatedly asked for backup information and even requested an audit.  Defendant insisted it had reported all sales from all of its suppliers and assured Blacksmith it was not in breach of the Trademark License Agreement because all sales had been reported and all royalties had been paid.

39.    In an effort to independently verify Defendant's representations, Blacksmith contacted Defendant's manufacturers, who notably use molds belonging to Blacksmith to produce the products being supplied to Defendant. The manufacturers confirmed Blacksmith's suspicion that Defendant's purchase of products covered by the Trademark License Agreement from Defendant's manufacturers were substantially greater than the quantity of products that Defendant had previously provided in its royalty reports.

40.    Upon information and belief, Defendant hid, concealed, and failed to pay royalties on a substantial volume of sales that were subject to the Trademark License Agreement.

41.    Upon information and belief, Defendant hid, concealed, and failed to pay royalties on *any* foreign sales of products bearing the Licensed Marks, despite the Trademark License Agreement being worldwide in scope.

42.    Upon information and belief, Defendant withheld and failed to report information and royalties concerning its sales, despite repeated and specific requests

from Blacksmith and written assurances by Defendant that all had been reported and paid.

43.    Upon information and belief, Defendant intentionally deceived Blacksmith about its sales and royalties in order to stave off litigation, prevent termination of the Trademark License Agreement, and stall Blacksmith's efforts to protect and enjoy its intellectual property rights.

44.    As of February 17, 2023, Defendant had not reported all sales covered by the Trademark License Agreement.

45.    As of February 17, 2023, Defendant had failed to pay all royalties for sales covered by the Trademark License Agreement.

46.    As of February 17, 2023, Defendant was in breach of the Trademark License Agreement.

47.    Under the Trademark License Agreement, Defendant was afforded 90 days to cure its breach.

48.    As of May 19, 2023, Defendant had not reported all sales covered by the Trademark License Agreement.

49.    As of May 19, 2023, Defendant had failed to pay all royalties for sales covered by the Trademark License Agreement.

50.    Defendant is in breach of the Trademark License Agreement and failed to timely cure that breach.

51.     Defendant also continues to use the Licensed Marks in commerce in connection with the sale, offer for sale, and advertising of tires, including at least as shown on its websites, <https://www.otrwheel.com/tires>, (Exhibit 8); <https://www.otrb2b.com/tires-construction>, (Exhibit 9).

52.     At the same time Blacksmith was requesting accurate information from Defendant about its sales under the Trademark License Agreement, Blacksmith also became aware that Defendant was advertising and selling tires that appeared to be covered by other intellectual property rights owned by Blacksmith, but without Blacksmith's permission.

53.     By way of example only, Blacksmith learned that Defendant was selling products that infringed upon the '404 Patent (the "Accused Products"), including those Defendant labeled as "LIGHTNING."

54.     When Blacksmith asked whether Defendant had any license to sell the Accused Products, Defendant was unable to produce any written agreement, saying instead it needed to "investigate" the issue.

55.     Defendant conceded that it has sold products covered by the '404 Patent.

56.     Almost two months later, Defendant responded, further conceding that it had no written license agreement to use the '404 Patent.

57.     Defendant has proposed various reasons why it could use the '404 Patent without Blacksmith's permission.  Defendant claimed, for example, that one of its "affiliates" acquired rights to use the '404 Patent through separate transactions.  When it offered this explanation, however, Defendant refused to provide documents concerning the transactions.  Even when it did provide documents later, Defendant heavily redacted them.  As Blacksmith later discovered, those redacted portions flatly contradicted Defendant's claim to have acquired rights to use the '404 Patent.

58.     Unable to rely on these transactions giving it rights, Defendant also claims it has an "implied license" to use the '404 Patent and that Blacksmith is "equitably estopped" from asserting infringement.  Defendant has provided virtually no evidence to corroborate these claims, and what evidence it has provided is legally insufficient.

59.     Blacksmith has further determined that other products apparently covered by its intellectual property have appeared on Defendant's website.  For example, Blacksmith further discovered that Defendant was advertising or otherwise offering for sell products under Blacksmith's LIGHTNING BOLT trademark, including at least as shown on its website, <https://www.otrb2b.com/tires-construction>. *See* Exhibit 9.  While Defendant has denied current sales or plans to continue selling these products, it has not responded to Blacksmith's requests concerning past sales.

60.     Given Defendant's unwillingness to provide this information, its misrepresentations concerning the alleged transactions that provided it rights to use the '404 Patent, and its apparent withholding of information concerning its sales under the Trademark License Agreement, Blacksmith has every reason to believe additional misuse of its intellectual property has occurred.   As such, Blacksmith reserves the right to amend its claims as the case proceeds.

## COUNT I – WILLFUL DIRECT PATENT INFRINGEMENT
### 35 U.S.C. § 271(a)

57.     Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

58.     Defendant has directly infringed and continues to directly infringe Blacksmith's '404 Patent through making, using, selling, and/or offering to sell and distribute the Accused Products.

59.     The '404 Patent protects Blacksmith's unique proprietary design, and the Defendant infringes upon the '404 Patent by making, using, selling, and/or offering to sell and distribute the Accused Products.

60.     Defendant has literally infringed and continues to infringe on the '404 Patent. (Exhibit 10, Claim Chart).

61.     Defendant has infringed and continues to infringe on the '404 Patent pursuant to the Doctrine of Equivalents. *Id*.

14

62.    On information and belief, Defendant uses and has used an international network of authorized dealers and retailers to sell the Accused Products.

63.    On information and belief, Defendant has had knowledge of the claim of the '404 Patent for years, as Defendant claims to have an implied license to practice the patent.

64.    Defendant has had knowledge of the '404 Patent at least since May 26, 2023, by virtue of the notice letter (Exhibit 11) but have repeatedly refused to cease its direct infringement.

65.    Defendant has had knowledge of the '404 Patent and Blacksmith's claims of infringement since email and telephone exchanges between counsel for Blacksmith and counsel for Defendant following the notice letter wherein Blacksmith sought in good faith to avoid litigation.

66.    On information and belief, Defendant offers to sell and does sell the Accused Product. *See*, *e.g.*, Exhibits 8-9 (under the names "Lightning for Telehandler" and "Liftboss"). Accordingly, Defendant had knowledge of and/or was willfully blind with respect to the '404 Patent.

67.    Defendant has willfully infringed and continues to willfully infringe the '404 Patent. Despite its knowledge of the '404 Patent, Defendant has sold and continues to sell the Accused Products in complete and reckless disregard of Blacksmith's patent rights.

68.    As a result of Defendant's unlawful activities, Blacksmith has suffered and will continue to suffer irreparable harm.

69.    Defendant's direct infringement of '404 Patent has injured and continues to injure Blacksmith in an amount to be proven at trial, but not less than a reasonable royalty.

## COUNT II – INDIRECT PATENT INFRINGEMENT
### 35 U.S.C. § 271(b)

70.    Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

71.    Defendant actively induces others, including customers, resellers, and end-users to make, use, sell and/or offer to sell and distribute the Accused Products.

72.    Defendant has induced and continues to induce infringement of the '404 Patent claim under 35 U.S.C. § 271(b).

73.    In addition to directly infringing the '404 Patent, Defendant indirectly infringes by instructing, directing, and/or requiring others, including customers, third party resellers, and end-users to directly infringe the '404 Patent, either literally or under the Doctrine of Equivalents, by making, using, selling, and/or offering to sell and distribute the Accused Products.

74.    Defendants also induce end-user to use the Accused Products, including through advertising and marketing efforts.

16

75.    The end-users directly infringe the '404 Patent by using the Accused Products on their vehicles.

76.    By advertising, making, using, selling, and offering to sell the Accused Products to others, Defendant hsd knowingly and intentionally aided, abetted, and induced others to directly infringe the '404 Patent.

77.    Defendant's pre-suit knowledge of the '404 Patent, as well as its familiarity with Blacksmith, and its knowledge that the infringing tires are protected by the '404 Patent, evidence that Defendant knew that the other parties' conduct constituted infringement of a valid patent.

78.    The Accused Products have no substantial non-infringing use.

## <u>COUNT III – ACCOUNTING AGAINST DEFENDANT</u>

79.    Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

80.    Blacksmith is entitled, pursuant to 35 U.S.C. § 289, to recover Defendant's total profit received from their acts of infringement.

81.    Blacksmith is entitled, pursuant to 35 U.S.C. § 284, to actual damages sustained by virtue of Defendant's acts of infringement.

82.    Blacksmith is entitled, pursuant to 35 U.S.C. § 284, to no less than a reasonable royalty.

83.    The specific amount of money due from Defendant to Blacksmith is unknown to Blacksmith and cannot be ascertained without a detailed accounting by Defendant of the precise number of units of infringing material offered for distribution and distributed by Defendant.

## COUNT IV – DECLARATORY JUDGMENT OF NO IMLPIED LICENSE OR OTHER RIGHT TO USE '404 PATENT

84.    Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

85.    Pursuant to 28 U.S.C. § 2201 et seq., an actual and justiciable controversy exists between Blacksmith and Defendant, including because Defendant contends that Defendant has a right to practice, sell, use, and engage in conduct that would otherwise infringe upon Blacksmith's rights under the '404 Patent, including through a purported but unproven implied license, estoppel theory, and other reasons.

86.    Blacksmith is entitled to a declaration from the Court that:

a.  Defendant has no implied license to the '404 Patent.

b.  Blacksmith is not estopped from asserting its rights to the '404 Patent against Defendant.

c.  Defendant acquired no rights to practice, sell, use, and/or engage in conduct that would infringe upon Blacksmith's rights under the '404

Patent.

    d. Defendant has infringed and is infringing the '404 Patent.

87.    Blacksmith lacks a complete and adequate remedy at law concerning Defendant's allegations as to the '404 Patent.

## <u>COUNT V – BREACH OF TRADEMARK LICENSE AGREEMENT</u>

88.    Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

89.    Blacksmith and Defendant were parties to the Trademark License Agreement, described above, which involved licensing of the Licensed Marks and a requirement to pay royalties and provide royalty reports.

90.    Blacksmith gave valuable consideration for entering into the Trademark License Agreement, as set forth therein, including by granting Defendant the right to use the Licensed Marks pursuant to the terms of the Trademark License Agreement.

91.    Blacksmith and Defendant mutually assented to all terms of the Trademark License Agreement.

92.    Defendant has breached the Trademark License Agreement in one or more ways, including by:

    a. failing to timely remit royalties on all sales covered by the Trademark License Agreement;

b. failing to timely remit reports of sales, including in the form of Royalty Reports, for all sales covered by the Trademark License Agreement;

c. refusing to permit examination of an accurate record of sales covered by the Trademark License Agreement;

d. failing to cure its breaches of the Trademark License Agreement;

e. such other conduct as Blacksmith shall investigate, discover, and prove at trial.

93. As a result of Defendant's breach of the Trademark License Agreement, Blacksmith has suffered damages in an amount to be determined at trial.

## COUNT VI – DECLARATORY JUDGMENT THAT TERMINATION OF THE TRADEMARK LICENSE AGREEMENT WAS PROPER

95. Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

96. Pursuant to 28 U.S.C. § 2201 et seq., an actual and justiciable controversy exists between Blacksmith and Defendant, including because Defendant contends that Blacksmith has no right to terminate the Trademark License Agreement.

97. Blacksmith is entitled to a declaration from the Court that Blacksmith has properly, and can properly, terminate the Trademark License Agreement,

including because Defendant breached the Trademark License Agreement as alleged herein and as will be proven at trial, and failed to timely cure such breaches.

98.    Blacksmith lacks a complete and adequate remedy at law concerning Defendant's allegations as to the termination of the Trademark License Agreement.

## COUNT VII – FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

99.    Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

100.    Blacksmith is the owner of incontestable U.S. Federal Trademark Registration No. 2,288,934 for the mark OUTRIGGER. This mark registered on August 3, 1999, in connection with tires for construction, industrial, agricultural and off-road vehicles in International Class 012 and has been used in commerce since at least as early as January 1998.

101.    Blacksmith is also the owner of incontestable U.S. Federal Trademark Registration No. 2,365,742 for the mark WEARMASTER. This mark registered on July 11, 2000, in connection with tires for construction, industrial, agricultural and off-road vehicles in International Class 012 and has been used in commerce since at least as early as January 1997.

102.    Blacksmith is also the owner of incontestable U.S. Federal Trademark Registration No. 2,640,897 for the mark STABILIZER. This mark registered on October 22, 2002, in connection with tires for construction, industrial, agricultural

and off-road vehicles in International Class 012 and has been used in commerce since at least as early as June 1, 2001. This registration remained valid at least until the date that it was inadvertently cancelled on May 5, 2023.

103.  Blacksmith is also the owner of U.S. Federal Trademark Registration No. 5,525,159 for the mark LIGHTNING BOLT. This mark registered on July 24, 2018, in connection with tires for aerial work platforms in International Class 012 and has been used in commerce since at least as early as April 16, 2018.

104.  Defendant, without consent from Blacksmith and beyond Blacksmith's proper termination of the Trademark License Agreement, used and is currently using in commerce, the infringing OUTRIGGER, WEARMASTER, and STABILIZER marks in connection with the sale, offering for sale, and advertising of construction tires, at least as shown on its websites, <https://www.otrwheel.com>, <https://www.otrb2b.com/tires-construction> . *See* Exhibits 8-9.

105.  Further, Defendant, without consent from Blacksmith, adopted, used, and is currently using in commerce the infringing LIGHTNING BOLT mark in connection with the sale, offering for sale, and advertising of construction tires, at least as shown on its website, <https://www.otrb2b.com/tires-construction>. (Exhibit 9).

106.  Blacksmith has been damaged, and in the absence of relief from the Court, will continue to be damaged by Defendant's use of Blacksmith's federally

registered trademarks in connection with the sale of construction tires.

107.   Defendant's use of the infringing marks in connection with the sale, offering for sale, and advertising of Defendant's goods is likely to cause confusion, mistake or deception with respect to the source of the goods and services and therefore constitutes trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114(1)(a)).

108.   By reason of the foregoing, Blacksmith is entitled to recover from Defendant treble damages and reasonable attorney's fees, pursuant to 15 U.S.C. § 1117.

## COUNT VIII – FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

108.   Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

109.   In addition to its trademark registrations, Blacksmith is also the owner of common law trademark rights and U.S. Federal Trademark Application Ser. No. 98/004,596 for the mark STABILIZER. This mark was filed on May 19, 2023, in connection with tires for construction, industrial, agricultural and off-road vehicles in International Class 012 and has been used in commerce since at least as early as June 1, 2001. Blacksmith also previously owned U.S. Federal Trademark Registration No. 2,640,897 for the same mark in connection with the same goods,

which registered on October 22, 2002. The registration was inadvertently abandoned for failure to file a renewal.

110.   Blacksmith is also the owner of common law trademark rights in the mark LIGHTNING, which is inherently distinctive, for use in connection with tires for construction, industrial, agricultural and off-road vehicles. Blacksmith has continuously used the LIGHTNING trademark since at least as early as April 2013.

111.   Defendant has used, and is using, in commerce, in connection with the sale, offer for sale, and advertising of construction tires the STABILIZER and LIGHTNING marks in such a manner as is likely to cause confusion, or to cause mistake, deceive as to the affiliation, connection or association or as to the origin, or falsely designate the origin, sponsorship, or approval of the goods and services to consumers in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), at least as shown on its websites, <https://www.otrwheel.com>, <https://www.otrb2b.com/tires>. (Exhibits 8-9).

112.   Upon information and belief, Defendant has intentionally, knowingly and willfully adopted, used, and continues to use the infringing STABILIZER and LIGHTNING marks to cause consumer confusion, mistake, and/or deception.

113.   As a result of Defendant's wrongful acts, Blacksmith has been damaged, and in the absence of relief from this Court will continue to be damaged by Defendant's infringing use of Blacksmith's STABILIZER and LIGHTNING

trademarks in connection with construction tires.

114.   By reason of the foregoing, Blacksmith is entitled to recover from Defendant treble damages and reasonable attorney's fees, pursuant to 15 U.S.C. § 1117.

## COUNT IX – GEORGIA UNFAIR AND DECEPTIVE TRADE PRACTICES
### (Ga. Code § 10-1-373)

115.   Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

116.   Defendant's activities described in this Complaint constitute willful deceptive trade practices, as defined in Section 10-1-373 of the Georgia Code. Blacksmith has been irreparably harmed and damaged, and is likely to continue to be irreparably harmed and damaged, absent an injunction by this Court, by Defendant's deceptive trade practices.

117.   Because Defendant's activities have been willful as alleged in this Complaint, Blacksmith is entitled to its attorneys' fees.

## COUNT X – GEORGIA COMMON LAW UNFAIR COMPETITION

118.   Blacksmith re-alleges and incorporates the preceding paragraphs by reference.

119.   Defendant's activities described in this Complaint constitute unfair acts that have damaged the legitimate business activities related to Blacksmith's

manufacture, sale, offering for sale, advertising, using, and distributing to the public tires, including but not limited to the Accused Products. Defendant's illegal activities have been in and affecting commerce, including among the purchasing public. Therefore, those activities by Defendant constitute unfair and deceptive acts and practices in the State of Georgia pursuant to the common law of Georgia.

## **PRAYER FOR RELIEF**

WHEREFORE, Blacksmith prays that this Court:

1.     Enter judgment that Defendant has directly infringed and continues to directly infringe the '404 Patent in violation of 35 U.S.C. §§ 271(a) and 289;

2.     Enter judgment that Defendant has indirectly infringed and continues to indirectly infringe the '404 Patent in violation of 35 U.S.C. §§ 271(b);

3.     Enter judgment that Defendant has willfully infringed the '404 Patent, both directly and indirectly;

4.     Enter a permanent injunction pursuant to 35 U.S.C. § 283 enjoining Defendant, its agents, servants, employees, and attorneys and all those acting in concert or participation with Defendant from making, using, selling, and/or offering for sale material that infringes the '404 Patent, including, but not limited to, the Accused Products or colorable imitations thereof, or inducing others to do the same;

5.     Enter an Order impounding and calling for the destruction of any and all infringing tires in Defendant's possession, including, but not limited to, the Accused

Products and the molds from which the Accused Products are made;

6.    Enter an Order declaring that Defendant hold in trust, as constructive trustee for the benefit of Blacksmith, its illegal profits obtained from its distribution of products that infringe Blacksmith's design patent, and requiring Defendant to provide Blacksmith a full and complete accounting of all amounts due and owing to Blacksmith as a result of Defendant's illegal activities;

7.    Award to Blacksmith a judgment in the full amount of damages against Defendant, including, but not limited to, any and all damage remedies available pursuant to the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, which include but are not limited to provisional rights, lost profits, a reasonable royalty, infringers' profits, prejudgment interest, post judgment interest, and treble damages;

8.    Enter an Order that this is an exceptional case pursuant to 35 U.S.C. § 285;

9.    Enter an Order declaring that:

  a.  Defendant has no implied license to the '404 Patent;

  b.  Blacksmith is not estopped from asserting its rights to the '404 Patent against Defendant; and

  c.  Defendant acquired no rights to practice, sell, use, and/or engage in conduct that would infringe upon Blacksmith's rights under the '404 Patent;

10.    Enter judgment that Defendant has breached the Trademark License

Agreement;

11.    Award to Blacksmith the full amount of damages sustained as a result of Defendant's breach of the Trademark License Agreement;

12.    Enter an Order declaring that Blacksmith has properly and can properly terminate the Trademark License Agreement because Defendant breached the Trademark License Agreement and failed to timely cure such breaches;

13.    Enter a permanent injunction, pursuant to 15 U.S.C. § 1116, enjoining Defendant, its agents, servants, employees, and attorneys and all those in active concert or participation with Defendant;

> a. from using any trademark, service mark, logo, trade name, domain name or designation confusingly similar to the OUTRIGGER, WEARMASTER, STABILIZER, LIGHTNING, or LIGHTNING BOLT trademarks owned by Blacksmith;
>
> b. from otherwise infringing Blacksmith's trademark rights;
>
> c. from unfairly competing with Blacksmith; and
>
> d. from causing injury to the business reputation of Blacksmith.

14.    Award to Blacksmith a judgment in the full amount of damages against Defendant resulting from its violation of Section 32(a) of the Lanham Act (15 U.S.C. § 1114(a)) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), for federal trademark infringement and federal unfair competition and false designation of

origin, respectively, in an amount to be fixed by the Court, which in its discretion it finds just, including:

> a. all profits received by Defendant from sales and revenues of any kind as a result of the actions complained of in this Complaint;

> b. all damages sustained by Blacksmith as a result of Defendant's acts of infringement and unfair competition, and that such damages be trebled, including damages resulting from losses sustained by Blacksmith equivalent to a reasonable royalty;

15.    That, because of the deliberate and willful actions of Defendant, this action be designated as an exceptional case, thereby entitling Blacksmith to an award of all reasonable attorneys' fees, costs, and disbursements incurred by Blacksmith as a result of this action, pursuant to 15 U.S.C. § 1117, and that Blacksmith be awarded such relief;

16.    That Blacksmith be awarded judgment for damages as a result of Defendant's unfair and deceptive trade practices under Ga. Code § 10-1-373 and that Blacksmith be awarded its reasonable costs and attorneys' fees pursuant to Ga. Code § 10-1-373(b).

17.    That Blacksmith be awarded judgment for damages resulting from Defendant's common law unfair competition under Georgia law;

18.    Enter an Order for Defendant to pay to Blacksmith both the costs of this action

and the reasonable attorneys' fees incurred by it in prosecuting this action; and

19.    Grant to Blacksmith such other and additional relief as is just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Blacksmith OTR, LLC hereby demands trial by jury of all issues so triable.

## **RESERVATION OF RIGHTS**

Plaintiff reserves the right, upon further investigation and discovery, to assert such claims against Defendants and other responsible parties as may be just and appropriate under the circumstances.

Respectfully submitted November 27, 2023.

*/s/ Jamie S. Gilmer*
Jamie S. Gilmer
GA Bar No. 909809
SHUMAKER, LOOP & KENDRICK, LLP
176 Croghan Spur Road
Suite 400
Charleston, SC 29407
Tel: (843) 996-1900
Fax: (843)996-1999
Email: jgilmer@shumaker.com

## **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

This 27th day of November, 2023.

/s/ Jamie S. Gilmer
Jamie S. Gilmer
GA Bar No. 909809
jgilmer@shumaker.com