```
1              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF GEORGIA
2                     ROME DIVISION

3
   BLACKSMITH OTR, LLC,              )
4                                    )
          Plaintiff,                 )
5                                    )  Case Number
               v.                    )   4:23-cv-00279-WMR
6                                    )
   OTR WHEEL ENGINEERING, INC.,      )
7                                    )
          Defendant.                 )
8  _____)
                                     )
9  OTR ENGINEERED SOLUTIONS, INC.,   )
                                     )
10         Plaintiff,                )
                                     )  Case Number
11              v.                   )   4:24-cv-00186-WMR
                                     )
12  BLACKSMITH OTR, LLC,             )
                                     )
13         Defendant.                )
   _____)
14
```

15
```
              Transcript of Motions Hearing
16      before the Honorable William M. Ray, II,
              United States District Judge
17            January 16, 2024, 9:30 a.m.
```

18

19

20       Proceedings recorded by mechanical stenography,
   transcript produced by computer.
21  _____

22

23
```
              Geraldine S. Glover, RPR, CRR, RCR
24             Federal Official Court Reporter
              75 Ted Turner Drive, SW, Suite 1714
25               Atlanta, Georgia  30303-3309

                 UNITED STATES DISTRICT COURT
```

1

2  A P P E A R A N C E S:

3

4  On Behalf of Blacksmith OTR, LLC:

5       Tom BenGera
        Samuel Alexander Long, Jr.
6  Shumaker, Loop & Kendrick, LLP-NC

7       Robert Harris Smalley, III
   McCamy, Phillips, Tuggles & Fordham, LLP
8

9  On Behalf of OTR Wheel Engineering/OTR Engineered Solutions:

10      James William Cobb
        Cameron Blaine Roberts
11  Caplan Cobb LLC

12      Stephen M. Schaetzel
   Meunier Carlin & Curfman, LLC -Atl
13

14

15

16

17

18

19

20

21

22

23

24

25

                   UNITED STATES DISTRICT COURT

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE COURT:  All right.  Good morning. |
| 3 | Y'all can have a seat, please. |
| 4 | Okay.  There's been a lot of excitement in the |
| 5 | courthouse with people bringing tires in.  That's not |
| 6 | something that happens every day. |
| 7 | Give me just a second to get the right case up on my |
| 8 | computer. |
| 9 | All right.  So there's two cases that are here |
| 10 | involving the same parties in different positions.  The -- |
| 11 | there's the original case, which is 24-cv-186, OTR Wheel |
| 12 | Engineering, Inc. v Blacksmith OTR, LLC.  Actually, is that |
| 13 | the new case? |
| 14 | MR. COBB:  That's the 2024 case, Your Honor. |
| 15 | THE COURT:  Okay.  So that's the -- actually the |
| 16 | second case then.  All right.  That case -- let me just back |
| 17 | up.  Let me just ask some questions about who is going to |
| 18 | speak today. |
| 19 | Who's going to speak for OTR Wheel? |
| 20 | MR. COBB:  Your Honor, James Cobb.  I will be |
| 21 | presenting probably the entire presentation on behalf of OTR |
| 22 | Wheel.  Though, I'm joined by my co-counsel, Steve Schaetzel. |
| 23 | And Steve is our patent guru.  So if any issues come up that |
| 24 | are more in his wheelhouse than mine, I may ask him to address |
| 25 | them. |

1          THE COURT:  Schaetzel?

2          MR. SCHAETZEL:  Yes, sir.

3          THE COURT:  All right.  Thank you.

4          And then for Blacksmith OTR?

5          MR. SMALLEY:  Good morning, Your Honor.  Robert

6  Smalley from Dalton.  My co-counsel, Tom BenGera, is going to

7  take most of the argument for us.  Alex Long, my other

8  co-counsel -- both from the Shumaker firm in Charlotte -- will

9  be arguing for us this morning.

10          THE COURT:  All right.  Thank you.

11          I'm sorry.  Tom.  And who is the other one?

12          MR. LONG:  Alex Long.

13          THE COURT:  Alex Long.  You may have Samuel on the --

14  well, I do have -- I've got both names.  Alex Long.  Okay.

15  Thank you, sir.

16          All right.  So let me -- and then let me frame both

17  numbers, put both numbers into the record.  So it's the 23

18  case -- I should have looked at the first number.  I was

19  looking at the lower -- the last number of the 23 case, which

20  is the original case, 23-cv-279.  And then there's the case

21  filed last year, late in the year, 24-cv-186, that involved

22  the same parties but in different positions.

23          So let me tell you what I remember about the

24  lawsuits.  So I'm going to refer to today, just because I'm

25  going to think about it in the order that these cases began,

                    UNITED STATES DISTRICT COURT

1  I'm going to refer to Blacksmith as the plaintiff and I'm
2  going to do that throughout.  And I would ask y'all to do that
3  too.  It gets confusing when we start going -- you know,
4  particularly in federal practice when a bunch of stuff happens
5  in the same case and you've got a plaintiff and a counter --
6  and they're a counter-defendant and all that stuff.  So I'm
7  just going to -- I'll just refer to the plaintiff today as
8  Blacksmith and I'm going to refer to the defendant as OTR.
9  That doesn't mean that I am forecasting anything about the
10 propriety of the first case still being open or not.  It's
11 just easier for me to think of it that way.

12         The plaintiff filed -- let me back up.  I think I
13 remember that these two companies sprung out of one
14 organization at one time.  And I might not have these facts
15 exactly right.  But as these companies were created from the
16 origin, the plaintiff ended up basically with the intellectual
17 property, the designs, if you will, the defendant was more in
18 the retail and/or manufacturing distribution side of the
19 product, which involves tires.

20         The plaintiff's original complaint was to some degree
21 that the defendant was violating its intellectual property
22 rights by not paying the requisite royalties that was owed for
23 the defendant's use of the plaintiff's design.  I'm not sure
24 if that was pursuant to a contract or if the defendant just
25 kind of allegedly kept that design and was using it in a

UNITED STATES DISTRICT COURT

1  pirated kind of way.  But whatever the allegations were, the

2  case was settled with a settlement agreement.

3        Settlement agreement provided in part a process

4  whereby that if the defendant was going to market and

5  distribute this particular type of tire that it would buy that

6  directly from the plaintiff rather than through some third

7  party, perhaps overseas manufacturer.  So that settled the

8  case.

9        I don't think that the settlement agreement, whatever

10  it says, was made an order of the Court.  I think the parties

11  just signed it and they submitted their documents, notified

12  the Court they had settled the case, and we marked it as such

13  and terminated the case.

14        So the defendant continues its business, the

15  plaintiff continues its business.  The defendant is marketing

16  a tire that the defendant believes it can market.  The

17  plaintiff believes that the defendant should be purchasing

18  that tire from it and/or paying royalties to it.  So because

19  the defendant doesn't think its required under its contract

20  now that sprung out of the first lawsuit from the settlement

21  agreement that it has to do what the plaintiff says its

22  supposed to do, the defendant filed a petition with this court

23  for declaratory judgment for there to be a judicial ruling

24  that what it's doing is legal and permissible pursuant to the

25  contract that it has.

1          So, you know, I guess when I saw last night I didn't
2   even really -- I wasn't even really aware of the whole request
3   to bring tires in until late yesterday.  So when my office
4   talked to me about it, we issued the order that said you could
5   do it, which I guess you were prepared to do anyway.  Some
6   of -- the tires didn't just materialize out of thin air.

7          But, yeah, I think the first question that we have to
8   talk about is why is the 23 case the operable case here.

9          I'm sorry I was a little bit late coming out, because
10  my law clerk and I were talking about it before we came out.

11         If the terms of the settlement agreement that settled
12  the 23 case was not an order of the Court, I mean, it -- I'm
13  not sure that the 23 case has any standing at this point in
14  time or any life, because you agreed to whatever you agreed
15  to.  And we'll talk about that.  But I didn't make it an order
16  of anything.  You just settled the case.

17         And it seems like that if the plaintiff believes that
18  the defendant is violating the terms of the contract, then it
19  should file a -- well, it could do a couple of things, I
20  guess.  Maybe more than a couple.  It could file a breach of
21  contract claim.

22         And maybe -- I haven't looked through the pleadings
23  to know whether or not there's been a filing of a counterclaim
24  in the 24 case by the plaintiff that alleges a breach of
25  contract, at least as a cause of action against the defendant.
                    UNITED STATES DISTRICT COURT

1   If the plaintiff believes that there was misrepresentation

2   made by the defendants in the settlement negotiations -- and I

3   did glean some of that from the allegations -- I suppose you

4   could seek to rescind the settlement agreement.  I'm not aware

5   if that's something that the plaintiff is seeking to do.

6          So without that -- without that, though, it just

7   seems to me that -- you know, like a breach of contract claim,

8   seems like a different case.  You had the case.  You settled

9   the case.  The plaintiff may claim a breach of that agreement.

10  Seems like you then should be suing the defendant for breach

11  of contract.  And given that the defendant has filed a

12  petition for declaratory judgment, most likely that breach of

13  contract claim would be a compulsory counterclaim I would

14  think to -- it involves the same issues, the same -- in fact,

15  springing from the same transaction, being the settlement.

16         If you believe that there was fraud in the

17  inducement, for example, that would allow you to rescind the

18  settlement agreement, there are certainly steps, right, that

19  you have to generally take.  Don't you have to put people on

20  notice that you're rescinding and such?  And then maybe you

21  could sue.  I'm not clear on exactly how all that works.

22         I know just -- I'm assuming Georgia law is

23  controlling here.  Maybe it doesn't.  And y'all can tell me

24  otherwise.  But just kind of going back to my state practice

25  years, generally you're not allowed to keep the benefit of the

                    UNITED STATES DISTRICT COURT

1    contract without rescinding.  And it seems that the plaintiff

2    is wanting to keep the benefit of the contract.

3          So in any event, all that's in my mind.  And, you

4    know, I will recognize in this case, like almost every case,

5    other than perhaps routine diversity slip and fall cases, that

6    the lawyers are going to know far more than I'm going to know

7    coming into the case.  And maybe in the Walmart slip and fall

8    case they know more.

9          But in any event, I want to address the issue -- the

10   first issue being why the 23 lawsuit is actionable today.  And

11   because I call them the plaintiff, I'm going to let the

12   plaintiff talk first.  So I'll let Blacksmith -- I'm sorry.

13   I'll let -- yeah, I'll let Blacksmith argue this point first.

14         MR. BENGERA:  Good morning, Your Honor.  Tom BenGera

15   for Blacksmith.

16         I appreciate Your Honor characterizing the case.  I

17   think it's a fair characterization.  There are some nuances

18   that I'm sure both parties would love to address.

19         THE COURT:  You probably need to come to the

20   microphone just -- unless you want to bend over -- I'll put it

21   this way:  You can stand there.  But if you see a frown on the

22   court reporter's face, then come on up to the microphone.  If

23   not, she's going to tell you to.

24         MR. BENGERA:  Okay.  I'll do my best.  I'm spread out

25   over here.  I'll try to stay.  But if it gets clunky, just let

1   me know.

2         So Your Honor raised a -- Your Honor's first question

3   I think has a procedural component and then a practical

4   component.

5         The procedural question Your Honor is asking, I

6   think, is why is this the appropriate case if the settlement

7   agreement itself was not incorporated as part in order by the

8   Court.  I think it's the *Kokkonen* case.  Both parts cite it.

9   It's a supreme court case opinion written by Judge Scalia, if

10  I'm not mistaken, Justice Scalia.  In that opinion, on which

11  several of the other cases cited by both parties relies, the

12  seminal case on this point is, in *Kokkonen*, the applicant

13  tried to bring a lawsuit to enforce a settlement agreement as

14  part of the jurisdictional hook.  And Justice Scalia said that

15  you cannot -- the settlement agreement itself is an incidental

16  indirect agreement, and unless the Court incorporates its

17  language as part of its order dismissing the case, the Court

18  cannot base jurisdiction on enforcing the settlement agreement

19  alone.

20        That's not what the posture of this case is.

21  Blacksmith is not seeking to enforce the settlement agreement.

22  It is seeking under two specific legal theories to reopen the

23  original case, the 2023 case, on the grounds that Your Honor

24  before the case was dismissed entered an order preserving

25  jurisdiction if, quote, the settlement negotiations fail.  And

1    under Blacksmith's theory, if the settlement agreement was

2    never consummated, was fraudulently induced, then the

3    settlement negotiations failed.

4            THE COURT:  You mean carried out?  What do you mean

5    when you say consummated?

6            MR. BENGERA:  So consummated has been used by other

7    courts to refer to the affecting of -- not just execution but

8    also performance.  We're talking here at a much earlier stage

9    that the negotiations failed pursuant to Your Honor's order.

10           THE COURT:  But they didn't fail.  I mean, you

11   negotiated and you signed an agreement; right?

12           MR. BENGERA:  Well, in hindsight, Your Honor --

13           THE COURT:  I'm not interested in hindsight.  I'm

14   interested in facts.

15           So y'all negotiated.  You negotiated whatever you

16   negotiated.  It was reduced to writing.  Everybody signed it.

17   And then that's when I was notified that the case was over;

18   right?

19           MR. BENGERA:  Yes.  I think the parties' order stated

20   that at -- the agreement had been "executed" was the word that

21   we used jointly in our --

22           THE COURT:  Say that again.

23           MR. BENGERA:  Our submission to the Court stated the

24   negotiation -- that the settlement agreement had been

25   executed.  I think we used the word "executed".

UNITED STATES DISTRICT COURT

1              THE COURT:  It means it was signed.

2              MR. BENGERA:  Correct.

3              THE COURT:  Right.  So the order that you're

4    referring to, I don't have specific knowledge.  I'm just

5    thinking about generalities.  Normally what happens in these

6    cases is I get notified by the parties that they've reached an

7    agreement and then they want to reduce it to writing.  And so

8    what I might do in that situation, particularly if it was an

9    old case -- and this one wasn't.  But I might administratively

10   terminate the case or at least stay the case.  And so nothing

11   else is going to happen.  None of the deadlines that are a

12   part of the Rule 26 plan are going to be applicable while the

13   parties then take their agreement to paper and they sign it.

14             So I'm thinking what happened here is I got such a

15   notice from the parties that they had reached a consensus in

16   an agreement, they needed to reduce it to writing and execute

17   it.  And then I was later told, okay, that's all done, it's

18   all been signed, it's all been executed.  And then that was

19   when the case was dismissed.

20             Is that what happened?

21             MR. BENGERA:  I think procedurally, yes.  The --

22   perhaps the confusion on Blacksmith's part, the clarity I

23   guess we're seeking from the Court, is that we informed Your

24   Honor that the agreement had been executed and then Your

25   Honor's subsequent order said, let me know if negotiations

1  fail.  So I'm not -- our position, based on that order, is

2  that the negotiations failed in the sense that there was never

3  an agreement by the -- Blacksmith's argument that --

4          THE COURT:  I'm sorry.  There was an agreement that

5  was signed; right?

6          MR. BENGERA:  Correct.

7          THE COURT:  And that was preceded by negotiations.

8          MR. BENGERA:  Correct.

9          THE COURT:  So where -- it seems like if maybe there

10  was -- if the defendant is right, where the negotiation may

11  have failed is, the plaintiff had an intent -- the defendants

12  may say, and I think they will say, that they had a different

13  intent; but the plaintiff would say that the intent is really

14  not embodied in what was written, the intent of the plaintiff,

15  that is.

16          I mean, that doesn't sound like a -- I mean,

17  obviously a unilateral failure of the agreement to -- or maybe

18  I'll put it this way:  The failure of the written agreement to

19  embody what the true intent of the plaintiff was doesn't mean

20  that there wasn't an agreement; it just means that maybe the

21  details didn't get fleshed out quite the way the plaintiff

22  views it.  I mean, I don't think you're conceding that the

23  details -- that the language doesn't embody your intent.  I

24  think you think that it does.  And that's probably the smart

25  position to take.  Because if you say otherwise, then that

1  kind of feeds the defendant's argument that they can do what

2  they want to do, at least in the abstract on the surface, you

3  know, without getting into the nitty-gritty of it all.

4       I think it's hard to say that there was still -- that

5  there was an unexecuted final agreement between the parties.

6  Because the terms of the agreement were not something -- it

7  wasn't like -- it wasn't like, okay, we'll settle our claim,

8  you pay us $2 million, and settlement really doesn't happen

9  until the closing, which means we sign the agreement and we

10 get the $2 million.

11      The agreements -- the thing that we're fighting over

12 is, what is supposed to happen into the future.  This Court

13 can't retain jurisdiction in a case like that forever, nor

14 would I.  I mean, I'm supposed to have cases over within three

15 years.  And if I don't have it over within three years, it's

16 almost never my fault.  It's normally because the lawyers need

17 more time.  They don't -- you know, it's not your only case.

18 You're working on a lot of different things.

19      But y'all had a negotiation, both sides thought they

20 reached an agreement, and then the parties signed that

21 agreement; right?

22      MR. BENGERA:  Those facts are right.

23      I think the legal theory is that absent a meeting of

24 the minds or subject to fraudulent inducement, their

25 negotiations don't succeed, they fail because an agreement is

UNITED STATES DISTRICT COURT

1   not reached.  I mean, that's the hook.

2           THE COURT:  A meeting of the minds.  Wouldn't the

3   evidence of the meeting of the mind be embodied in the written

4   contract that was signed?

5           And if the plaintiff says, well, that -- if you

6   interpret the agreement the way the defendant wants to

7   interpret it, that was not our intent, well, that doesn't

8   matter; right?  Because it's got to be a mutual disagreement.

9   The contract has got to mutually not embody the parties'

10  intent.  Just because the plaintiff might say that it doesn't

11  embody the plaintiff's intent if you interpret it the way the

12  defendant wants it interpreted would not create an exception

13  to the contract rule.  Where parties agree, they agree.

14          Are you suing?  Have you sued -- have you given

15  notice to rescind the contract, the settlement agreement?

16          MR. BENGERA:  I think the -- the motion to reopen

17  includes an argument that we intend to rescind.  So we treat

18  the opening brief in support of the motion to reopen as

19  notice.

20          THE COURT:  What -- is this Georgia law that applies

21  here?  What's the -- the business relationship, what law

22  governed the business relationship?

23          MR. BENGERA:  It would be Georgia state law here.

24          THE COURT:  What does Georgia law say?  I'm sorry.

25  You're not from Georgia?

1          MR. BENGERA:  I'm not barred in Georgia.

2          THE COURT:  So what does Georgia law say about that?

3    Doesn't it say that you can't take any action that's

4    inconsistent with rescission if you believe that there was

5    fraud in the inducement?

6          MR. BENGERA:  That I'm not familiar with.

7          THE COURT:  I'm familiar with that.  I haven't looked

8    at a case recently.  But it seems to me from my -- I've been a

9    lawyer in Georgia my whole life.  It seems to me that Georgia

10   law says that once you discover the fraud you can't take

11   actions inconsistent with it and that you must immediately

12   rescind.

13         And you only did that with the motion to reopen the

14   original lawsuit?  You didn't send a notice or anything like

15   that saying, we rescind the agreement because you fraudulently

16   introduced us to enter into it?

17         MR. BENGERA:  I don't believe we sent a separate

18   notice.  But the fraud was discovered in earnest at the end of

19   July, days before we filed the motion to reopen.  So it's a

20   matter of timing.  Not much time passed in between the

21   discovery of the fraud, which is the grounds for the

22   rescission, and the motion, the brief which put --

23         THE COURT:  All right.  So let me ask you:  So the

24   discovery of the fraud is exactly -- succinctly if you can

25   tell me, what was that?  That they, the defendant, is selling

                   UNITED STATES DISTRICT COURT

1  a product that you believe infringes?

2          MR. BENGERA:  That they never intended -- they

3  entered into a supply agreement to buy the product on your

4  left from Blacksmith intending all along never to buy a single

5  product from Blacksmith.  And in fact, in the months leading

6  up to the settlement agreement during the negotiations were

7  creating molds and self-launching a product in anticipation of

8  making the product on their own without buying it from the

9  plaintiff; where the entire purpose of the settlement, which

10 goes back to a 2019 trademark license -- Your Honor mentioned

11 this in the opening.  Previously Blacksmith -- or Blacksmith

12 still has the rights to the designs and to the trademarks.

13          And the 2019 trademark license was -- that was a

14 license to use the trademark.  There was borne a lack of trust

15 by the plaintiff.  And it's alleged -- it's characterized in

16 the complaint -- the fact that there was a lack of trust is

17 not disputed.  The parties disagree whether it was warranted.

18 But the point is that the 2023 original case was brought to

19 litigate a lack of trust and underreporting of royalties.

20 Because Blacksmith didn't know how many tires OTR was selling

21 subject to the license.

22          The settlement negotiation negotiated a supply

23 agreement to resolve the issue of trust to say, if you're

24 going to buy it, buy it from us.

25          THE COURT:  Right.  So is there a claim -- I presume

1   that the plaintiff wanted to bring the tires because you

2   wanted me to be able to see that there's similarities between

3   them.

4           Does the plaintiff have a claim that -- if we just

5   kind of forget about the agreement itself, the plaintiff has

6   some intellectual property rights.  I guess nobody is

7   contesting that -- that the tire that is now being sold by the

8   defendants is a violation of the intellectual property

9   rights -- forget about the contract, but the intellectual

10  property rights itself?

11          MR. BENGERA:  Yes.  And I think there's --

12          THE COURT:  So but that wouldn't be -- I mean, I'm

13  saying -- I'm speaking out loud without having really gone

14  through your contract in detail.  I'm kind of leaving it for

15  y'all to educate me about the contract, as much fun as it

16  might be for me to delve into it on my own.

17          But it seems that the intellectual property right

18  claim is a totally different claim than the actual breach of

19  the contract that settled the first lawsuit.  I mean, you had

20  a claim that they were breaching the contract.  You entered

21  into a settlement agreement to resolve that claim.  That only

22  really resolves that claim up to the point of the breach -- or

23  the settlement agreement.  So if the defendant had breached

24  the plaintiff's intellectual property rights, the settlement

25  agreement would vitiate any claim -- you know, if it stands,

                    UNITED STATES DISTRICT COURT

1  that is, it would vitiate any claim that existed up to that

2  point in time.  And maybe it embodied concessions that -- I

3  don't know.

4          Was there money -- was there any payments that were

5  required to kind of make up for the past alleged breaches at

6  the point of the settlement agreement?

7          MR. BENGERA:  There were some monetary payments.

8          THE COURT:  And those have been paid?

9          MR. BENGERA:  Yes.

10         THE COURT:  Okay.  So those were paid.

11         And to deal with the future then, we agree that the

12  defendant is supposed to buy tires that would utilize our

13  intellectual property from us and not try to go buy it

14  somewhere else, I guess is your argument.  And so -- and that

15  would kind of deal with a couple of things.  It would deal

16  with future intellectual property breaches -- property rights

17  breaches and it would also provide the knowledge that the

18  plaintiff would need to know what you were owed for the use of

19  your intellectual property rights.

20         I mean, I can see, you know, the similar kind of

21  context, there also being a lack of trust whereby, you know,

22  perhaps if a third party is making the product and we simply

23  deal with the royalty issues by self-reporting by the

24  defendant to the plaintiff how many of those units that they

25  sold and then sending the money to the plaintiff for the

1  royalties for the right to be able to use it, there being a

2  lack of trust that they're going to accurately -- they being

3  the defendant, will accurately report what they sold.  I mean,

4  that's a dispute that judges see a lot when someone has a

5  license to use someone's intellectual property.

6       And so your argument then is, when the defendant

7  agreed to buy the tires from us so that it would -- and not

8  infringe inherent in that, they never intended to buy the

9  tires from us, they were always scheming to go around us.  And

10 so you claim that that meant that the agreement lacked any

11 present intent on the defendant's part to comply, and so it

12 would have been a failure of consideration and/or fraudulently

13 induced.

14      Have I kind of stated your position right?

15      MR. BENGERA:  (Nods head.)

16      THE COURT:  Okay.  So what if the tire doesn't breach

17 your intellectual property rights, what then?  Is your

18 argument that they had to -- they being the defendant, had to

19 buy tires from you if they were similar but not breaching from

20 a patent perspective?

21      MR. BENGERA:  So Blacksmith's position is that there

22 are several forms of intellectual property that cover the

23 tire.  There are design patents that cover the tires.  There

24 are unregistered trade dress rights that cover the tires.

25 There are trademark rights in the name of the tires.  All

1  those are -- that is what, in our position, the definition of

2  "product".  And the supply agreement covers the product and

3  its intellectual property rights.  I think the --

4          THE COURT:  Yeah, but that -- Okay.  Sure.  But

5  regardless of how many different ways the defendant's new tire

6  violates the plaintiff's intellectual property rights, what if

7  it doesn't?  What if it doesn't violate any of those?  Is your

8  claim that -- I don't know.  I don't think I'm going to be

9  able to tell by looking at two tires, but I do appreciate the

10 chance to look at them, but -- and it's not a decision I'm

11 going to make today, obviously, you know, because I'm sure the

12 defendant has got a different opinion about whether there --

13 any of those trade dress, design -- I'm not sure -- what was

14 the other -- trade dress, design and what else?

15         MR. BENGERA:  Trademark.

16         THE COURT:  -- trademark and how they name it, how

17 they market it.  I don't think I can decide that on a whim.

18 That's going to involve a lot.

19         But if it doesn't violate any of that, then do you

20 contend that under the contract there was some language that

21 was used that would imply some obligation on the defendant

22 beyond not just violating your intellectual property rights?

23         MR. BENGERA:  I think that as a supply agreement, the

24 fact that part of the consideration was to resolve the prior

25 dispute that the consideration from OTR to Blacksmith was to

1  buy the, quote, products as they were defined in the schedule

2  and the supply agreement, which -- and are defined using their

3  tradename, which is the trademark, and their part number,

4  which corresponds to whatever I understood was the products,

5  and so I think if there were no -- hypothetically there were

6  no intellectual property rights, I think the supply agreement

7  was negotiated to resolve the prior dispute in exchange for a

8  future relationship where OTR would buy all of its products

9  that were similar -- sufficiently similar to whatever that

10  legal standard is --

11        THE COURT:  Was that term used in the contract,

12  "sufficiently similar" or something like that?

13        MR. BENGERA:  No.  The supply agreement defined

14  "product" as the tires and referred to a schedule in the

15  supply agreement that listed them by part number.

16        THE COURT:  You know what I really sense -- I'm just

17  going to be honest -- is that there is some regret on the

18  plaintiff's behalf on the way you drafted the contract.  I

19  mean, you could have defined it as anything substantially

20  similar and had a detailed explanation of what that might have

21  said.  You could have defined it as, you know, tires for use

22  for a specific purpose.

23        I'm guessing these are tires that are used on big

24  machines.  I'm not sure.  But they're bigger than truck tires,

25  I think.  I mean, there's a lot of ways I guess it could have

UNITED STATES DISTRICT COURT

1  been written that it wasn't.  I don't know that that's the

2  defendant's fault.

3          And so that's why I posed the question the way I did,

4  is I -- if you defined it a specific detailed way in the

5  contract about what they had to buy from you if they were

6  going to sell something that met those characteristics and

7  you -- and what the defendant actually sells doesn't violate

8  those specifics that were in the contract, wouldn't it be fair

9  then that the original lawsuit is not what we're talking

10 about, we're talking about the second lawsuit and the one

11 brought by the defendants?

12         And then let me also ask this, going back to the

13 issue of rescission:  You filed your lawsuit.  I'm guessing

14 you hadn't paid the money back and you haven't offered to pay

15 the money back.  Because that is also a component of

16 rescission, isn't it, in Georgia law, is you've got to give

17 back what you've got?  Has that occurred?

18         MR. BENGERA:  No, Your Honor.

19         THE COURT:  Have you offered to do that?

20         MR. BENGERA:  We are prepared to.

21         THE COURT:  Yeah.  That's beside the point.  I mean,

22 you haven't.  The fact that you might now because you now know

23 you need to doesn't -- if Georgia law is as I recall it to be,

24 that you have to be -- you have to immediately rescind, which

25 means to either pay back or offer to pay back, I think in

24

1 similar situations I've seen lawyers actually -- like for

2 example, if they were doing it as a part of the lawsuit that

3 they file that they actually offer to or pay the money into

4 the registry of the Court as the rescission because the other

5 side may not take it.  So they're trying to demonstrate that.

6         So again, we're really just talking about which of

7 these lawsuits is primary here, and really maybe even more

8 specifically whether or not the 23 lawsuit can be litigated at

9 all I guess at this point in time.

10        Anything else you want to say about that sole issue?

11 I know I was touching on other things, but only for trying to

12 come back to what issue -- you know, what lawsuit is the

13 primary lawsuit.

14        MR. BENGERA:  I think that Mr. Long's presentation on

15 the second lawsuit will answer some of Your Honor's questions.

16 I think that the last thing I'll say is that, separate from

17 the nuances of the supply agreement, I think that the legal

18 theory for the first -- original case being that it should

19 remain the lead case is that there really was a fundamental

20 absence of agreement, absence of a meeting of the minds as to

21 whether the 2023, the original case, was resolved via a supply

22 agreement or via, as the OTR will tell you, another trademark

23 license where OTR could just take Blacksmith's tire and put

24 its own name on it and make it somewhere else and continue to

25 sell it.  And that's what they're going to tell you that the

UNITED STATES DISTRICT COURT

1 supply agreement says, that it's just a trademark license and

2 that if there's no trademark on their tire, it's not a

3 product.

4        If that is a disagreement between the parties today

5 and if it was back in 2023, then I don't know how there could

6 have been an agreement.  That was the fundamental premise of

7 resolving the dispute.  And that I think is what supports Your

8 Honor's ability to both reopen the case for a failure to

9 settle or reopen under Rule 60(b)(3), which says, fraud,

10 misrepresentation or misconduct, misrepresentation and

11 misconduct being a slightly lower bar than the fraud.

12        And I think that's -- that is the -- Blacksmith's

13 position, is that there's such a fundamental disagreement over

14 what the terms mean today and there was also that same

15 disagreement or differing opinions back in 2023.  If there

16 was, there could not have been a meeting of the minds between

17 the parties sufficient to resolve the dispute.

18        And so we're not asking the Court to enforce the

19 settlement agreement, which is what *Kokkonen* says the Court

20 can do.  We're asking the Court to reopen under a theory that

21 there was a -- there was never -- the negotiations failed

22 and/or under 60(b)(3) that there was ever fraud or a

23 misrepresentation.

24        THE COURT:  So two more questions for you.  And I've

25 really touched on these already, but just to kind of put it in

                  UNITED STATES DISTRICT COURT

1  a nutshell.  This first point maybe I haven't said explicitly.

2  Would you agree with the premise that if the language

3  of the original agreement is not ambiguous then I have to

4  enforce it the way it was written?  Do you agree with that?

5  MR. BENGERA:  In the language --

6  THE COURT:  -- of the original agreement, absent a

7  mutual mistake that -- in the drafting of the language, if the

8  language of the original settlement agreement between the

9  parties is not ambiguous, then I have to enforce it the way it

10  was written?

11  MR. BENGERA:  The only other caveat I would add is

12  absent fraudulent inducement.  I think that's the -- I think

13  if one party induces the other to agree to unambiguous terms

14  through fraud, then the correct result should be to rescind

15  the agreement, not to enforce it.

16  THE COURT:  But the inducement here would be embodied

17  in the language of the contract itself; right?

18  MR. BENGERA:  I don't think the inducement is --

19  THE COURT:  I mean, I don't get to go beyond the

20  language of the contract.  The contract -- I'm guessing.  I

21  don't -- guess it's not -- it's not normal to have what we

22  would call a merger clause in a settlement agreement, but

23  there usually is language in the settlement agreement that

24  kind of acts like a merger clause in the sense that it says,

25  this is what we're agreeing on, this is how we're going to

1  resolve it.  And when it's talking about -- when I'm using the

2  word "this", I'm referring to the language of the actual

3  settlement agreement.

4         So it would seem that if there are outside

5  representations made about what the deal between the plaintiff

6  and the defendant was that the Court's not going to be able to

7  go beyond the wording of the contract itself to determine what

8  the promises are that each side is making to each other.

9  Right?  That seems to be fundamental contract interpretation.

10        MR. BENGERA:  So I think it is a premise and it's

11  embodied towards the end of most contracts that says, the

12  terms are embodied herein, no other conversations can govern.

13        THE COURT:  Well, that's a typical merger clause.

14  But I'm not sure that I've ever really seen that specific

15  language in a settlement agreement, but maybe it's in there.

16        MR. BENGERA:  Yeah.  I think that the interplay

17  between that and fraud is that fraud transcends that merger

18  clause, in the sense that if there's something that

19  fraudulently induced a party to enter into an agreement, even

20  if the terms are as embodied in the agreement unambiguous,

21  then the Court should look to the fraud, whether or not it's

22  outside the four corners of the agreement.

23        THE COURT:  So but if the language of the agreement

24  was, if you sell this you buy it from us, and the product that

25  they're selling isn't this, it's something different, maybe

1  somewhat similar, but not to the point where it violates our

2  intellectual property rights, our trade dress, our marks, our

3  design, I'm not sure that you can get to fraud because you're

4  relying on the representation that's in the contract that you

5  wrote and signed.

6          And, you know, you've tried to argue something

7  similar.  But if the something similar doesn't violate your

8  property -- your intellectual property rights, I don't see how

9  you can get to fraud by saying, well, we really just didn't

10 expect that.

11         In any event -- let me move on then to Mr. Cobb and

12 let's hear his response.  I think he's going to, for one, say

13 what they make and what they sell or what someone else makes

14 for them and what they sell doesn't violate your intellectual

15 property rights.  And I have no opinion on that at all at this

16 point.  And then I think he's going to say that you live and

17 die by what's written in the contract.  I mean, that's kind of

18 what he said in some of the briefing.

19         But I'll certainly give you a chance to come back and

20 respond to that.  And I'm still only dealing with the issue

21 about whether or not the plaintiff is able to reopen the

22 original case.

23         So Mr. Cobb.

24         MR. BENGERA:  Thank you, Your Honor.

25         MR. COBB:  Good morning, Your Honor.

1          May I approach -- you said something at the end --
2    you live and die with the contract.  That's exactly OTR's
3    position.  I thought it would be useful to you and to your
4    staff if you have a copy of the contract that you can
5    reference.
6          THE COURT:  Okay.
7          MR. COBB:  We've got it highlighted in tabbed
8    version, that I'd like to take you through some of the
9    important terms.
10          THE COURT:  All right.
11          MR. COBB:  May I approach?
12          THE COURT:  Yes, sir.
13          MR. COBB:  Do you need more than two?
14          THE COURT:  Did you give Ms. Carlson one?
15          MR. COBB:  If you need another --
16          THE COURT:  I don't need another.
17          MR. COBB:  And then I'm not sure if I will use it
18    given some of the comments you made this morning.  But we did
19    prepare a set of slides.  I don't want you to be intimidated,
20    Your Honor, by the number in here.  There are just two motions
21    pending.  And there are some detailed facts that I thought
22    might get covered.  I don't think I will go through all of
23    this today, but I was prepared to do so if necessary.
24          It's a pleasure to be back in your courtroom, Judge
25    Ray.

1          I just want to make a handful of points on the motion

2    to reopen.  A lot fewer than I had intended to make.

3          You started with some questions about the procedural

4    history surrounding the settlement.  And so I want to talk a

5    little bit about that and make sure everyone is clear about,

6    from a settlement perspective, how we got to where we are

7    today.

8          This is not -- you may have picked up on -- a David

9    and Goliath type dispute.  OTR and Blacksmith are two of the

10   major players in the market for industrial off-road tires.

11   And they are competitors, Your Honor.  They sell competing

12   tires to, in some instances, the same customers.

13         And when the dispute arose under the trademark

14   license agreement, the settlement was not reached overnight.

15   It was negotiated over about a six-and-a-half-month period

16   with deep involvement by the companies, including both

17   companies' chief executive officers personally participating

18   in settlement meetings here in Rome; outside counsel for both

19   companies, including Mr. Long and me; and in-house counsel for

20   both companies, including Emily Rogers, who is in the

21   courtroom today and is the general counsel for OTR.

22         This was an arm's length negotiation.  Caveat emptor.

23   And as Your Honor knows from your familiarity with Georgia

24   law, fraud is a little bit unusual in Georgia, because a

25   plaintiff who is claiming fraud has to affirmatively prove

1  that they exercised due diligence before relying on any

2  alleged misstatements.

3        In that context, when you look at these very heavily

4  negotiated and detailed commercial contracts, what became

5  clear to me as I was getting ready for this hearing is that

6  these parties structured this negotiation to make sure nobody

7  could claim fraud.  We had open discussions where Blacksmith

8  had every opportunity to ask OTR whatever questions it wanted

9  to ask about the contract terms.

10        These are jointly drafted contracts.  There's a

11  provision in the contract itself that says they are not to be

12  construed against one or the other as the drafter.

13        There are multiple merger clauses and a separate

14  clause in the contract saying, nobody is relying on anything

15  that has been said except what is in this agreement.  All of

16  that happened starting actually before Blacksmith filed what I

17  call the 2023 case, and up until April of 2024 when on Docket

18  15 in the 2023 case we filed the notice of settlement letting

19  Your Honor know that the parties -- I'll just read it.

20        Come now Plaintiff Blacksmith and Defendant OTR,

21  through their respective undersigned counsel and notify the

22  Court that the parties have reached an agreement to settle the

23  above-styled lawsuit.  The parties have executed a settlement

24  agreement and are in the process of performing under that

25  agreement.  The parties will submit a stipulation of dismissal

1  with prejudice upon completion of the settlement.

2         That was April 16th.  The same day, you entered an

3  order that I have seen countless times in the Northern

4  District, an administrative closure order that I've always

5  understood to be a docket control mechanism to make sure that

6  you don't have cases on your docket that are too old then

7  lines get stayed and the parties have time to complete

8  settlement if it needs to be completed.

9         Now, counsel for Blacksmith made the argument that in

10 your administrative closure order, which is Docket Number 16

11 in the 23 case, you explicitly retained subject-matter

12 jurisdiction over the settlement agreement.  And I just don't

13 see that when I read the order.  This reads to me like an

14 administrative closure order that just intended to freeze time

15 in the case in case settlement discussions fail and the

16 parties have to continue litigating the case that they had

17 been litigating up to that point.

18        That happens on April 16th.  And your direction to

19 the parties, Your Honor --

20        THE COURT:  I'm sorry.  Is that in this booklet?

21        MR. COBB:  No, that is not.

22        THE COURT:  You'll just have to read it to me

23 because --

24        MR. COBB:  Yeah.  I'll get there.  This is Docket 16.

25 If you would like to see it, it is in the big slide deck --

1        THE COURT:  Can we activate the ELMO and you can put

2   it up there.

3                        **(brief pause)**

4        MR. COBB:  This is slide Number 43 in the slide deck

5   that I handed up to you.  And it says -- this is the order you

6   entered.  The parties have filed a notice of settlement.  The

7   Court directs the Clerk of Court to administratively close the

8   case.  The parties shall file a dismissal or other filing

9   disposing of this case upon finalization of the settlement.

10  If settlement negotiations fail, the parties shall promptly

11  move to reopen the case.

12        As I read that order -- and again, I'm just a lawyer

13  in the case, but I've seen this over and over from judges in

14  the Northern District of Georgia -- this is a notice that the

15  case isn't over yet because maybe you haven't finalized your

16  settlement, but if you finalize it, then you need to get rid

17  of the case, dismiss it.  If not, we can lift the

18  administrative closure and continue litigating the case.

19        So that happens on April 16th.  Three days later --

20  and this is on Docket Number 18 -- the parties filed the Rule

21  41(a)(1)(A), voluntary dismissal with prejudice.  That, as

22  we've argued in the briefs, deprived the Court of

23  subject-matter jurisdiction.

24        Now, the *Kokkonen* case that counsel brought up only

25  applies -- and its progeny of the Eleventh Circuit -- only

1    applies if there is a pre-stipulation of dismissal order from

2    the Court that explicitly retains subject-matter jurisdiction

3    after the dismissal.  In other words, the situation Your Honor

4    referenced where you embody a settlement agreement in an order

5    of the Court, but perhaps there needs to be contempt

6    proceedings if the settlement agreement is not complied with.

7        We just don't have that scenario here.  And I don't

8    understand how the administrative closure order, which doesn't

9    reference continuing jurisdiction over a consummated

10   settlement agreement, that could give this basis -- give this

11   Court a basis under -- to simply reopen the case.

12       I also want to note one thing that hasn't come up.

13   And I don't know -- this has not been briefed by either party.

14   But given the proposed order that Blacksmith submitted this

15   morning, one of the conclusions of law that they're asking

16   Your Honor to adopt -- if you agree with our point that you

17   can't just reopen the case because of the joint stipulation of

18   dismissal, they're asking you to set that aside under Rule 60.

19   Right.  They're challenging the stipulation of dismissal on

20   the basis of either fraud or what they say is a lack of

21   meeting of the minds.

22       On Tuesday of this week in the U.S. Supreme Court, a

23   case was argued called **Waetzig v Halliburton Energy**, which

24   presents the question of whether a federal court can set aside

25   a stipulation of dismissal that has been issued under Rule 41.

UNITED STATES DISTRICT COURT

1  I don't know how that decision is going to go.  We listened to

2  the argument.  And frankly, it wasn't too enlightening which

3  way the Court is ruling.  But the Supreme Court's decision in

4  that case could affect whether this Court even has authority

5  to set aside a stipulation of dismissal under Rule 60.  And I

6  just want to make sure the Court is aware of that.  Argument

7  just happened on Tuesday of this week.  And the Court will

8  obviously rule before the end of its term.  But that may have

9  an impact.

10         And in their proposed order, one of the statements of

11 law that they've asked you to agree with is that a federal

12 court has authority to set aside a stipulation of voluntary

13 dismissal under Rule 60.  That's not a given.  And it's an

14 open question that's being currently argued in front of the

15 Supreme Court.

16         So that's the procedural history.  That case has been

17 dismissed.  And everything else that they've described sounds

18 and feels a lot to me like counterclaims on a breach of

19 contract or declaratory judgment action.

20         So I want to address the second point they raise.

21         THE COURT:  Have they asserted the counterclaims in

22 the declaratory judgment?  If they haven't, have they lost the

23 ability to do that?  I guess they haven't answered.

24         MR. COBB:  They haven't answered.

25         THE COURT:  They just filed a motion to dismiss so

1  that -- a motion to reopen, a motion to dismiss -- or a motion

2  to consolidate I guess is what it was.

3          MR. COBB:  That's exactly right, Your Honor.  So

4  if -- under the federal rules since they moved to dismiss,

5  they don't have to answer or assert counterclaims.  If Your

6  Honor were to deny the motion to reopen, deny the motion to

7  dismiss, which we think you should take both of those steps,

8  then they'll have a full opportunity to raise all of these

9  issues in the 2024 case.  Frankly, that fact has been one of

10 the most confusing aspects of this whole dispute to me.

11         You often see these kinds of, you know, first-filed

12 disputes in situations where the parties are seeking a home

13 court advantage, right, if they felt, I'm based in Rome, I

14 want a Rome jury pool, I want a judge who's familiar with the

15 Rome community, so I'm going to make sure I file first in

16 Rome.

17         We just don't have that here because Blacksmith and

18 OTR are both based in Rome.  They're neighbors, actually.

19 Their office is, because of their shared history, physically

20 located next to each other.

21         So it's always been a little confusing to me why

22 Blacksmith is so intent on reopening the 2023 case when it has

23 a forum in the 2024 case to raise all of these issues,

24 including the fraudulent inducement claim.  I'm going to talk

25 about some of the points you raised in a second.  Rescission,

1  for example, reliance issues with merger clauses, set that

2  aside.  Blacksmith can raise all of that in the 2024 case.

3         THE COURT:  Right.  But the issue -- ultimately if we

4  have questions of fact, the issue of trade dress violation,

5  these could be jury issues; right?

6         MR. COBB:  They could, and also could be raised in

7  the 2024 case.

8         THE COURT:  Right.  But it matters who gets to go

9  first.

10        I mean, you know, I once -- I practiced divorce law

11  in part as a lawyer.  And I once -- you know, the Georgia rule

12  is, is the lawsuit doesn't begin until service happened.  And

13  I represented a pretty high profile person and we needed to

14  tell his story first.  And so we filed a complaint and got the

15  wife served before she could get him served, so we got to tell

16  our story first.  We ended up settling the case, but I just

17  knew it was going to be important that the jury hear from him

18  before, you know, all the bad stuff came out.

19        MR. COBB:  I'm not going to disagree with you that

20  there are certain cases where I prefer to be the plaintiff.  I

21  mean, frankly, this is a case about some technical issues

22  relating to tires that go on those aerial work platforms.

23  Cherry pickers are actually what use these tires.  And I

24  don't -- this is just my view.  I'm not sure that a jury is

25  going to find that to be as interesting as a divorce case

1  where you're going to talk about misconduct.  This is going to
2  be, what are these tires?  But I understand your point.  And
3  maybe that's the answer as to why Blacksmith really wants to
4  be the plaintiff.
5          But my ultimate point, Your Honor, is if you deny
6  them the relief of reopening the 2023 case, they don't lose
7  anything substantively.  They've got a full opportunity to
8  raise these arguments.
9          Now, I disagree with all of the arguments.  We think
10 there are fundamental problems with a fraudulent inducement
11 claim that we would move to dismiss, frankly, under *Twombly*,
12 because of, for example, their failure to tender back over
13 $1.2 million that they have received under the settlement
14 agreement.  They received a check as recently as last week
15 under the settlement agreement.
16         THE COURT:  So as it relates to the whole fraudulent
17 inducement issues, I mean, I'm assuming your argument is, the
18 terms of the contract itself deals -- will defeat that claim
19 altogether; right?
20         MR. COBB:  That's exactly right.
21         THE COURT:  So you're going to go through all those
22 terms for me?
23         MR. COBB:  I'm happy to go through all of them, but I
24 think --
25         THE COURT:  Why don't you give me the highlights.
                    UNITED STATES DISTRICT COURT

1              MR. COBB:  Absolutely.

2         I'm going to start with the merger and the no

3    reliance clauses.  And if you -- let's use the -- just so you

4    can see the actual contract itself.  So these tabs are what we

5    think are the most relevant provisions of the contract.  And I

6    should say, there are three contracts in here -- a settlement

7    agreement, a supply agreement, and a design patent license

8    agreement.  All of those are really one agreement.  And the

9    settlement agreement itself says that, that they're all

10   consideration for resolution of the claims that Blacksmith

11   asserted in the 2023 action.

12        If you go to Tab 5, this is from the settlement

13   agreement.  And I'm looking at -- you will see two highlighted

14   sections.  One, a portion of Paragraph 10(c) is highlighted.

15   And second, Paragraph 11 is highlighted.

16        Paragraph 10(c) says:  The party -- this is a

17   representation of warranty by both parties.  "The Party has

18   not and will not rely on any agreement, promise,

19   representation, understanding or statement for purposes of

20   entering into this agreement other than the explicit written

21   terms set forth in this agreement."

22        You then go to Section 11, which is the merger

23   clause.  It's a very traditional merger clause.  "This

24   agreement, including exhibits" -- the exhibits are the design

25   patent license agreement and the supply agreement --

                    UNITED STATES DISTRICT COURT

1  "constitutes the entire agreement and understanding of the

2  Parties and supersedes all prior negotiations and/or

3  agreements, proposed or otherwise, written or oral, concerning

4  the subject matter hereof, including the TLA."  TLA, Your

5  Honor, is the trademark license agreement that the parties

6  previously operated under that was the subject of the 2023

7  case and ultimately that these contracts fully replaced.

8      One of the terms in these contracts is that the TLA,

9  the trademark license agreement, is considered to be

10  terminated as of the effective date of the new contracts.

11      Now, you know from your time as a judge in Georgia

12  and as a practicing lawyer in Georgia that a contract term

13  like that makes it virtually impossible to prove a claim for

14  fraudulent inducement because it limits you to representations

15  that are contained in the contract itself.  It means, they

16  cannot as a matter of law prove reasonable reliance on

17  anything that they say was told to them outside the terms of

18  the contract.

19      We've cited a number of cases for that proposition.

20  You've got the **_Weed Wizard Acquisition Corp._**, which is a

21  decision by Judge Story from 2002.  That 201 F.Supp. 2d 1252.

22      We cited the **Novare Group v Sarif** case from the

23  Georgia Supreme Court from 2011.  That's 290 Ga. 186.

24      And we've also cited another Northern District of

25  Georgia decision, **Turley v Lupin Pharmaceuticals**, which is

UNITED STATES DISTRICT COURT

1 | 2019 WL, Westlaw, 13275423.

2 |       This is not controversial Georgia law.  This is very

3 | basic Georgia law about how fraud intersects with contracts

4 | when you have a fully negotiated arm's length and fully

5 | integrated agreement like what we have here.

6 |       You've got the separate problem of their failure to

7 | tender back the benefits.  Like I said, they've received over

8 | $1.2 million in payments under this contract -- under the

9 | settlement agreement.  And those payments were largely for

10 | preexisting inventory that OTR had in its warehouses ready to

11 | sell that we paid for underneath the new agreement.  They

12 | never offered to pay any of that money back.  Even though if

13 | we were still operating under the old trademark license

14 | agreement, the royalties would have been calculated entirely

15 | differently and we would not owe them what we owed them under

16 | the supply agreement and the settlement agreement.

17 |       That's an independent failure for -- an independent

18 | basis to reject a fraudulent inducement claim.

19 |       And I heard them say that it was very -- they're

20 | relying on the motion itself as notice of their intent to

21 | rescind.  That's inadequate under Georgia law.  You have to

22 | give notice of rescission before filing suit.  It's considered

23 | a condition precedent.  And that again is the *Novare Group*

24 | case from the Georgia Supreme Court, 290 Ga. 186.  And there's

25 | a Georgia statute explicitly on point, which is O.C.G.A.

1 | 13-4-60.

2 |    Today is the very first time I've heard anybody on

3 | behalf of Blacksmith say they're even willing to return that

4 | money.  That is far too late.  They had to do it before they

5 | initiated any action on behalf of their client.

6 |    And then on top of that, counsel for Blacksmith said

7 | it was just days after they discovered the fraud that they

8 | moved to reopen.  That's not accurate.  The motion to reopen

9 | wasn't filed until September 23rd.  And I think what they've

10 | said in their papers is that they discovered the fraud -- what

11 | they say is the fraud.  We obviously dispute that -- as early

12 | as May or June.  And we've cited some cases in the papers for

13 | the proposition that even that length of a delay with respect

14 | to rescission is too short -- I'm sorry, is too long for

15 | purposes of asserting a fraudulent inducement claim.

16 |    There were a number of points made both in your

17 | questions and in counsel's responses about whether there was a

18 | meeting of the minds on a material term of the contract.  And

19 | I don't disagree that in the abstract a failure of a meeting

20 | of the minds on an essential contract term can be a basis for

21 | voiding a contract.

22 |    But we cited the *Cox Broadcasting v NCAA* case from

23 | the Georgia Supreme Court, which stands for the proposition

24 | that, in order for a misunderstanding about what a contract

25 | term means to qualify as a failure of the meeting of the

1  minds, both parties have to sign the contract knowing that

2  there is a difference of opinion about what that contract term

3  means.

4        And here, they have offered no evidence whatsoever --

5  there's a lot of arguments of counsel in the papers and today,

6  but there is no evidence whatsoever that their view of what

7  the word "products" in the contract means was ever

8  communicated to us in the course of the negotiations.  There's

9  no declaration or testimony that says, in a conversation with

10 the CEO of OTR I told him, we think "products" covered not

11 just a tire that has -- let me look to see if this one has --

12 it has the -- the Outrigger trademark on it -- but also a tire

13 that uses this tread pattern and does not have the Outrigger

14 trademark would qualify as a product.  There's no evidence of

15 that because it didn't happen.

16        This is a very carefully drafted contract that

17 explains in great detail what is or is not a product.  And the

18 fact that all parties after being advised by their own counsel

19 signed that contract is effectively conclusive proof that

20 there was a meeting of the minds on the essential terms of the

21 contract.

22        THE COURT:  In the contract that you provided to me,

23 can you show me where the definition of "product", if there is

24 one, is, or is it just mentioned generally?

25        MR. COBB:  Absolutely.  If you turn to Tab 8, Your

1  Honor.  This is going to be a two part.  So you see

2  highlighted language in Section 1.1.  Two portions of this

3  paragraph are highlighted.  I want you to focus on the top

4  portion that's highlighted.  It says:  The purpose of this

5  agreement is to set forth the terms and conditions under which

6  supplier -- supplier is Blacksmith -- and/or supplier's

7  affiliates will procure, sell and deliver, and buyer, OTR,

8  will purchase, and pay for, the tires as more specifically

9  described in Schedule 2 attached hereto, hereafter referred to

10 as the Products.  Unless otherwise stated, the term "Products"

11 refers to the listed items in Schedule 2.

12          So to turn to Schedule 2, you want to go to Tab 12.

13 Are you there?

14          THE COURT:  I am.

15          MR. COBB:  This is an extraordinarily detailed list

16 of very specific products -- part number, prices, tire size.

17          And if you look in the description, every single item

18 that is listed includes the relevant trademark that was the

19 subject of the parties' dispute.

20          This might require a little more background on the

21 nature of the 2023 action.  So the 2023 action was about the

22 trademark license agreement.  And the trademark license

23 agreement covered four trademarks -- Outrigger, Wearmaster,

24 Stabilizer and Lightning.  This agreement replaced the

25 trademark license agreement.  And it required that if we buy

1  an Outrigger tire, a Stabilizer tire, a Wearmaster tire, or a

2  Lightning tire, we buy it from them.

3          THE COURT:  So does that mean that they may have --

4  they may distribute their tires -- who makes their tires?

5  Some third party?

6          MR. COBB:  A third party manufactures these, based

7  overseas.

8          THE COURT:  So does the plaintiff then distribute

9  those tires through various means, which will leave open the

10  possibility that you could be purchasing their tires made by

11  someone else for them from another person, another entity?

12          MR. COBB:  I --

13          THE COURT:  The specific tire that's their tire.

14          MR. COBB:  It's their tire.

15          THE COURT:  Does anyone else distribute that, that

16  your client could conceivably get them from and then market

17  them?

18          MR. COBB:  I don't know the answer to that question.

19  It may be yes, but there's no evidence that it's happened;

20  right.  The tires that they are complaining about is this tire

21  (indicating).  So this is the new tire that they say -- I

22  should say, I hadn't seen these before today.  They told me

23  they were going to bring them.  I haven't had a chance to

24  examine them.  I assume these are authentic.  But if you're

25  going to consider taking them into evidence, we need to have a

1    discussion about that.  I'll assume for purposes of this that

2    these are actual tires prepared from my client OTR and from

3    Blacksmith on the other hand.

4         They say these tread patterns are the same.  And the

5    differences between these two tires, theirs has an Outrigger

6    mark on it and also on this side says "Blacksmith", ours has

7    LIFTBOSS S/T on it, which is the trade name for the -- brand

8    name for the tire, and OTR on the side.

9         Our view is that this is not a product because it's

10   not specifically identified on Schedule 2 of the contract.

11        And there's another component to this that I want to

12   make sure you're aware of.  Because you asked them a question

13   about -- what if there are no intellectual property rights,

14   would that change their view of whether we're permitted to

15   sell a tire that, again, they say has the same tread

16   pattern -- I'm not conceding that because I don't know.  But

17   let's just assume that it's true -- but does not contain a

18   cover trademark.  Does not say Outrigger on it.  And counsel

19   said, no, it wouldn't, because as a matter of contract, they

20   think that we have limited ourselves, even if there are no

21   intellectual property rights, to buy tires from them.

22        So I want to go back to the contract to just make

23   sure you can understand why that point I think is wrong.

24   Tab 8.  So if we go back to Section 1.1, the second portion of

25   Section 1.1 that's highlighted reads this:  Buyer, meaning

1  OTR, is under no obligation to purchase the products from

2  supplier -- I mean, frankly, we could have not been clearer

3  that we may never buy a single tire from you -- however, buyer

4  understands, it may not manufacture, procure and sell

5  Products, upper case P, define term "products", whether as

6  loose tires or as part of an assembly, and to the extent such

7  manufacture, procurement and sale would violate supplier's

8  intellectual property rights (such rights as of the date of

9  this agreement are set forth in Schedule 6).

10       The parties negotiated and agreed on what Blacksmith

11  told us its intellectual property rights were in this

12  Outrigger tire.  And I want to take you through Schedule 6,

13  because a point that they have made, they have patent rights

14  in that Outrigger tire, they have trade dress rights in the

15  Outrigger tire.  None of that is in this contract.  I mean,

16  think about that.  They made a big deal in this case about us

17  supposedly infringing the trade dress rights, for example, on

18  the Outrigger tire.

19       As part of these detailed negotiations with their CEO

20  involved, they had to come up with a comprehensive list of

21  what they said to us was their intellectual property for

22  Outrigger.

23       So I want you to turn to Schedule 6, which is Tab 13.

24  We didn't draft that Schedule 6.  They did.  There is nothing

25  about a trade dress on Schedule 6.  It is specifically

1 identified trademarks.

2      I mean, If anything, Your Honor, when I see that as

3 counsel for a client, I have to rely on them because I don't

4 know what Blacksmith thinks the extent of their intellectual

5 property rights is. They had great advisers. They had top

6 level business people. If they thought there was trade dress

7 protection on this different from these trademarks, I have --

8 it's inexplicable to me why they wouldn't have told us and

9 insisted on it being included in the contract.

10      THE COURT: Right. But if we assume for a moment

11 that there is a trade dress violation, I mean, that's an

12 independent claim that they can bring outside of the contract;

13 right, unless the contract allows in the future there to be a

14 trade dress violation?

15      MR. COBB: They could bring that as a counterclaim

16 in the 20 -- but we could litigate that and we could have

17 discovery on it. And ultimately a jury might have to resolve

18 that question.

19      I bring this up, Your Honor, because the premise of

20 their entire request that you set aside the Rule 41 dismissal

21 is that we somehow defrauded them. That's just

22 counterfactual.

23      And one thing you need to keep in mind is, under

24 Rule 60, when you are moving to set aside a stipulation on the

25 basis of fraud, it's an evidentiary standard. This is not

1  about pleadings or allegations.

2  And it's not a preponderance of the evidence

3  standard.  It is clear and convincing.  Why is it clear and

4  convincing?  You well know that our federal judiciary values

5  finality in bringing closure into cases.  And they're asking

6  for the finality of the 2023 action to be disrupted.  So

7  they've got to meet a heightened burden.

8  The only evidence in the record on their motion to

9  reopen is a declaration from one of their lawyers about a

10  conversation he and I had in July of last year.

11  This new declaration from one of Blacksmith's

12  engineers, that makes some statements I haven't cross-examined

13  him on about the similarities between those two tires and then

14  all these contracts, like, that is it.  They've got a lot of

15  arguments about how we supposedly defrauded them, but no

16  evidence.

17  And I would suggest, Your Honor, that if they made

18  these allegations in a complaint, it would be dismissible

19  under *Twombly* and Rule 9(b).  If that's true, it simply cannot

20  meet a clear and convincing evidentiary burden of proof in

21  order to set aside a stipulation of dismissal.

22  I want to make one other point, and then I'll sit

23  down.  And I don't think I need to harp on this.  But you

24  asked -- you made a comment about whether there is a dispute

25  about the existence of intellectual property protection and

1  commented that perhaps there's not.  I just want to make

2  absolutely clear, there is a dispute about the existence of

3  intellectual property protection.

4       I think everybody agrees that the word "Outrigger" is

5  held by Blacksmith, but nobody agrees that there is trade

6  dress protection associated with this tread pattern or the way

7  that the tread pattern intersects with the sidewall of the

8  tire and the overall look.  That is not an agreed upon point.

9  We dispute that.  And again, that's not an issue for today.

10 But they do offer the existence of the trade dress protection

11 as one -- they say evidence of fraud on our part.

12       We do not agree that there is any trade dress

13 protection.  And there was extensive litigation out in

14 Washington that ultimately went up to the Ninth Circuit on the

15 trade dress associated with this tire.  And a jury in a

16 federal court in Washington invalidated the registered trade

17 dress for this tire.

18       Now, they say there is unregistered trade dress, but

19 we do not concede that point at all.

20       And that's all -- again, none of this is something

21 Your Honor has to -- these are all merits related questions.

22 But I think the ultimate point is we can litigate all of this

23 in the 2024 case.  They can file their counterclaims.  We can

24 have discovery, figure out what the truth is, and let a jury

25 decide.  But the 2023 case is not available because it's been

1  dismissed and there's no subject-matter jurisdiction.

2          Does Your Honor have any questions?  There's a lot

3  more -- if you're interested in the contract, I'm happy to

4  walk you through it.  I just don't want to take up any more of

5  your time than is absolutely necessary.

6          THE COURT:  I don't have any questions.  Thank you.

7          MR. COBB:  Okay.  Thank you.

8          THE COURT:  All right.  Yes, sir.

9          MR. LONG:  Your Honor, much like Mr. Schaetzel is

10 here to speak on IP matters, if I could have a brief minute to

11 respond to the question that Mr. Cobb presented about the IP

12 that's present in these tires.

13         THE COURT:  I don't know that that matters for the

14 purposes of the issue about what case is primary, does it?

15         MR. LONG:  It does speak to the mens rea behind the

16 fraud I believe, if they believe --

17         THE COURT:  We don't get to mens rea until we decide

18 some threshold issues about misrepresentations.  So if you

19 want to speak about the contract terms, I'll be glad to hear

20 you.

21         MR. LONG:  Can you hear me okay?

22         So, yeah, with respect to the contract terms, I've

23 heard Mr. Cobb mention Schedule 6 and the list of IP that's in

24 Schedule 6.  And I think that is directly relevant.  He

25 mentioned Schedule 6 and it includes the Outrigger trademark

1  that's in there specifically.  And he just pointed to the

2  Outrigger trademarks on these tires.  And he also referenced

3  the --

4         THE COURT:  I mean, that's the name --

5         MR. LONG:  The trademark name that's printed on the

6  tires.  And the way these molds work -- I'm an engineer by

7  trade.  And I've looked at the way these are made.  Big

8  convoluted process.  There's these plates that go inside the

9  mold that have the trademarks on them as they -- they get

10 swapped out by various folks at different times.  And that's

11 precisely what the case that was in Washington state that went

12 to the Ninth Circuit was dealing with, almost the exact same

13 issue as before this Court.  So I was very surprised to hear

14 Mr. Cobb say that there is no trade dress because --

15        THE COURT:  I'm not trying to decide that.  I don't

16 want to talk about trade dress.  I want to talk about the

17 contract.

18        MR. LONG:  Okay.  So back to the contract then.  So

19 Outrigger, that's in the contract.  That's Schedule 6.  And we

20 can end it right here.

21        THE COURT:  Right.

22        MR. LONG:  So the West case that was in Washington

23 state that went to the Ninth Circuit dealt with the Outrigger

24 trademark that had been removed from the molds, precisely as

25 what's happened here.  And what was argued in the district

1 court, prevailed in the district court, and then was affirmed

2 by the Ninth Circuit, was that it was a violation of the

3 federal Lanham Act to remove the Outrigger trademark from

4 those tires.  And so that is a trademark issue that is

5 directly relevant to the supply agreement that incorporates

6 Schedule 6 with Outrigger in the name.

7          THE COURT:  And that's what would be included in a

8 claim for trademark violations or Lanham Act general

9 violations.  But that's not what we're talking about.  We're

10 talking about the contract itself.  Okay?

11          And so the plaintiff says that the defendant's

12 marketing of the tires they market are trademark violations.

13 I get that.  And I'm certainly not deciding that today.

14          I think we all know I'm not bound by what the Ninth

15 Circuit or some district court judge anywhere decided.  But

16 those are issues for another day.

17          So the fraud then is, you're saying, I guess, that

18 the fact that the defendants intended to essentially make the

19 same tire but to take the trademark off the tire would

20 demonstrate fraud in the way the -- fraud in the inducement in

21 the contract?

22          MR. LONG:  Yes, Your Honor.  So the way the timeline

23 works, in 2023, the molds for the accused product were

24 prepared.  And that's the declaration that we submitted, that

25 there's markings inside the tire to show when those molds were

1    made.  The molds were prepared with the Outrigger name

2    removed.

3         We then executed the license -- excuse me, the supply

4    agreement months later in 2024.  And then that same day after

5    we executed the agreement, we filed the notice of settlement

6    with this Court and then the Court entered the order, as we've

7    just discussed.  And so we thought we were all good.

8         And then as time progressed, we initially thought,

9    well, we've got a misunderstanding.  And then we reached the

10   position, well, we think we have a breach.

11        And it wasn't -- Mr. Cobb mentioned a phone call that

12   I was part of on July 31st.  And it was in that phone call

13   where Mr. Cobb and other folks on the phone said, oh, by the

14   way, we've never had an intent to buy product from you.  That

15   was the day we began to learn that there might have been fraud

16   here.  And that's when we --

17        THE COURT:  Is there language in the contract that

18   shows an intent to buy the product, like -- let me put it this

19   way, an obligation to buy the product?

20        MR. LONG:  An obligation to by the capital P Product.

21        Our understand was, they could have gone out and --

22        THE COURT:  Wait a minute.  Back up.  Back up.

23        You can point to a provision in the contract that

24   says they have to buy your capital P Product?

25        MR. LONG:  If they want to sell the capital P

                    UNITED STATES DISTRICT COURT

1  Product, they have to buy it from us, yes.

2          THE COURT:  Right.

3          MR. LONG:  So if they want to --

4          THE COURT:  Hold on.

5          The defendant's contention is, they're not selling

6  the capital P Product.  You disagree with that.  That would be

7  a breach of contract claim for sure.

8          Your argument then is, that if the defendants

9  objectively believe that they're not selling the capital P

10 Product that belongs to the plaintiff, they misled the

11 plaintiff on that because they never told the plaintiff that

12 they, being the defendants, believe that if the product was

13 similar without the Outrigger name or any of the other

14 trademark names that it wasn't covered?

15         MR. LONG:  I think that if the day after the

16 settlement agreement had been signed they then went out and

17 started procuring product, that would have been a breach.  I

18 think where the fraud comes in, is that they were planning to

19 do this all along.

20         They came -- we sat -- as Mr. Cobb mentioned, we sat

21 across the river here in a conference room and hashed all this

22 out.  And they said, no, we're going to buy this product from

23 you.  They made all these representations to us.  We had no

24 idea --

25         THE COURT:  But the representations are irrelevant
                    UNITED STATES DISTRICT COURT

1  per the terms of the contract if they're not embodied in the

2  contract.  I mean, that's a -- I'm sorry, you're North

3  Carolina?

4          MR. LONG:  Yes, sir.

5          THE COURT:  That's a fundamental law of North

6  Carolina I'm sure.

7          MR. LONG:  It is.  And that's -- I think that's in

8  the contract.  That's the capital P Product.

9          THE COURT:  But your argument is that -- your

10 argument is more than that.  Your argument is relying on this

11 case out West that when the Outrigger trademark is removed

12 that belongs to the plaintiff that the product that the

13 defendant sells is still capital P Product.  That's not in

14 this contract.  You're relying on a case to say that.  That's

15 not in the contract, though.

16          I mean, there's no terminology in this contract that

17 says that; right?  That's a question that calls for a yes or

18 no answer.

19          MR. LONG:  Well, yeah.  The West litigation is not in

20 the contract.

21          THE COURT:  Yeah.  So that's an argument that you

22 make.  And it may well be the law here too, but it's not in

23 the contract.  So you're relying on something outside the

24 terms of the contract that's only binding in the Ninth

25 Circuit.  Granted, that's a large part of the country, but

                    UNITED STATES DISTRICT COURT

1  it's not here.  So I don't know how that's fraud.

2          MR. LONG:  I think where it comes in -- I agree that

3  the Ninth Circuit is not binding here in the Eleventh Circuit,

4  but it is judicial estoppel I believe to take a 100 percent

5  diametrically opposed position in one form and then make a

6  different argument in the second form.

7          THE COURT:  I'm sorry.  Did that case involve

8  actually these defendants?

9          MR. LONG:  Oh, it was literally the same -- I've got

10  a copy of the brief here.

11          THE COURT:  I'm sorry.  What position did the

12  defendants take in the Ninth Circuit that you would claim

13  would be judicial estoppel?

14          MR. LONG:  So this is OTR's brief to the Ninth

15  Circuit.  And they say:  OTR thus owns unregistered trade

16  dress rights in its Outrigger tire tread design, arising from

17  its use in commerce.  These rights exist regardless of whether

18  OTR has a trademark registration.

19          Then the Ninth Circuit when they read this brief,

20  they blessed that and said, yes, unregistered trade dress

21  rights do exist.  Unfortunately you didn't plead them in your

22  complaint, so we're going to not reverse that piece of the

23  district court's order.  But they made that argument that

24  there were unregistered trade dress rights.  And so now

25  they're telling us, oh, there's not unregistered trade dress

1   rights.  Those are diametrically opposed positions in two

2   different federal courts.

3          THE COURT:  But we're not talking about -- we're not

4   litigating right now the issue of trade dress.  We're talking

5   about the contract.

6          So what language can you point to in the contract

7   where there's a misrepresentation or a confusion or an

8   ambiguity?

9          MR. LONG:  I would just go back to the definition of

10  "products".  So in the contract -- and this is docket entry --

11         THE COURT:  That doesn't help me.  I'm not going to

12  open the docket and start looking.

13         MR. LONG:  It's going to be Tab 10 of what Mr. Cobb

14  passed up.  This is Section 14.2.

15         THE COURT:  Okay.

16         MR. LONG:  This is the trademark license restriction.

17  The trade license -- there is a trademark piece to this.  The

18  trademark license granted herein shall be limited solely to

19  products, the current inventory on hand, and products on

20  order.  For avoidance of any doubt, the buyer shall not be

21  authorized by the supplier to use any BOTR trademark on any

22  capital P Product not procured from supplier unless the

23  products are included in the current inventory on hand or

24  products on order.

25         So again, we're going back to the Schedule 6.  And

1  these trademarks cannot be used.  And "by used" also means

2  removed from the existing molds.

3         THE COURT:  All right.  So I want to go back to a

4  question that I asked your colleague early.

5         If the ultimate issue in this case is decided that

6  what the defendant is selling does not violate the trademarks,

7  the trade dress, the designs, all of the intellectual property

8  rights that the plaintiff possesses in its products, then what

9  does that mean?  I mean, does that mean you have no claims at

10  all, that what they're doing is okay?

11         MR. LONG:  Yeah, I would agree.  So I think the

12  premise of the settlement and supply agreement was that they

13  could go out and design a wholly new product, which I

14  understand they have.  They have a product --

15         THE COURT:  Let's go back to my question.

16         If what they're selling from wherever they got it,

17  whether they made it or they had someone make it, doesn't

18  violate the plaintiff's intellectual property rights, then

19  there is no fraud in the inducement either; right?  Because

20  your theory is that there was fraud in the inducement because

21  they always intended to sell a product that violated our

22  intellectual property rights and we feel like it was protected

23  by the agreement; correct?

24         MR. LONG:  I would agree with that characterization.

25         THE COURT:  All right.  So can you address the issue

1  then, does it really make a difference whether we litigate

2  this under either contract that was signed or the independent

3  rights that the plaintiff has that could be filed as a

4  counterclaim?  At the end of the day, the issue always comes

5  back to are there intellectual property rights.

6         Because I don't think the defendants are claiming

7  that you gave them some intellectual property rights that they

8  are using properly.  They're claiming, we're not utilizing any

9  of the intellectual property of the plaintiff at all.

10        So it doesn't really sound like it matters for

11 purposes of which case we travel under, that the ultimate

12 question is going to come down to that, under your theories or

13 under their theories.

14        MR. LONG:  Yes, Your Honor, I believe that's correct.

15 I think either could be a vehicle for the heart of this

16 dispute.  But I mean, the fraud seems to fit the structure of

17 the first filed case because that's where the fraud occurred

18 in the settlement agreement in that case.  But I agree that

19 could be a counterclaim in the second filed case as well.

20        THE COURT:  So only fraud, though, if they're

21 utilizing your trade dress or your trademarks or your designs

22 because that is a necessary component of what you claim to

23 have been fraud, is that they were always intending to do

24 that.

25        MR. LONG:  Right.  They were prepared --
                    UNITED STATES DISTRICT COURT

1           THE COURT:  Excuse me.  And they are.

2           MR. LONG:  And they are, that's correct.

3           THE COURT:  All right.  So -- and I don't know if you

4    want to argue this or you want to allow Mr. BenGera to argue

5    it.  But what about their arguments about that it's too late

6    to rescind, so to the extent that you're claiming fraud as a

7    basis to undo what you agreed to that you can't do it now?

8           MR. LONG:  So I'll let Mr. BenGera speak to that

9    specifically, except for I want to interject one piece as far

10   as the delay in this case.

11          There was a period of time that Mr. Cobb agreed to

12   allow us an extension of time because I personally was

13   suffering from COVID.  So there's a period of time during --

14   before we filed the motion to reopen where we were just out of

15   pocket.  So there is a window of time in there I think that

16   should be excusable as far as the time goes.

17          And I'll let Mr. BenGera speak, though, as to the

18   rescission piece of it.

19          THE COURT:  Okay.  All right, Mr. BenGera, sir.

20          MR. BENGERA:  Thank you, Your Honor.

21          Let me say one more set of points on the timing

22   issue.  I think Mr. Cobb called me out for using -- I think I

23   used a "few days" and it turned out that it was a few weeks.

24   That's my mistake.  The Rule 60(b) gives a party up to a year

25   to file a motion to reopen --

1          THE COURT:  That's like a statute of repose, though.

2          MR. BENGERA:  Right.

3          THE COURT:  That doesn't mean you have a year after

4    you find out about it.

5          MR. BENGERA:  Correct.  Right.  The year is a bar.

6    And then beyond that, there's also a standard of delay that

7    courts consider.

8          And I think OTR cited several cases where a handful

9    of months was sort of the litmus test of what excusable delay

10   was permitted.

11         In his presentation, Mr. Cobb talked about end of May

12   or May being the time, sort of the starting point when the

13   clock should start against Blacksmith in this case.  The May

14   date that Mr. Cobb refers to is the first instance where

15   Blacksmith understood there was even a disagreement over what

16   essentially the term "product" means and the scope of the

17   supply agreement.  That conversation led to further

18   conversations, involvement of counsel.

19         And there's a letter -- I think it's a June 20th

20   letter in the record -- of when the first time that the --

21   sort of the lawyers got involved and started discussing

22   amongst themselves whether there's a disagreement that rose to

23   the level of having further conversations about it.  That then

24   led to this July 30th phone conversation.  And the motion was

25   filed a few months after that.

1    And so the timing, I don't know that -- to the extent

2  Your Honor reaches that point, I think we're talking about a

3  matter of weeks from when the fraud became apparent to

4  Blacksmith, and that that falls well under even the cases that

5  OTR cited that say that a few months is the permissible amount

6  of delay.

7    THE COURT:  Wouldn't the fraud be apparent to the

8  plaintiff immediately upon knowing that the defendant was

9  selling a tire that you contend violates your trademarks and

10  trade dress and designs?

11    MR. BENGERA:  In the beginning it sounded -- I think

12  the arc that we've come to believe is that there -- around May

13  we understood there was a misunderstanding over, it really

14  comes down to the definition of "product".  At some point we

15  believed that that was going to be a breach of contract claim.

16  What is the definition of "product"?  Is a tire scrubbed of

17  the trademark still a product?  And maybe that's a -- maybe

18  that is a contractual dispute.

19    The fraud comes in where we go back to what OTR was

20  thinking and doing in the months leading up to the settlement

21  agreement where they knew that the dispute from 2019 was about

22  a lack of trust over a trademark license.

23    The resolution -- the whole framework of the

24  settlement and the supply agreement was to structure it

25  differently, to not structure as a trademark license, but to

1  force OTR to -- if it wanted product at all -- it doesn't have

2  to buy any product.  But if it wants to sell that tire, it has

3  to buy from us, whether it's used as its own name or ours.

4         THE COURT:  The problem is, you didn't include broad

5  language like that.  And when I say you, I don't mean you.  I

6  mean your client didn't include in their contract language

7  like that.  And it would have been so easy to do.  I mean, you

8  could have drafted broader language that talked about tires

9  that are substantially similar in design.

10        Now, we might fight over what that means, but that

11 would at least evidence an intent to be something more than

12 just your tire.

13        MR. BENGERA:  I think we have something here that's

14 more than substantial similarity.  We have tires that were

15 formed -- if you read Mr. Milam's declaration, were formed

16 from the same -- either the same mold or the same set of sort

17 of 3-D files that create the mold.  So they're not --

18        THE COURT:  How do you know they used the same

19 design?

20        MR. BENGERA:  We don't know that -- So Mr. Milam's

21 declaration -- he's the lead engineer for Blacksmith --

22 inspected these two tires, including -- if you look -- you're

23 probably too far.  But on the inside of the tire, they call it

24 a bladder.  It has a fingerprint.  These tires have

25 fingerprints.  They either come from, let's say mold minus the

1    plate, or they come from two molds that were created from the

2    same 3-D file.  The file creates mold, the mold creates the

3    tires.

4         So to say that these two tires are substantially

5    similar is an understatement.  They're identical but for the

6    trademarks.

7         And Mr. Cobb was sensitive to walk around and say I

8    don't concede that.  He said, Blacksmith says they're the

9    same.  I don't know that Mr. Cobb has a list of differences or

10   that it really matters, but these two tires are the same but

11   for the trademark.

12        And the point of the -- goes back to the fraud, the

13   absence of the meeting of the minds, the misrepresentation, is

14   whether at the outset of settling this case, the 2023 case,

15   original dispute, whether OTR intended to -- intended for

16   Blacksmith to think that it was going to buy this tire if it

17   wanted to sell this tire, or rather, that it could take all

18   the other bundle of rights that are embodied in this tire,

19   just swap out the name, using the same 3-D file and/or the

20   same mold and just sell it itself.

21        And if that was communicated to Blacksmith or even

22   became a point that Blacksmith was thinking about, it never

23   would have agreed to release OTR of the trademark license

24   agreement and all of its claims brought in the 2023 complaint.

25        THE COURT:  Give me just a second.  Before you move

UNITED STATES DISTRICT COURT

1    on, give me just a second.

2                          **(brief pause)**

3              THE COURT:  Go ahead, sir.

4              MR. BENGERA:  And if Your Honor has the binder that

5    Mr. Cobb passed up, in Tab 10, Section 14.2 -- it's the

6    sentence that Mr. Long read a moment ago -- your Honor asked a

7    question --

8              THE COURT:  Hold on a second.  Let me catch up to

9    you.  10 point what?

10             MR. BENGERA:  It's Tab 10.  It's the page that the

11   tab sticker is on.  And it's Section 14.2.  And we're in the

12   supply agreement.  And it's the same sentence that Mr. Long

13   read to you a moment ago that says -- and I'm on the second

14   line towards the end -- For the avoidance of doubt, the buyer

15   shall not be authorized by the supplier to, quote, use any

16   BOTR Blacksmith trademark on any product not procured from

17   supplier.

18             So the issue of whether a product is still a product

19   if it doesn't have the trademark is answered in that section,

20   in that sentence; because it wouldn't say, using a trademark

21   on a product, if it wasn't the case that it was still a

22   product without the trademark.  If removing a trademark made

23   it no longer a product, you wouldn't say, using any trademark

24   on a product, because it's not a product without the

25   trademark.

1          So I think that's -- I mean, I think it's dis -- at

2  worse it's -- at best it's disingenuous of OTR to sit here now

3  and say that if they just take the trademark off it's not a

4  product.  And I think the evidence based on what they were

5  doing in the months leading up to the settlement shows that it

6  was more than disingenuous, it was fraudulent inducement.

7          THE COURT:  Anything else, sir?

8          MR. BENGERA:  Yes.

9          THE COURT:  So as it relates to -- two things really,

10 I guess.

11         As it relates to the fraud claim generally, what

12 about the allegation that your client has continued to take

13 payments from the defendant pursuant to that contract even

14 after this lawsuit was filed?  Is that true?

15         MR. BENGERA:  I think that we've received -- I don't

16 have that in front of me, but I think we've received the

17 payments.  And I assume that we've continued to accept them.

18         THE COURT:  So what does that mean?  I mean, I know

19 what it means under Georgia fraud law, which is, you can't now

20 try to undo the contract.  I mean, that's fairly easy to

21 decide.

22         But as it relates to Rule 60, if you're claiming

23 fraud and you want to set aside the contract -- you want

24 release from the judgment.  The judgment was premised on a

25 contract.  If you can't set aside the contract under regular

1   Georgia law that exists between the parties because you are

2   continuing to receive the benefit of the contract, then are

3   you able to utilize that under Rule 60 anymore?

4           MR. BENGERA:  So I think that the key here is that

5   under 60 -- so we're bringing this motion under 60(b)(3) and

6   also 60(b)(6).

7           60(b)(3) itself has three terms.  It refers to fraud,

8   it refers to misrepresentation and it refers to misconduct.

9           THE COURT:  Hold on a second.

10          MR. BENGERA:  And I --

11          THE COURT:  I'm sorry.  60(b)(3) refers to fraud?

12          MR. BENGERA:  60(b)(3) itself has three terms --

13  fraud, misrepresentation and -- or -- I think it's "or

14  misconduct".  So any one of those three is sufficient to

15  invoke 60(b)(3).

16          The rescission and the fraud component that Your

17  Honor is referring to --

18          THE COURT:  I'm sorry.  What's the misrepresentation?

19          MR. BENGERA:  I mean, the failure to disclose the

20  premise of OTR's intended conduct, which was --

21          THE COURT:  That's fraud.  I mean, misrepresentation

22  is if I tell you something that's not true.  But you go to the

23  contract for that.  So it's all going to be defined what's in

24  the contract.  No private discussions are going to matter as a

25  matter of Georgia law.  I don't think federal law, procedural

1   law is going to let you undo Georgia's substantive law on

2   that.

3          So misconduct, what would be the misconduct?  The

4   same thing?

5          MR. BENGERA:  The same thing.  I think the point is

6   that misrepresentation and misconduct are lesser burdens than

7   fraud.  And there are two cases, both of which I believe are

8   cited in our proposed order and conclusions of law.  It's the

9   **U.S. V Wong Kim Bo**.  It's 472 F.2d 720.  It's a Fifth Circuit

10  case from 1972, that says:  "A misrepresentation need not rise

11  to the same level of false statements made with the intent to

12  deceive."

13         And then a second case, **United States V Douglas A-26B**

14  **Aircraft**.  That's 662 F.2d 1372.  That's an Eleventh Circuit

15  case from 1981.  And it says:  "At least one decision in the

16  Fifth Circuit has afforded relief for misrepresentation under

17  60(b)(3) despite the absence of, quote, a deliberate evil

18  purpose to misstate or conceal or thereafter engage in

19  foot-dragging lest the truth might be uncovered."

20         THE COURT:  Here's my point:  My point is, nothing

21  that was said outside the terms of the contract is going to

22  matter, unless it's ambiguous.  We have -- because of the

23  merger clause.  I mean, you've got two of them, apparently, in

24  this agreement, at least.  So you're not going to be able to

25  point to anything else.

1          MR. BENGERA:  I think that at -- again, at best

2    there's an ambiguity about -- I mean, that's what we're

3    fighting about, is whether those two are the same product even

4    if one has scrubbed the Blacksmith trademark.

5          THE COURT:  Well, maybe there's an ambiguity.  I

6    mean, you don't just get to decide that there is.  I mean,

7    that's -- yeah, but that's -- but still, that's dependent on

8    the terms of the contract.  We don't look outside the contract

9    to determine if there's ambiguity.  You look at the contract.

10         You pointed out something that's helpful to your side

11   for sure when you pointed to 14.2 and said, the buyer shall

12   not be authorized by the supplier -- you're the supplier in

13   this agreement -- to use any BOTR trademark on any products

14   not procured from the supplier.

15         Of course, there's another explanation for that.  In

16   other words, your argument is:  Well, if it's not, as the

17   defendants say, a product unless it includes the trademark on

18   it -- because that's their position.  I guess at least a

19   part -- then you wouldn't really even need to say that.

20         But there is another explanation.  And that is

21   that -- hence my question earlier to Mr. Cobb about, is it

22   possible that you can buy products from other people, the same

23   products that came from your client.  And I don't think I can

24   take testimony outside the contract for that point, if you

25   understand what I'm saying.

                    UNITED STATES DISTRICT COURT

1           I mean, because I guess in the abstract -- let me use
2    an example.  I'm guessing you're too young to remember --
3    maybe you do.  So Coca-Cola -- I'm drawing on my own
4    experience here.  Coca-Cola or Pepsi will give schools and
5    nonprofits the coolers, the Coke machine, the Pepsi machine.
6    Back when I was a kid, it was a thing you opened up and
7    reached down and grabbed it out of the cold water.  And I
8    promise you, it was a lot better.  But that might have been
9    because it was glass, and so it got colder.

10           MR. BENGERA:  And they used real Cane sugar back
11   then.

12           THE COURT:  Absolutely.

13           But incidentally, you know, part of the agreements
14   when they give you these free devices, these free chillers, is
15   that you not only sell only their products and put their
16   products in -- you don't put Coke in the Pepsi machine -- but
17   that you also buy the product from them directly and you don't
18   buy it -- whatever the precursor was for Sam's and Costco, you
19   don't go buy it wholesale there, you buy it from them.

20           So, you know, there certainly exists the possibility,
21   just in the abstract, that tires could be purchased from
22   another person, from another entity that are in fact the
23   plaintiff's tires.  And maybe the plaintiff would discount
24   those tires to one person or the other, give a better price
25   than maybe they would give, you know, the defendant in this

UNITED STATES DISTRICT COURT

1  particular case.

2         And so this clause then could be -- with that being a

3  possibility maybe -- it didn't happen here -- be a possibility

4  to make sure that the profit that you've negotiated to make

5  from the defendant's use of your tires is not lost because

6  they then go buy the tires that has your trademarks on it from

7  someone else, hence, that you've got to buy the products in

8  this particular clause from us that has the trademark.

9         I'm just suggesting -- I'm coming up with a

10 hypothetical, but I'm just suggesting that the language itself

11 has to be read in -- for what it is and I have to find

12 ambiguity inherently in that language before I can find any

13 testimony on -- try to resolve that ambiguity as even

14 possible.

15        But I understand your arguments about -- I think in

16 total.

17        And I assume you agree with your colleague, you know,

18 Mr. Long, that -- but ultimately for you to prove that there's

19 been misconduct or there's been fraud, that there's been --

20 what was the other one?

21        MR. BENGERA:  Misrepresentation.

22        THE COURT:  -- misrepresentation, it really kind of

23 depends on whether or not what the plaintiff -- excuse me,

24 what the defendant is selling does violate your trade dress or

25 your trademarks or your designs.  It's got to be -- because if

1   it doesn't, then there really is no claim just because they're

2   selling a product that's a lot like yours; correct?

3           MR. BENGERA:  Correct.

4           THE COURT:  Okay.  So in some regards, it really

5   doesn't matter which lawsuit we're proceeding in.  That's one

6   of the -- Mr. Cobb's arguments.  I mean, we're going to have

7   to decide that issue regardless; correct?

8           MR. BENGERA:  We're going to have to decide that

9   issue regardless.  I think Your Honor made the valid point

10  about the aesthetics of plaintiff and defendant, and maybe

11  that shouldn't carry the day.  But we would submit that we

12  would want to tell our story to the jury first in the same way

13  that Your Honor recognized the significance of that.

14          And also I think would -- if Your Honor -- we brought

15  this motion thinking that -- not thinking, but hoping that

16  Your Honor would find for us on the fraud component, which if

17  Your Honor were inclined, would certainly streamline the

18  proceedings.  It would allow Your Honor to dismiss the second

19  filed case on account that if there's no agreement to enforce,

20  then there's also no reason to entertain a DJ of non-breach.

21          THE COURT:  Well, except that you don't have to have

22  an agreement.  I mean, if you contend that someone's product

23  violates your rights and they say it doesn't, then they can

24  come to court and ask for declaratory judgment because you're

25  threatening to sue them.  You are.  I mean, they don't need to

1  have an agreement for that.

2          MR. BENGERA:  Right.  But they're referring here to

3  an agreement.  So if there was never an agreement, there's

4  nothing to -- there are no rights to enforce and we'd be back

5  to litigating the claims --

6          THE COURT:  Except their general right of

7  competition.  You say stop it, you're violating our rights.

8  And they say, we're not.  And when there's uncertainty, then

9  you're allowed to come to court and file the declaratory

10  judgment to start with.  You don't have to wait until you get

11  sued, for example.

12          MR. BENGERA:  Absolutely.  I mean, I think some of

13  their claims might survive.  I think that the DJ claims would

14  become -- would be mooted if Your Honor --

15          THE COURT:  Well, to the extent it's talking just

16  about the contract itself.  But they're -- aren't they also

17  asking for declaratory judgment that their product doesn't

18  infringe on your products?

19          MR. BENGERA:  I think there are claims to that

20  effect.

21          THE COURT:  Yeah.  Okay.  Thank you.

22          Let me -- I'm going to end the conversation right now

23  and just say this:  As it relates -- let me back up and say

24  this point.  And Mr. Cobb highlighted this case that was

25  argued on Tuesday maybe.  I wish I could say, oh, yeah, I was

1    really aware about that.  I might have been aware that the
2    *TikTok* case was going be argued or that the *PornHub* case was
3    going to be argue, but I promise you I did not know that they
4    were going to argue about Rule 60.
5            But the point is one for us to consider.  And I guess
6    I would say this to the plaintiff:  You may be right on all
7    what you argue about Rule 60, but you might not be.
8            And I think just generally parties, lawyers, should
9    be very careful in asking a court to take a step to take an
10   action that might not be in their best long-run interest.
11           So for example, let's say that Mr. Cobb is right and
12   I dismiss or consolidate -- let's say dismissed the
13   defendant's claim and say we're traveling under the 23 case
14   and we're going to deal with the fraud claims, and assuming
15   the plaintiff prevails on the trademark-related claims and
16   trade-dress related claims, but then the Supreme Court were to
17   determine, no, you don't exist, you can't do it that way,
18   there's no jurisdiction for that, Rule 60 doesn't apply, maybe
19   it doesn't apply in this case because you didn't act quickly
20   enough, so that's kind of irrespective of the Supreme Court's
21   ruling, but then maybe we've lost all this time kind of
22   running in place like Barney Rubble.
23           You probably are too young to remember Barney Rubble,
24   I guess.
25           MR. BENGERA:  Flintstones?

UNITED STATES DISTRICT COURT

1          THE COURT:  You watched Flintstones?

2          MR. BENGERA:  I have young children, so yes.

3          THE COURT:  Okay.  All right.  Well, I'm glad to know

4    they still watch some of the good stuff.

5          You know, we've run in place and really gotten

6    nowhere at the end of the day.  But I can say the same thing

7    as it relates to Mr. Cobb and his client's position as well.

8          At the end of the day, the issue is -- all of it

9    comes back to is, the product that the defendant is selling

10   doesn't violate the plaintiff's trade dress and trademarks and

11   design rights, their intellectual property rights.  Because if

12   it does, no matter what the contract itself that they used to

13   settle the original claim says, then, you know, the defendants

14   will have a problem that they have to deal with because the

15   plaintiff will be able to get some relief in this case.

16         So I'm not going to endeavor to decide today as it

17   relates to the 23 case whether or not, you know, it's primary

18   or whether it should survive at all.  So I am going to -- let

19   me open the file and look at it so I'm speaking on the record

20   correctly.

21         So I am going to -- as it relates to the 23 case, I

22   am going to deny without prejudice the motion to reopen that

23   case.  That case will remain closed for the time being.  And

24   I'm just simply going to defer ruling on those issues at this

25   point in time.

1        The reason I am denying it without prejudice is
2  because of the six-month rule.  I don't anticipate ruling on
3  this anytime in the next six to nine months.  That motion
4  might not appear on -- the motion to reopen was filed -- the
5  motion was filed on September the 23rd.  So it would appear on
6  the six-month list for me to rule on by -- if it remains in
7  active motion, to rule on by the end of March.  And I don't
8  anticipate ruling on it by the end of March.  So I'm going to
9  terminate without prejudice that motion.  We'll do that in a
10 minute order.  Meaning that we can and will revisit all of
11 those issues in this case at some point.

12       As it relates to the motion to dismiss filed by the
13 plaintiffs to -- declaratory judgment action, the Court is not
14 going to dismiss nor is the Court going to consolidate.  I'm
15 also going to deny that motion at this point in time without
16 prejudice for the same reasons that I outlined.

17       We're going to proceed to litigation under the 24
18 case.  So we'll do that by minute order.

19       So the obligation for the plaintiff to answer the
20 petition filed by the defendant and to file any counterclaims
21 you wish to file, that time period will begin to run from
22 today.  I'm not exactly sure if you get 14 days from today.
23 I'm thinking 14 days from today.  So you need to go ahead and
24 file your response.

25       I'm not, obviously, capable today in trying to make
                    UNITED STATES DISTRICT COURT

1  any kind of conclusion, nor really is anyone asking, about

2  whether or not what the defendant is doing is acceptable,

3  whether or not any of the plaintiff's rights have been

4  violated.

5          You know, this really kind of puts us back to square

6  one of the original litigation.

7          And there was a reason why the parties settled the

8  case before.  Maybe the defendant's reason was because they

9  felt like they could do what they're now doing and be fine.  I

10 can't answer the question to that today.

11         I would encourage the parties to continue to try to

12 figure out if there's a way to resolve this.

13         I'm sorry.  I've got general counsel for the

14 defendant here and maybe some other people from the defendant

15 here.

16         What about from the plaintiff?  Anybody here for the

17 plaintiff?

18         Okay.  Here's what I tell you:  Get ready to pay for

19 a lot of attorney's fees and expert fees, because that's where

20 we're going.  I mean, I wish I could -- I wish this was a

21 small claims court kind of situation where you could just come

22 in here and state your case to a judge and walk out of here

23 with a judgment, but that's not the way intellectual property

24 litigation is.  And y'all know that because you settled it

25 before, thinking you had it settled finally and completely.

1          But y'all got stuff to fight about.  And, you know,

2    the lawyers have a right to be paid and the experts have a

3    right to be paid.

4          I make no more or no less money one way or the other.

5    But I can't decide these on a summary basis.  So get ready to

6    fund the litigation.  And if you work it out again in a way

7    that's successful to both parties, then I'm certainly happy to

8    hear that.  But otherwise, it's time to file your answers and

9    your counterclaims, have your Rule 26 conference in the 24

10   case, and get ready to fight about the substantive issues.

11         All right.  Thank y'all.

12         MR. LONG:  Thank you, Your Honor.

13         MR. COBB:  Thank you, Your Honor.

14         **(The proceedings concluded at 11:36 a.m.)**

15

16

17                  Reporter's Certification

18   I certify that the foregoing is a correct transcript from the

19   record of proceedings in the above-entitled matter.

20                            /S/Geraldine S. Glover, RPR, CRR, RCR

21                            Official Court Reporter
                             United States District Court
22                            Northern District of Georgia

23   Date:   January 19, 2024

24

25

                     UNITED STATES DISTRICT COURT

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

MR. BENGERA: [59]
9/14 9/24 11/6 11/12
11/19 11/23 12/2 12/21
13/6 13/8 14/22 15/16
15/23 16/1 16/6 16/17
17/2 18/11 19/7 19/9
20/15 20/21 21/15
21/23 22/13 23/18
23/20 24/14 26/5 26/11
26/18 27/10 27/16
28/24 61/20 62/2 62/5
63/11 64/13 64/20 66/4
66/10 67/8 67/15 68/4
68/10 68/12 68/19 69/5
70/1 71/10 72/21 73/3
73/8 74/2 74/12 74/19
75/25 76/2
MR. COBB: [27] 3/14
3/20 28/25 29/7 29/11
29/13 29/15 29/17
32/21 32/24 33/4 35/24
36/3 37/6 37/19 38/20
38/23 39/1 43/25 44/15
45/6 45/12 45/14 45/18
48/15 51/7 79/13
MR. LONG: [28] 4/12
51/9 51/15 51/21 52/5
52/18 52/22 53/22
54/20 54/25 55/3 55/15
56/4 56/7 56/19 57/2
57/9 57/14 58/9 58/13
58/16 59/11 59/24
60/14 60/25 61/2 61/8
79/12
MR. SCHAETZEL: [1]
4/2
MR. SMALLEY: [1]
4/5
THE COURT: [115]

$
$1.2 [2] 38/13 41/8
$1.2 million [1] 41/8
$2 [2] 14/8 14/10
$2 million [2] 14/8
14/10

-
-Atl [1] 2/12

/
/S/Geraldine [1] 79/20

1
1.1 [3] 44/2 46/24
46/25
10 [6] 39/14 39/16
58/13 66/5 66/9 66/10
100 percent [1] 57/4
11 [2] 39/15 39/22
11:36 [1] 79/14
12 [1] 44/12
1252 [1] 40/21
13 [1] 47/23

13-4-60 [1] 42/1
13275423 [1] 41/1
1372 [1] 69/14
14 [2] 77/22 77/23
14.2 [4] 58/14 66/5
66/11 70/11
15 [1] 31/18
16 [3] 1/17 32/10 32/24
16th [3] 32/2 32/18
33/19
1714 [1] 1/24
18 [1] 33/20
186 [4] 3/11 4/21 40/23
41/24
19 [1] 79/23
1972 [1] 69/10
1981 [1] 69/15

2
20 [1] 48/16
2002 [1] 40/21
201 [1] 40/21
2011 [1] 40/23
2019 [4] 17/10 17/13
41/1 63/21
2023 [18] 10/23 17/18
24/21 25/5 25/15 31/17
31/18 36/22 38/6 39/11
40/6 44/21 44/21 49/6
50/25 53/23 65/14
65/24
2024 [10] 1/17 3/14
31/17 36/9 36/23 37/2
37/7 50/23 54/4 79/23
20th [1] 62/19
23 [11] 4/17 4/19 7/8
7/12 7/13 9/10 24/8
32/11 75/13 76/17
76/21
23-cv-279 [1] 4/20
23rd [2] 42/9 77/5
24 [3] 7/24 77/17 79/9
24-cv-186 [2] 3/11 4/21
26 [2] 12/12 72/9
26B [1] 69/13
279 [1] 4/20
290 [2] 40/23 41/24
2d [1] 40/21

3
3-D [3] 64/17 65/2
65/19
30303-3309 [1] 1/25
30th [1] 62/24
31st [1] 54/12
3309 [1] 1/25

4
41 [3] 33/21 34/25
48/20
43 [1] 33/4
472 [1] 69/9
4:23-cv-00279-WMR
[1] 1/5
4:24-cv-00186-WMR
[1] 1/11

6
60 [21] 25/9 25/22
34/18 35/5 35/13 42/1
48/24 61/24 67/22 68/3
68/5 68/5 68/6 68/7
68/11 68/12 68/15
69/17 75/4 75/7 75/18
662 [1] 69/14

7
720 [1] 69/9
75 [1] 1/24

9
9:30 [1] 1/17

A
a.m [2] 1/17 79/14
ability [2] 25/8 35/23
able [8] 18/2 20/1 21/9
27/6 28/21 68/3 69/24
76/15
about [81]
above [2] 31/23 79/19
above-entitled [1]
79/19
above-styled [1] 31/23
absence [4] 24/20
24/20 65/13 69/17
absent [3] 14/23 26/6
26/12
absolutely [6] 39/1
43/25 50/2 51/5 71/12
74/12
abstract [4] 14/2 42/19
71/1 71/21
accept [1] 67/17
acceptable [1] 78/2
account [1] 73/19
accurate [1] 42/8
accurately [2] 20/2
20/3
accused [1] 53/23
Acquisition [1] 40/20
across [1] 55/21
act [3] 53/3 53/8 75/19
action [10] 7/25 16/3
35/19 39/11 42/5 44/21
44/21 49/6 75/10 77/13
actionable [1] 9/10
actions [1] 16/11
activate [1] 33/1
active [1] 77/7
acts [1] 26/24
actual [4] 18/18 27/2
39/4 46/2
actually [9] 3/12 3/15
23/7 24/1 24/3 31/16
36/18 37/23 57/8
add [1] 26/11
address [5] 3/24 9/9
9/18 35/20 59/25
administrative [5] 32/4
32/10 32/14 33/18 34/8
administratively [2]

12/9 33/7
adopt [1] 34/16
advantage [1] 36/13
advised [1] 43/18
advisers [1] 48/5
aerial [1] 37/22
aesthetics [1] 73/10
affect [1] 35/4
affecting [1] 11/7
affiliates [1] 44/7
affirmatively [1] 30/25
affirmed [1] 53/1
afforded [1] 69/16
after [8] 34/3 42/7
43/18 54/4 55/15 62/3
62/25 67/14
again [10] 11/22 24/6
33/12 41/23 46/15 50/9
50/20 58/25 70/1 79/6
against [3] 7/25 31/12
62/13
ago [2] 66/6 66/13
agree [14] 15/13 15/13
19/11 26/2 26/4 26/13
34/16 35/11 50/12 57/2
59/11 59/24 60/18
72/17
agreed [8] 7/14 7/14
20/7 47/10 50/8 61/7
61/11 65/23
agreeing [1] 26/25
agreement [126]
agreements [3] 14/11
40/3 71/13
agrees [2] 50/4 50/5
ahead [2] 66/3 77/23
air [1] 7/6
Aircraft [1] 69/14
Alex [4] 4/7 4/12 4/13
4/14
Alexander [1] 2/5
all [62] 3/2 3/9 3/16 4/3
4/10 4/16 5/6 8/21 9/3
12/17 12/18 12/18 14/3
16/23 17/4 20/25 22/8
24/9 28/15 29/10 29/22
31/15 36/8 36/23 37/2
37/18 38/9 38/21 38/23
39/8 39/9 40/2 43/18
49/14 50/19 50/20
50/21 50/22 51/8 53/14
54/7 55/19 55/21 55/23
59/3 59/7 59/10 59/25
60/9 61/3 61/19 64/1
65/17 65/24 68/23 75/6
75/21 76/3 76/8 76/18
77/10 79/11
allegation [1] 67/12
allegations [4] 6/1 8/3
49/1 49/18
alleged [3] 17/15 19/5
31/2
allegedly [1] 5/25
alleges [1] 7/24
allow [4] 8/17 61/4
61/12 73/18

allowed [2] 8/25 74/9
allows [1] 48/13
almost [3] 9/4 14/16
52/12
alone [1] 10/19
along [2] 17/4 55/19
already [1] 25/25
also [20] 11/8 19/17
19/21 23/12 23/15
25/14 34/12 37/6 40/24
43/12 46/6 52/2 59/1
62/6 68/6 71/17 73/14
73/20 74/16 77/15
altogether [1] 38/19
always [6] 20/9 32/4
36/21 59/21 60/4 60/23
am [6] 5/9 44/14 76/18
76/21 76/22 77/1
ambiguity [6] 58/8 70/2
70/5 70/9 72/12 72/13
ambiguous [3] 26/3
26/9 69/22
amongst [1] 62/22
amount [1] 63/5
another [12] 24/22
29/15 29/16 40/24
45/11 45/11 46/11
53/16 70/15 70/20
71/22 71/22
answer [7] 24/15 36/5
38/3 45/18 56/18 77/19
78/10
answered [3] 35/23
35/24 66/19
answers [1] 79/8
anticipate [2] 77/2 77/8
anticipation [1] 17/7
any [38] 3/23 7/13 7/14
9/3 9/9 16/3 18/25 19/1
19/4 20/10 21/7 21/13
21/19 28/11 31/1 39/18
41/12 42/5 50/12 51/2
51/4 51/6 55/13 58/20
58/21 58/21 60/8 64/2
66/15 66/16 66/23
68/14 70/13 70/13
72/12 77/20 78/1 78/3
anybody [2] 42/2 78/16
anymore [1] 68/3
anyone [2] 45/15 78/1
anything [11] 5/9 7/16
16/14 22/19 24/10
31/14 38/7 40/17 48/2
67/7 69/25
anytime [1] 77/3
anyway [1] 7/5
anywhere [1] 53/15
apparent [2] 63/3 63/7
apparently [1] 69/23
appear [2] 77/4 77/5
applicable [1] 12/12
applicant [1] 10/12
applies [3] 15/20 33/25
34/1
apply [2] 75/18 75/19
appreciate [2] 9/16

UNITED STATES DISTRICT COURT

(1)  MR. BENGERA: - appreciate

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**A**

appreciate... [1]  21/9
approach [2]  29/1
 29/11
appropriate [1]  10/6
April [4]  31/17 32/2
 32/18 33/19
April 16th [3]  32/2
 32/18 33/19
arc [1]  63/12
are [82]
aren't [1]  74/16
argue [7]  9/13 28/6
 61/4 61/4 75/3 75/4
 75/7
argued [6]  33/22 34/23
 35/14 52/25 74/25 75/2
arguing [1]  4/9
argument [19]  4/7 13/3
 14/1 15/17 19/14 20/6
 20/18 32/9 35/2 35/6
 38/17 55/8 56/9 56/10
 56/10 56/21 57/6 57/23
 70/16
arguments [7]  38/8
 38/9 43/5 49/15 61/5
 72/15 73/6
arising [1]  57/16
arm's [2]  30/22 41/4
arose [1]  30/13
around [3]  20/9 63/12
 65/7
as [82]
aside [10]  34/18 34/24
 35/5 35/12 37/2 48/20
 48/24 49/21 67/23
 67/25
ask [8]  3/17 3/24 5/2
 16/23 23/12 31/8 31/9
 73/24
asked [5]  35/11 46/12
 49/24 59/4 66/6
asking [9]  10/5 25/18
 25/20 34/15 34/18 49/5
 74/17 75/9 78/1
aspects [1]  36/10
assembly [1]  47/6
assert [1]  36/5
asserted [2]  35/21
 39/11
asserting [1]  42/15
associated [2]  50/6
 50/15
assume [6]  45/24 46/1
 46/17 48/10 67/17
 72/17
assuming [3]  8/22
 38/17 75/14
Atl [1]  2/12
Atlanta [1]  1/25
attached [1]  44/9
attorney's [1]  78/19
authentic [1]  45/24
authority [2]  35/4 35/12
authorized [3]  58/21

66/15 70/12
available [1]  50/25
avoidance [2]  58/20
 66/14
aware [6]  7/2 8/4 35/6
 46/12 75/1 75/1

**B**

back [36]  3/16 5/12
 8/24 17/10 23/12 23/14
 23/15 23/17 23/25
 23/25 24/12 25/5 25/15
 28/19 29/24 38/12 41/7
 41/12 46/22 46/24
 52/18 54/22 54/22 58/9
 58/25 59/3 59/15 60/5
 63/19 65/12 71/6 71/10
 74/4 74/23 76/9 78/5
back to [1]  46/22
background [1]  44/20
bad [1]  37/18
bar [2]  25/11 62/5
Barney [2]  75/22 75/23
barred [1]  16/1
base [1]  10/18
based [5]  13/1 36/13
 36/18 45/6 67/4
basic [1]  41/3
basically [1]  5/16
basis [8]  34/10 34/11
 34/20 41/18 42/20
 48/25 61/7 79/5
be [85]
became [3]  31/4 63/3
 65/22
because [62]  4/24 6/18
 7/9 7/14 9/11 13/25
 14/6 14/16 14/25 15/8
 15/10 16/15 17/20 18/1
 21/11 23/15 23/22 24/4
 28/3 30/24 32/23 33/15
 34/17 36/17 36/19
 38/12 40/14 43/15 46/9
 46/12 46/16 46/19
 47/13 48/3 48/19 50/25
 52/14 55/11 59/19
 59/20 60/6 60/17 60/22
 61/12 66/20 66/24 68/11
 69/22 70/18 71/1 71/9
 72/5 72/25 73/1 73/24
 75/19 76/11 76/14 77/2
 78/8 78/19 78/24
become [1]  74/14
been [36]  3/4 7/23 11/6
 11/20 11/24 12/18
 12/18 12/24 16/8 19/8
 20/12 23/1 25/6 25/16
 31/15 32/17 34/13
 34/25 35/16 36/9 36/21
 41/14 47/2 50/25 52/24
 54/15 55/16 55/17
 60/23 64/7 71/8 72/19
 72/19 72/19 75/1 78/3
before [18]  1/16 7/10
 10/24 16/19 31/1 31/16
 35/8 37/15 37/18 41/22

42/4 45/22 52/13 61/14
 65/25 72/12 78/8 78/25
began [2]  4/25 54/15
begin [2]  37/12 77/21
beginning [1]  63/11
behalf [6]  2/4 2/9 3/21
 22/18 42/3 42/5
behind [1]  51/15
being [17]  5/10 8/15
 9/10 18/7 19/21 20/1
 20/2 20/18 24/18 25/11
 35/14 43/18 48/9 55/12
 62/12 72/2 76/23
believe [12]  8/16 16/4
 16/17 17/1 51/16 51/16
 55/9 55/12 57/4 60/14
 63/12 69/7
believed [1]  63/15
believes [6]  6/16 6/17
 7/17 8/1
belongs [2]  55/10
 56/12
bend [1]  9/20
benefit [3]  8/25 9/2
 68/2
benefits [1]  41/7
BenGera [7]  2/5 4/6
 9/14 61/4 61/8 61/17
 61/19
beside [1]  23/21
best [4]  9/24 67/2 70/1
 75/10
better [2]  71/8 71/24
between [11]  14/5
 16/20 18/2 25/4 25/16
 26/8 27/5 27/17 46/5
 49/13 68/1
beyond [4]  21/22 26/19
 27/7 62/6
big [4]  22/23 32/25
 47/16 52/7
bigger [1]  22/24
binder [1]  66/4
binding [2]  56/24 57/3
bit [3]  7/9 30/5 30/24
BLACKSMITH [46]  1/3
 1/12 2/4 3/12 4/4 5/1
 5/8 9/12 9/13 9/15
 10/21 17/4 17/5 17/11
 17/11 17/20 21/25 30/9
 31/7 31/16 31/20 32/9
 34/14 36/17 36/22 37/2
 38/3 39/10 42/3 42/6
 44/6 46/3 46/6 47/10
 48/4 50/5 62/13 62/15
 63/4 64/21 65/8 65/16
 65/21 65/22 66/16 70/4
 65/21 65/22 66/16 70/4
 12/22 13/3 20/21 24/23
 25/12 49/11
bladder [1]  64/24
Blaine [1]  2/10
blessed [1]  57/20
Bo [1]  69/9
booklet [1]  32/20
borne [1]  17/14

both [19]  4/8 4/14 4/16
 4/17 9/18 10/8 10/11
 14/19 25/8 30/16 30/18
 30/20 36/7 36/18 39/17
 42/16 43/1 69/7 79/7
BOTR [3]  58/21 66/16
 70/13
bound [1]  53/14
brand [1]  46/7
breach [15]  7/20 7/24
 8/7 8/9 8/10 8/12 18/18
 18/22 20/16 35/18
 54/10 55/7 55/17 63/15
 73/20
breached [1]  18/23
breaches [3]  19/5
 19/16 19/17
breaching [2]  18/20
 20/19
brief [8]  15/18 16/22
 33/3 51/10 57/10 57/14
 57/19 66/2
briefed [1]  34/13
briefing [1]  28/18
briefs [1]  33/22
bring [7]  7/3 10/13 18/1
 45/23 48/12 48/15
 48/19
bringing [3]  3/5 49/5
 68/5
broad [1]  64/4
Broadcasting [1]  42/22
broader [1]  64/8
brought [5]  17/18
 23/11 33/24 65/24
 73/14
bunch [1]  5/4
bundle [1]  65/18
burden [2]  49/7 49/20
burdens [1]  69/6
business [5]  6/14 6/15
 15/21 15/22 48/6
buy [34]  6/5 17/3 17/4
 17/24 17/24 19/12
 19/13 20/7 20/8 20/19
 22/21 22/8 23/5 27/24
 44/25 45/2 46/21 47/3
 54/14 54/18 54/19
 54/24 55/1 55/22 64/2
 64/3 65/16 70/22 71/17
 71/18 71/19 71/19 72/6
 72/7
buyer [6]  44/7 46/25
 47/3 58/20 66/14 70/11
buying [1]  17/8

**C**

calculated [1]  41/14
call [6]  9/11 26/22
 31/17 54/11 54/12
 64/23
called [2]  34/23 61/22
calls [1]  56/17
came [4]  7/10 37/18
 55/20 70/23
Cameron [1]  2/10

can [38]  3/3 6/16 8/23
 9/21 14/1 16/24 19/20
 21/17 24/8 25/20 27/12
 28/3 28/9 29/4 33/1
 33/1 33/17 34/24 37/2
 39/4 42/20 43/23 46/23
 48/12 50/22 50/23
 50/23 51/21 52/20
 54/23 58/6 59/25 70/22
 70/23 72/12 73/23 76/6
 77/10
can't [10]  14/13 16/3
 16/10 34/17 61/7 67/19
 67/25 75/17 78/10 79/5
Cane [1]  71/10
cannot [5]  10/15 10/18
 40/16 49/19 59/1
capable [1]  77/25
capital [8]  54/20 54/24
 54/25 55/6 55/9 56/8
 56/13 58/22
Caplan [1]  2/11
careful [1]  75/9
carefully [1]  43/16
Carlin [1]  2/12
Carlson [1]  29/14
Carolina [2]  56/3 56/6
carried [1]  11/4
carry [1]  73/11
case [127]
cases [14]  3/9 4/25 9/5
 10/11 12/6 14/14 32/6
 37/20 40/19 42/12 49/5
 62/8 63/4 69/7
catch [1]  66/8
cause [1]  7/25
caveat [2]  26/11 30/22
CEO [2]  43/10 47/19
certain [1]  37/20
certainly [6]  8/18 28/19
 53/13 71/20 73/17 79/7
Certification [1]  79/17
certify [1]  79/18
challenging [1]  34/19
chance [3]  21/10 28/19
 45/23
change [1]  46/14
characteristics [1]  23/6
characterization [2]
 9/17 59/24
characterized [1]  17/15
characterizing [1]  9/16
Charlotte [1]  4/8
check [1]  38/14
Cherry [1]  37/23
chief [1]  30/17
children [1]  76/2
chillers [1]  71/14
Circuit [15]  33/25
 50/14 52/12 52/23 53/2
 53/15 56/25 57/3 57/3
 57/12 57/15 57/19 69/9
 69/14 69/16
cite [1]  10/8
cited [9]  10/11 40/19
 40/22 40/24 42/12

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**C**

cited... [4] 42/22 62/8
63/5 69/8
claim [33] 7/21 8/7 8/9
8/13 14/7 17/25 18/4
18/18 18/18 18/20
18/21 18/22 18/25 19/1
20/10 21/8 31/7 36/24
38/11 38/18 40/13
41/18 42/15 48/12 53/8
55/7 57/12 60/22 63/15
67/11 73/1 75/13 76/13
claiming [5] 30/25 60/6
60/8 61/6 67/22
claims [11] 39/10 59/9
65/24 74/5 74/13 74/13
74/19 75/14 75/15
75/16 78/21
clarity [1] 12/22
clause [10] 26/22
26/24 27/13 27/18
31/14 39/23 39/23
69/23 72/2 72/8
clauses [3] 31/13 37/1
39/3
clear [7] 8/21 30/5 31/5
49/3 49/3 49/20 50/2
clearer [1] 47/2
clerk [2] 7/10 33/7
client [7] 42/5 45/16
46/2 48/3 64/6 67/12
70/23
client's [1] 76/7
clock [1] 62/13
close [1] 33/7
closing [1] 14/9
closure [6] 32/4 32/10
32/14 33/18 34/8 49/5
clunky [1] 9/25
co [3] 3/22 4/6 4/8
co-counsel [3] 3/22 4/6
4/8
Cobb [23] 2/10 2/11
3/20 28/11 28/23 51/11
51/23 52/14 54/11
54/13 55/20 58/13
61/11 61/22 62/11
62/14 65/7 65/9 66/5
70/21 74/24 75/11 76/7
Cobb's [1] 73/6
Coca [2] 71/3 71/4
Coca-Cola [2] 71/3
71/4
Coke [2] 71/5 71/16
Cola [2] 71/3 71/4
cold [1] 71/7
colder [1] 71/9
colleague [2] 59/4
72/17
come [15] 3/23 9/19
9/22 24/12 28/19 31/20
34/12 47/20 60/12
63/12 64/25 65/1 73/24
74/9 78/21

comes [6] 55/18 57/2
60/4 63/14 63/19 76/9
coming [3] 7/9 9/7 72/9
comment [1] 49/24
commented [1] 50/1
comments [1] 29/18
commerce [1] 57/17
commercial [1] 31/4
communicated [2] 43/8
65/21
community [1] 36/15
companies [5] 5/13
5/15 30/16 30/19 30/20
companies' [1] 30/17
competing [1] 30/11
competition [1] 74/7
competitors [1] 30/11
complaining [1] 45/20
complaint [6] 5/20
17/16 37/14 49/18
57/22 65/24
complete [1] 32/7
completed [1] 32/8
completely [1] 78/25
completion [1] 32/1
complied [1] 34/6
comply [1] 20/11
component [7] 10/3
10/4 23/15 46/11 60/22
68/16 73/16
comprehensive [1]
47/20
compulsory [1] 8/13
computer [2] 1/20 3/8
conceal [1] 69/18
concede [2] 50/19 65/8
conceding [2] 13/22
46/16
conceivably [1] 45/16
concerning [1] 40/3
concessions [1] 19/2
concluded [1] 79/14
conclusion [1] 78/1
conclusions [2] 34/15
69/8
conclusive [1] 43/19
condition [1] 41/23
conditions [1] 44/5
conduct [1] 68/20
conference [2] 55/21
79/9
confusing [1] 5/3 36/10
36/21
confusion [2] 12/22
58/7
consensus [1] 12/15
consider [3] 45/25 62/7
75/5
consideration [4] 20/12
21/24 21/25 39/10
considered [2] 40/9
41/22
consolidate [3] 36/2
75/12 77/14
constitutes [1] 40/1
construed [1] 31/12

consummated [4] 11/2
11/5 11/6 34/9
contain [1] 46/17
contained [1] 40/15
contempt [1] 34/5
contend [3] 21/20 63/9
73/22
contention [1] 55/5
contesting [1] 18/7
context [2] 19/21 31/3
continue [4] 24/24
32/16 33/18 78/11
continued [2] 67/12
67/17
continues [2] 6/14 6/15
continuing [2] 34/9
68/2
contract [104]
contracts [9] 27/11
31/4 31/10 39/6 40/7
40/8 40/10 41/3 49/14
contractual [1] 63/18
control [1] 32/5
controlling [1] 8/23
controversial [1] 41/2
conversation [5] 43/9
49/10 62/17 62/24
74/22
conversations [3]
27/12 62/18 62/23
convincing [1] 49/3
49/4 49/20
convoluted [1] 52/8
coolers [1] 71/5
copy [2] 29/4 57/10
Corp [1] 40/20
correct [12] 12/2 13/6
13/8 26/14 59/23 60/14
61/2 62/5 73/2 73/3
73/7 79/18
correctly [1] 76/20
corresponds [1] 22/4
Costco [1] 71/18
could [38] 7/4 7/19
7/20 8/4 8/21 22/19
22/21 22/25 24/23 25/5
25/16 31/7 34/10 35/4
37/5 37/6 37/6 37/15
45/10 45/16 47/2 48/15
48/16 48/16 51/10
54/21 59/13 60/3 60/15
60/19 64/8 65/17 71/21
72/2 74/25 78/9 78/20
78/21
counsel [16] 3/22 4/6
4/8 30/18 30/19 30/21
31/21 32/9 33/24 42/6
43/5 43/18 46/18 48/3
62/18 78/13
counsel's [1] 42/17
counter [2] 5/5 5/6
counter-defendant [1]
5/6
counterclaim [5] 7/23
8/13 48/15 60/4 60/19

counterclaims [6]
35/18 35/21 36/5 50/23
77/20 79/9
counterfactual [1]
48/22
countless [1] 32/3
country [1] 56/25
couple [2] 7/19 7/20
19/15
course [2] 43/8 70/15
court [54] 1/1 1/24 6/10
6/12 6/22 7/12 9/22
10/8 10/9 10/16 10/17
11/23 12/23 14/12 24/4
25/18 25/19 25/20
27/21 31/22 33/7 33/7
33/22 34/2 34/5 34/11
34/22 34/24 35/3 35/4
35/6 35/7 35/12 35/15
36/13 40/23 41/24
42/23 50/16 52/13 53/1
53/1 53/15 54/6 54/6
73/24 74/9 75/9 75/16
77/13 77/14 78/21
79/21 79/21
court's [4] 27/6 35/3
57/23 75/20
courthouse [1] 3/5
courtroom [2] 29/24
30/21
courts [3] 11/7 58/2
62/7
cover [4] 20/22 20/23
20/24 46/18
covered [4] 29/22
43/10 44/23 55/14
covers [1] 21/2
COVID [1] 61/13
Cox [1] 42/22
create [2] 15/12 64/17
created [2] 5/15 65/1
creates [2] 65/2 65/2
creating [1] 17/7
cross [1] 49/12
cross-examined [1]
49/12
CRR [2] 1/23 79/20
Curfman [1] 2/12
current [2] 58/19 58/23
currently [1] 35/14
customers [1] 30/12
cv [5] 1/5 1/11 3/11
4/20 4/21

**D**

Dalton [1] 4/6
date [4] 40/10 47/8
62/14 79/23
David [1] 30/8
day [10] 3/6 32/2 53/16
54/4 54/15 55/15 60/4
73/11 76/6 76/8
days [6] 16/19 33/19
42/7 61/23 77/22 77/23
deadlines [1] 12/11
deal [8] 19/11 19/15

19/15 19/23 27/5 47/16
75/14 76/14
dealing [2] 28/20 52/12
deals [1] 38/18
dealt [1] 52/23
deceive [1] 69/12
decide [10] 21/17
50/25 51/17 52/15
67/21 70/6 73/7 73/8
76/16 79/5
decided [2] 53/15 59/5
deciding [1] 53/13
decision [6] 21/10 35/1
35/3 40/21 40/25 69/15
deck [2] 32/25 33/4
declaration [6] 43/9
49/9 49/11 53/24 64/15
64/21
declaratory [8] 6/23
8/12 35/19 35/22 73/24
74/9 74/17 77/13
deep [1] 30/16
defeat [1] 38/18
defendant [45] 1/7 1/13
5/6 5/8 5/17 5/21 5/24
6/4 6/14 6/15 6/16 6/17
6/19 6/22 7/18 7/25
8/10 8/11 13/10 15/6
15/12 16/25 18/23
19/12 19/24 20/3 20/6
20/18 21/12 21/21 23/7
27/6 31/20 56/13 59/6
63/8 67/13 71/25 72/24
73/10 76/9 77/20 78/2
78/14 78/14
defendant's [10] 5/23
14/1 20/11 21/5 23/2
53/11 55/5 72/5 75/13
78/8
defendants [12] 8/2
13/11 18/8 23/11 53/18
55/8 55/12 57/8 57/12
60/6 70/17 76/13
defer [1] 76/24
define [1] 47/5
defined [7] 22/1 22/2
22/13 22/19 22/21 23/4
68/23
definition [5] 21/1
43/23 58/9 63/14 63/16
defrauded [2] 48/21
49/15
degree [1] 5/20
delay [5] 42/13 61/10
62/6 62/9 63/6
deliberate [1] 69/17
deliver [1] 44/7
delve [1] 18/16
demonstrate [2] 24/5
53/20
deny [5] 36/6 36/6 38/5
76/22 77/15
denying [1] 77/1
dependent [1] 70/7
depends [1] 72/23
deprived [1] 33/22

**D**

described [2]  35/17 44/9
description [1]  44/17
design [13]  5/23 5/25 20/23 21/13 21/14 28/3 39/7 39/24 57/16 59/13 64/9 64/19 76/11
designs [6]  5/17 17/12 59/7 60/21 63/10 72/25
despite [1]  69/17
detail [2]  18/14 43/17
detailed [6]  22/20 23/4 29/21 31/4 44/15 47/19
details [2]  13/21 13/23
determine [3]  27/7 70/9 75/17
devices [1]  71/14
diametrically [2]  57/5 58/1
did [9]  8/3 16/13 23/3 29/14 29/18 47/24 57/7 57/11 75/3
didn't [15]  7/1 7/6 7/15 11/10 13/21 16/14 17/20 28/9 43/15 47/24 57/21 64/4 64/6 72/3 75/19
die [2]  28/17 29/2
difference [2]  43/2 60/1
differences [2]  46/5 65/9
different [13]  3/10 4/22 8/8 13/12 14/18 18/18 21/5 21/12 27/25 48/7 52/10 57/6 58/2
differently [2]  41/15 63/25
differing [2]  25/15
diligence [1]  31/1
direction [1]  32/18
directly [4]  6/6 51/24 53/5 71/17
directs [1]  33/7
dis [1]  67/1
disagree [5]  17/17 37/19 38/9 42/19 55/6
disagreement [6]  15/8 25/4 25/13 25/15 62/15 62/22
disclose [1]  68/19
discount [1]  71/23
discover [1]  16/10
discovered [3]  16/18 42/7 42/10
discovery [4]  16/21 16/24 48/17 50/24
discussed [1]  54/7
discussing [1]  62/21
discussion [1]  46/1
discussions [3]  31/7 32/15 68/24
disingenuous [2]  67/2 67/6
dismiss [10]  33/17

35/25 36/1 36/4 36/7 38/11 73/18 75/12 77/12 77/14
dismissal [12]  31/25 33/8 33/21 34/1 34/3 34/18 34/19 34/25 35/5 35/13 48/20 49/21
dismissed [5]  10/24 12/19 35/17 51/1 75/12
dismissible [1]  49/18
dismissing [1]  10/17
disposing [1]  33/9
dispute [17]  20/4 21/25 22/7 25/7 25/17 30/9 30/13 36/10 42/11 44/19 49/24 50/2 50/9 60/16 63/18 63/21 65/15
disputed [1]  17/17
disputes [1]  36/12
disrupted [1]  49/6
distribute [4]  6/5 45/4 45/8 45/15
distribution [1]  5/18
district [12]  1/1 1/1 1/16 32/4 33/14 40/24 52/25 53/1 53/15 57/23 79/21 79/22
diversity [1]  9/5
DIVISION [1]  1/2
divorce [2]  37/10 37/25
DJ [2]  73/20 74/13
do [37]  4/14 5/2 5/2 6/21 6/22 7/5 7/5 7/19 8/5 9/24 11/4 12/8 14/1 14/2 21/9 21/19 23/19 25/20 26/4 29/13 29/23 35/23 42/4 50/10 50/12 50/19 55/19 57/21 60/23 61/7 64/7 64/18 71/3 75/17 77/9 77/18 78/9
docket [8]  31/17 32/5 32/6 32/10 32/24 33/20 58/10 58/12
Docket 16 [1]  32/24
documents [1]  6/11
does [20]  13/24 15/24 16/2 18/4 43/13 45/3 45/8 45/15 46/17 46/18 51/2 51/14 51/15 59/6 59/9 59/9 60/1 67/18 72/24 76/12
doesn't [33]  5/9 6/19 8/23 13/16 13/19 13/23 14/8 15/7 15/10 16/3 20/16 21/7 21/7 21/19 23/7 23/23 28/7 28/14 34/8 37/12 58/11 59/17 60/10 62/3 64/1 66/19 73/1 73/5 73/23 74/17 75/18 75/19 76/10
doing [6]  6/24 24/2 59/10 63/20 67/5 78/2 78/9
don't [64]  6/9 8/19 12/4

13/22 14/15 14/17 14/25 16/17 19/3 21/8 21/8 21/17 23/1 25/5 26/18 26/19 26/21 28/8 29/16 29/19 29/22 32/6 32/12 34/7 34/7 34/13 35/1 36/5 36/17 37/24 38/6 38/25 42/19 45/18 46/16 48/3 49/23 51/4 51/6 51/13 51/17 52/15 57/1 60/6 61/3 63/1 64/5 64/20 65/8 65/9 67/15 68/25 70/6 70/8 70/23 71/16 71/17 71/19 73/21 73/25 74/10 75/17 77/2 77/7
done [1]  12/17
doubt [2]  58/20 66/14
Douglas [1]  69/13
down [4]  49/23 60/12 63/14 71/7
draft [1]  47/24
drafted [4]  22/18 31/10 43/16 64/8
drafter [1]  31/12
drafting [1]  26/7
dragging [1]  69/19
drawing [1]  71/3
dress [30]  20/24 21/13 21/14 28/2 37/4 47/14 47/17 47/25 48/6 48/11 48/14 50/6 50/10 50/12 50/15 50/17 50/18 52/14 52/16 57/16 57/20 57/24 57/25 58/4 59/7 60/21 63/10 72/24 75/16 76/10
Drive [1]  1/24
due [1]  31/1
during [2]  17/6 61/13

**E**

each [3]  27/8 27/8 36/20
earlier [2]  11/8 70/21
early [2]  42/11 59/4
earnest [1]  16/18
easier [1]  5/11
easy [2]  64/7 67/20
educate [1]  18/15
effect [1]  74/20
effective [1]  40/10
effectively [1]  43/19
either [8]  23/25 34/13 34/20 59/19 60/2 60/15 64/16 64/25
Eleventh [3]  33/25 57/3 69/14
ELMO [1]  33/1
else [12]  12/11 19/14 21/14 24/10 24/24 28/13 35/17 45/11 45/15 67/7 69/25 72/7
embodied [9]  13/14 15/3 19/2 26/16 27/11 27/12 27/20 56/1 65/18

embody [5]  13/19 13/23 15/9 15/11 34/4
Emily [1]  30/20
emptor [1]  30/22
encourage [1]  78/11
end [12]  16/18 27/11 29/1 35/8 52/20 60/4 62/11 66/14 74/22 76/6 76/8 77/7 77/8
endeavor [2]  5/16 37/16
ended [2]  5/16 37/16
Energy [1]  34/23
enforce [8]  10/13 10/21 25/18 26/4 26/9 26/15 73/19 74/4
enforcing [1]  10/18
engage [1]  69/18
engineer [2]  52/6 64/21
ENGINEERED [2]  1/9 2/9
ENGINEERING [3]  1/6 2/9 3/12
Engineering/OTR [1] 2/9
engineers [1]  49/12
enlightening [1]  35/2
enough [1]  75/20
enter [2]  16/16 27/19
entered [6]  10/24 17/3 18/20 32/2 33/6 54/6
entering [1]  39/20
entertain [1]  73/20
entire [4]  3/21 17/9 40/1 48/20
entirely [1]  41/14
entitled [1]  79/19
entity [2]  45/11 71/22
entry [1]  58/10
essential [2]  42/20 43/20
essentially [2]  53/18 62/16
estoppel [2]  57/4 57/13
even [16]  7/2 7/2 24/7 27/19 35/4 41/12 42/3 42/13 46/20 62/15 63/4 65/21 67/13 70/3 70/19 72/13
event [3]  9/3 9/9 28/11
ever [3]  25/22 27/14 43/7
every [4]  3/6 9/4 31/8 44/17
everybody [2]  11/16 50/4
everyone [1]  30/5
everything [1]  35/17
evidence [12]  15/3 43/4 43/6 43/14 45/19 45/25 49/2 49/8 49/16 50/11 64/11 67/4
evidentiary [2]  48/25 49/20
evil [1]  69/17
exact [1]  52/12
exactly [7]  5/15 8/21

16/24 29/2 36/3 38/20 77/22
examine [1]  45/24
examined [1]  49/12
example [8]  8/17 24/2 37/1 38/12 47/17 71/2 74/11 75/11
except [4]  31/15 61/9 73/21 74/6
exception [1]  15/12
exchange [1]  22/7
excitement [1]  3/4
excusable [2]  61/16 62/9
excuse [3]  54/3 61/1 72/23
execute [1]  12/16
executed [8]  11/20 11/25 11/25 12/18 12/24 31/23 54/3 54/5
execution [1]  11/7
executive [1]  30/17
exercised [1]  31/1
exhibits [2]  39/24 39/24
exist [3]  57/17 57/21 75/17
existed [1]  19/1
existence [3]  49/25 50/2 50/10
existing [1]  59/2
exists [2]  68/1 71/20
expect [1]  28/10
experience [1]  71/4
expert [1]  78/19
experts [1]  79/2
explains [1]  43/17
explanation [3]  22/20 70/15 70/20
explicit [1]  39/20
explicitly [4]  26/1 32/11 34/2 41/25
extension [1]  61/12
extensive [1]  50/13
extent [5]  47/6 48/4 61/6 63/1 74/15
extraordinarily [1] 44/15

**F**

F.2d [2]  69/9 69/14
F.Supp [1]  40/21
face [1]  9/22
fact [10]  8/14 17/5 17/16 21/24 23/22 36/9 37/4 43/18 53/18 71/22
facts [4]  5/14 11/14 14/22 29/21
fail [6]  10/25 11/10 13/1 14/25 32/15 33/10
failed [5]  11/3 11/9 13/2 13/11 25/21
failure [10]  13/17 13/18 20/12 25/8 38/12 41/6 41/17 42/19 42/25 68/19

**F**

fair [2] 9/17 23/8
fairly [1] 67/20
fall [2] 9/5 9/7
falls [1] 63/4
false [1] 69/11
familiar [3] 16/6 16/7 36/14
familiarity [1] 30/23
far [5] 9/6 42/4 61/9 61/16 64/23
fault [2] 14/16 23/2
federal [10] 1/24 5/4 34/24 35/11 36/4 49/4 50/16 53/3 58/2 68/25
feeds [1] 14/1
feel [1] 59/22
feels [1] 35/18
fees [2] 78/19 78/19
felt [2] 36/13 78/9
few [4] 61/23 61/23 62/25 63/5
fewer [1] 30/2
Fifth [2] 69/9 69/16
fight [3] 64/10 79/1 79/10
fighting [2] 14/11 70/3
figure [1] 50/24 78/12
file [16] 7/19 7/20 24/3 33/8 36/15 50/23 61/25 65/2 65/2 65/19 74/9 76/19 77/20 77/21 77/24 79/8
filed [26] 4/21 5/12 6/22 8/11 16/19 23/13 35/25 36/11 37/14 42/9 54/5 60/3 60/17 60/19 61/14 62/25 67/14 73/19 77/4 77/5 77/12 77/20
files [1] 64/17
filing [3] 7/23 33/8 41/22
final [1] 14/5
finality [2] 49/5 49/6
finalization [1] 33/9
finalize [1] 33/16
finalized [1] 33/13
finally [1] 78/25
find [5] 37/22 62/4 72/11 72/12 73/16
fine [1] 78/9
fingerprint [1] 64/24
fingerprints [1] 64/25
firm [1] 4/8
first [21] 4/18 5/10 6/20 7/7 9/10 9/12 9/13 10/2 18/19 24/18 26/1 36/11 36/15 37/9 37/14 37/16 42/2 60/17 62/14 62/20 73/12
first-filed [1] 36/11
fit [1] 60/16
fleshed [1] 13/21

Flintstones [2] 75/25 76/1
focus [1] 44/3
folks [2] 52/10 54/13
foot [1] 69/19
foot-dragging [1] 69/19
force [1] 64/1
Fordham [1] 2/7
forecasting [1] 5/9
foregoing [1] 79/18
forever [1] 14/13
forget [2] 18/5 18/9
form [1] 57/5 57/6
formed [2] 64/15 64/15
forms [1] 20/22
forth [3] 39/21 44/5 47/9
forum [1] 36/23
four [2] 27/22 44/23
frame [1] 4/16
framework [1] 63/23
frankly [5] 35/2 36/9 37/21 38/11 47/2
fraud [55] 8/16 16/5 16/10 16/18 16/21 16/24 25/9 25/11 25/22 26/14 27/17 27/17 27/21 28/3 28/9 30/24 30/25 31/7 34/20 41/3 42/7 42/10 42/11 48/25 50/11 51/16 53/17 53/20 53/20 54/15 55/18 57/1 59/19 59/20 60/16 60/17 60/20 60/23 61/6 63/3 63/7 63/19 65/12 67/11 67/19 67/23 68/7 68/11 68/13 68/16 68/21 69/7 72/19 73/16 75/14 fraudulent [9] 14/24 26/12 36/24 38/10 38/16 40/14 41/18 42/15 67/6
fraudulently [4] 11/2 16/15 20/12 27/19
free [2] 71/14 71/14
freeze [1] 32/14
front [2] 35/14 67/16
frown [1] 9/21
full [2] 36/8 38/7
fully [3] 40/7 41/4 41/4
fun [1] 18/15
fund [1] 79/6
fundamental [6] 24/19 25/6 25/13 27/9 38/10 56/5
further [2] 62/17 62/23
future [5] 14/12 19/11 19/16 22/8 48/13

**G**

Ga [2] 40/23 41/24
gave [1] 60/7
general [4] 30/21 53/8 74/6 78/13
generalities [1] 12/5

generally [5] 8/19 8/25 43/24 67/11 75/8
GEORGIA [31] 1/1 1/25 8/22 15/20 15/23 15/24 15/25 16/1 16/2 16/9 16/9 23/16 23/23 30/23 30/24 33/14 37/11 40/11 40/12 40/23 40/25 41/2 41/3 41/21 41/24 41/25 42/23 67/19 68/1 68/25 79/22
Georgia's [1] 69/1
Geraldine [2] 1/23 79/20
get [23] 3/7 12/6 13/21 14/10 26/19 28/3 28/9 29/22 32/7 32/4 33/16 37/15 45/16 51/17 52/9 53/13 70/6 74/10 76/15 77/22 78/18 79/5 79/10
gets [3] 5/3 9/25 37/8
getting [2] 14/3 31/5
give [14] 3/7 23/16 28/19 29/14 34/10 34/10 38/25 41/22 65/25 66/1 71/4 71/14 71/24 71/25
given [5] 8/11 15/14 29/18 34/14 35/13
gives [1] 61/24
glad [2] 51/19 76/3
glass [1] 71/9
glean [1] 8/3
Glover [2] 1/23 79/20
go [26] 19/13 20/9 26/19 27/7 29/22 35/1 37/8 37/22 38/21 38/23 39/12 39/22 44/12 46/22 46/24 52/8 58/9 59/3 59/13 59/15 63/19 66/3 68/22 71/19 72/6 77/23
goes [3] 17/10 61/16 65/12
going [75] 3/17 3/19 4/6 4/24 4/25 5/1 5/2 5/3 5/7 5/8 6/4 8/24 9/6 9/6 9/11 9/23 12/11 12/12 17/24 20/2 21/8 21/11 21/18 22/17 23/12 24/25 26/25 27/6 28/12 28/16 35/1 36/15 36/24 37/17 37/19 37/25 38/1 38/11 38/21 39/2 44/1 45/23 45/25 55/22 57/22 58/11 58/13 58/25 60/12 63/15 65/16 68/23 73/6 73/8 74/22 75/2 75/3 75/4 75/14 76/16 76/18 76/21 76/22 76/24 77/8 77/14 77/14 77/15 77/17 78/20 Goliath [1] 30/9

gone [2] 18/13 54/21
good [6] 3/2 4/5 9/14 28/25 54/7 76/4
got [27] 4/14 5/5 12/14 15/8 15/9 21/12 23/16 23/17 29/7 30/6 37/14 37/15 38/7 40/20 41/6 49/7 49/14 54/9 57/9 59/16 62/21 69/23 71/9 72/7 72/25 78/13 79/1
gotten [1] 76/5
govern [1] 27/12
governed [1] 15/22
grabbed [1] 71/7
granted [2] 56/25 58/18
great [2] 43/17 48/5
gritty [1] 14/3
grounds [2] 10/23 16/21
Group [2] 40/22 41/23
guess [17] 7/1 7/5 7/20 12/23 18/6 19/14 22/25 24/9 26/21 35/23 36/2 53/17 67/10 70/18 71/1 75/5 75/24
guessing [4] 22/23 23/13 26/20 71/2
guru [1] 3/23

**H**

had [32] 6/12 8/8 11/20 11/24 12/15 12/24 13/11 13/12 14/19 18/19 18/23 20/18 20/18 22/20 23/5 30/2 31/7 31/8 32/16 41/10 42/4 45/23 47/20 48/5 48/5 49/10 52/24 54/14 55/16 55/23 59/17 78/25
hadn't [2] 23/14 45/22
half [1] 30/15
Halliburton [1] 34/23
hand [3] 46/3 58/19 58/23
handed [1] 33/5
handful [2] 30/1 62/8
happen [5] 12/11 14/8 14/12 43/15 72/3
happened [7] 12/14 12/20 31/16 35/7 37/12 45/19 52/25
happens [5] 3/6 5/4 12/5 32/18 33/19
happy [3] 38/23 51/3 79/7
hard [1] 14/4
harp [1] 49/23
Harris [1] 2/7
has [43] 6/21 6/25 7/13 8/11 10/3 11/6 15/9 17/12 18/5 20/4 21/12 23/17 30/25 31/15 34/13 34/25 35/4 35/12 35/16 36/9 36/22 39/17

43/11 43/11 43/12 46/5 46/6 46/15 50/21 57/18 60/3 64/2 64/24 65/9 66/4 67/12 68/7 68/12 69/16 70/4 72/6 72/8 72/11
hashed [1] 55/21
hasn't [1] 34/12
have [111]
haven't [11] 7/22 16/7 23/14 23/22 26/1 33/15 35/22 35/23 35/24 45/23 49/12
having [2] 18/13 62/23
he [6] 28/18 49/10 51/24 52/1 52/2 65/8 64/21
he's [3] 28/12 28/16 64/21
head [1] 20/15
hear [2] 28/12 37/17 51/19 51/21 52/13 79/8
heard [3] 41/19 42/2 51/23
hearing [2] 1/15 31/5
heart [1] 60/15
heavily [1] 31/3
heightened [1] 49/7
held [1] 50/5
help [1] 58/11
helpful [1] 70/10
hence [2] 70/21 72/7
here [37] 3/9 7/8 8/23 9/25 11/8 12/14 15/21 15/23 24/7 26/16 29/20 30/18 34/7 36/17 39/6 41/5 43/4 51/10 52/20 52/25 54/16 55/21 56/22 57/1 57/3 57/10 64/13 67/2 68/4 71/4 72/3 74/2 78/14 78/15 78/16 78/22 78/22
Here's [2] 69/20 78/18
hereafter [1] 44/9
herein [2] 27/12 58/18
hereof [1] 40/4
hereto [1] 44/9
high [1] 37/13
highlighted [9] 29/7 39/13 39/14 39/15 44/2 44/3 44/4 46/25 74/24
highlights [1] 38/25
him [5] 3/24 37/15 37/17 43/10 49/13
hindsight [2] 11/12 11/13
his [5] 3/24 28/12 37/14 62/11 76/7
history [3] 30/4 35/16 36/19
Hold [3] 55/4 66/8 68/9
home [1] 36/12
honest [1] 22/17
Honor [48] 3/14 3/20 4/5 9/14 9/16 10/2 10/5 10/23 11/12 12/24 17/10 23/18 28/24

**H**

Honor... [35]  28/25
29/20 30/11 30/23
31/19 32/19 34/3 34/16
36/3 36/6 38/5 40/5
44/1 48/2 48/19 49/17
50/21 51/2 51/9 53/22
60/14 61/20 63/2 66/4
66/6 68/17 73/9 73/13
73/14 73/16 73/17
73/18 74/14 79/12
79/13
Honor's [5]  10/2 11/9
12/25 24/15 25/8
Honorable [1]  1/16
hook [2]  10/14 15/1
hoping [1]  73/15
house [1]  30/19
how [16]  8/21 17/20
19/24 21/5 21/16 21/16
25/5 26/25 28/8 30/6
34/8 35/1 41/3 49/15
57/1 64/18
however [1]  47/3
hypothetical [1]  76/2
hypothetically [1]  22/5

**I**

I'd [1]  29/8
I'll [17]  5/7 9/12 9/13
9/13 9/20 9/24 9/25
13/18 24/16 28/19
31/19 32/24 46/1 49/22
51/19 61/8 61/17
I'm [93]
I've [12]  4/14 16/8 24/1
25/24 27/14 32/4 33/13
42/2 51/22 52/7 57/9
78/13
idea [1]  55/24
identical [1]  65/5
identified [2]  46/10
48/1
II [1]  1/16
III [1]  2/7
immediately [3]  16/11
23/24 63/8
impact [1]  35/9
imply [1]  21/21
important [2]  29/9
37/17
impossible [1]  40/13
inadequate [1]  41/21
INC [3]  1/6 1/9 3/12
incidental [1]  10/15
incidentally [1]  71/13
inclined [1]  73/17
include [2]  64/4 64/6
included [3]  48/9 53/7
58/23
includes [4]  15/17
44/18 51/25 70/17
including [7]  30/16
30/19 30/20 36/24
39/24 40/4 64/22

inconsistent [2]  16/4
16/11
incorporated [1]  10/7
incorporates [2]  10/16
53/5
independent [4]  41/17
41/17 48/12 60/2
indicating [1]  45/21
indirect [1]  10/16
induced [3]  11/2 20/13
27/19
inducement [16]  8/17
14/24 16/5 26/12 26/16
26/18 36/24 38/10
38/17 40/14 41/18
42/15 53/20 59/19
59/20 67/6
inducement is [1]
26/18
induces [1]  26/13
industrial [1]  30/10
inexplicable [1]  48/8
informed [1]  12/23
infringe [2]  20/8 74/18
infringes [1]  17/1
infringing [1]  47/17
inherent [1]  20/8
inherently [1]  72/12
initially [1]  54/8
initiated [1]  42/5
inside [3]  52/8 53/25
64/23
insisted [1]  48/9
inspected [1]  64/22
instance [1]  62/14
instances [1]  30/12
integrated [1]  41/5
intellectual [36]  5/16
5/21 18/6 18/8 18/9
18/17 18/24 19/13
19/16 19/19 20/5 20/17
20/22 21/3 21/6 21/22
22/6 28/2 28/8 28/14
46/13 46/21 47/8 47/11
47/21 48/4 49/25 50/3
59/7 59/18 59/22 60/5
60/7 60/9 76/11 78/23
intend [1]  15/17
intended [9]  17/2 20/8
30/2 32/14 53/18 59/21
65/15 65/15 68/20
intending [2]  17/4
60/23
intent [16]  13/11 13/13
13/13 13/14 13/19
13/23 15/7 15/10 15/11
20/11 36/22 41/20
54/14 54/18 64/11
69/11
interest [1]  75/10
interested [3]  11/13
11/14 51/3
interesting [1]  37/25
interject [1]  61/9
interplay [1]  27/16
interpret [3]  15/6 15/7

15/11
interpretation [1]  27/9
interpreted [1]  15/12
intersects [1]  41/3 50/7
intimidated [1]  29/19
introduced [1]  16/16
invalidated [1]  50/16
inventory [3]  41/10
58/19 58/23
invoke [1]  68/15
involve [2]  21/18 57/7
involved [3]  4/21 47/20
62/21
involvement [2]  30/16
62/18
involves [2]  5/19 8/14
involving [1]  3/10
IP [3]  51/10 51/11
51/23
irrelevant [1]  55/25
irrespective [1]  75/20
is [270]
isn't [3]  23/16 27/25
33/15
issue [22]  9/9 9/10
17/23 23/13 24/10
24/12 28/20 37/3 37/4
50/9 51/14 52/13 53/4
58/4 59/5 59/25 60/4
61/22 66/18 73/7 73/9
76/8
issued [2]  7/4 34/25
issues [14]  3/23 8/14
19/23 36/9 36/23 37/1
37/5 37/21 38/17 51/18
53/16 76/24 77/11
79/10
it [253]
it's [66]  4/17 5/10 6/24
9/17 10/8 10/9 12/17
12/18 14/4 14/15 14/16
14/17 15/8 16/19 17/15
17/15 21/10 25/1 25/2
26/21 26/21 27/1 27/10
27/15 27/21 27/25
29/24 35/13 36/21
39/23 41/22 45/14
45/19 46/9 46/17 48/8
48/25 49/2 50/25 56/22
57/1 58/13 61/5 62/19
64/3 66/5 66/10 66/10
66/11 66/12 66/24 67/1
67/2 67/2 67/3 68/13
68/23 69/8 69/9 69/9
69/22 70/16 72/25
74/15 76/17 79/8
item [1]  44/17
items [1]  44/11
its [20]  5/21 6/14 6/15
6/19 6/19 6/21 10/16
10/17 21/3 22/8 24/24
33/25 35/8 41/10 47/11
57/16 57/17 59/8 64/3
65/24
itself [19]  10/7 10/15
18/5 18/10 26/17 27/7

31/11 38/18 39/4 39/9
40/15 41/20 53/10
65/20 68/7 68/12 72/10
74/16 76/12

**J**

James [2]  2/10 3/20
January [2]  1/17 79/23
joined [1]  3/22
joint [1]  34/17
jointly [2]  11/21 31/10
Jr [1]  2/5
judge [8]  1/16 10/9
29/24 36/14 40/11
40/21 53/15 78/22
judges [2]  20/4 33/13
judgment [11]  6/23
8/12 35/19 35/22 67/24
67/24 73/24 74/10
74/17 77/13 78/23
judicial [3]  6/23 57/4
57/13
judiciary [1]  49/4
July [4]  16/19 49/10
54/12 62/24
July 30th [1]  62/24
July 31st [1]  54/12
June [2]  42/12 62/19
June 20th [1]  62/19
jurisdiction [9]  10/18
10/25 14/13 32/12
33/23 34/2 34/9 51/1
75/18
jurisdictional [1]  10/14
jury [8]  36/14 37/5
37/17 37/24 48/17
50/15 50/24 73/12
just [72]  3/7 3/16 3/17
4/24 5/7 5/7 5/11 5/24
6/11 7/6 7/16 8/6 8/22
8/24 9/20 9/25 11/7
12/4 13/20 15/10 18/4
21/22 22/16 24/6 24/23
25/1 25/25 28/9 29/20
30/1 31/19 32/12 32/14
32/22 33/12 34/7 34/17
35/6 35/7 35/25 36/17
37/16 37/24 39/3 42/7
43/11 43/24 46/17
46/22 48/21 50/1 51/4
52/1 54/7 58/9 61/14
64/12 65/19 65/20
65/25 66/1 67/3 70/6
71/21 72/9 72/10 73/1
74/15 74/23 75/8 76/24
78/21
Justice [2]  10/10 10/14

**K**

keep [3]  8/25 9/2 48/23
Kendrick [1]  2/6
kept [1]  5/25
key [1]  68/4
kid [1]  71/6
Kim [1]  69/9
kind [19]  5/25 6/1 8/24

14/1 18/5 18/14 19/5
19/15 19/20 20/14
25/25 26/24 28/17
72/22 75/20 75/21 78/1
78/5 78/21
kinds [1]  36/11
knew [2]  37/17 63/21
know [62]  5/3 7/1 7/23
8/7 8/22 9/4 9/6 9/6 9/8
10/1 12/25 14/3 14/17
17/20 18/25 19/3 19/18
19/20 19/21 21/8 21/11
22/16 22/21 23/1 23/22
24/11 24/12 25/5 28/6
31/19 34/13 35/1 36/11
37/10 37/11 37/18
40/11 45/18 46/16 48/4
49/4 51/13 53/14 57/1
61/3 63/1 64/18 64/20
65/9 67/18 71/13 71/20
71/25 72/17 75/3 76/3
76/5 76/13 76/17 78/5
78/24 79/1
know that [1]  64/20
knowing [2]  43/1 63/8
knowledge [2]  12/4
19/17
knows [1]  30/23
Kokkonen [4]  10/8
10/12 25/19 33/24

**L**

lack [7]  17/14 17/16
17/19 19/21 20/2 34/20
63/22
lacked [1]  20/10
language [21]  10/17
13/23 21/20 26/2 26/5
26/7 26/8 26/17 26/20
26/23 27/2 27/15 27/23
44/2 54/17 58/6 64/5
64/6 64/8 72/10 72/12
Lanham [2]  53/3 53/8
large [1]  56/25
largely [1]  41/9
last [6]  4/19 4/21 7/1
24/16 38/14 49/10
late [5]  4/21 7/3 7/9
42/4 61/5
later [3]  12/17 33/19
54/4
launching [1]  17/7
law [27]  7/10 8/22
15/20 15/21 15/23
15/24 16/2 16/10 23/16
23/23 30/24 34/15
35/11 37/10 40/16 41/2
41/3 41/21 56/5 56/22
67/19 68/1 68/25 68/25
69/1 69/1 69/8
lawsuit [17]  6/20 9/10
10/13 16/14 18/19 23/9
23/10 23/13 24/2 24/8
24/12 24/13 24/15
31/23 37/12 67/14 73/5
lawsuits [2]  4/24 24/7

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**L**

lawyer [4]  16/9 33/12
 37/11 40/12
lawyers [7]  9/6 14/16
 24/1 49/9 62/21 75/8
 79/2
lead [2]  24/19 64/21
leading [3]  17/5 63/20
 67/5
learn [1]  54/15
least [7]  7/25 12/10
 14/2 64/11 69/15 69/24
 70/18
leave [1]  45/9
leaving [1]  18/14
led [2]  62/17 62/24
left [1]  17/4
legal [5]  6/24 10/22
 14/23 22/10 24/17
length [3]  30/22 41/4
 42/13
less [1]  79/4
lesser [1]  69/6
lest [1]  69/19
let [27]  3/16 3/17 4/16
 4/16 4/23 5/12 9/11
 9/12 9/13 9/13 9/25
 12/25 16/23 23/12
 28/11 43/11 50/24
 54/18 61/8 61/17 61/21
 66/8 69/1 71/1 74/22
 74/23 76/18
let's [7]  28/12 39/3
 46/17 59/15 64/25
 75/11 75/12
letter [2]  62/19 62/20
letting [1]  31/18
level [3]  48/6 62/23
 69/11
license [23]  17/10
 17/13 17/14 17/21 20/5
 24/23 25/1 30/14 39/7
 39/25 40/5 40/9 41/13
 44/22 44/22 44/25 54/3
 58/16 58/17 58/18
 63/22 63/25 65/23
life [2]  7/14 16/9
lift [1]  33/17
LIFTBOSS [1]  46/7
Lightning [2]  44/24
 45/2
like [32]  7/17 8/7 8/8
 8/10 9/4 13/9 13/16
 14/7 14/7 14/13 16/14
 22/12 24/1 26/24 29/8
 32/13 32/25 35/18
 40/13 41/5 41/7 49/14
 51/9 54/18 59/22 60/10
 62/1 64/5 64/7 73/2
 75/22 78/9
likely [1]  8/12
limited [4]  46/20 58/18
limits [1]  40/14
line [1]  66/14
lines [1]  32/7

list [5]  44/15 47/20
 51/23 65/9 77/6
listed [3]  22/15 44/11
 44/18
listened [1]  35/1
literally [1]  57/9
litigate [4]  17/19 48/16
 50/22 60/1
litigated [1]  24/8
litigating [5]  32/16
 32/17 33/18 58/4 74/5
litigation [6]  50/13
 56/19 77/17 78/6 78/24
 79/6
litmus [1]  62/9
little [5]  7/9 30/5 30/24
 36/21 44/20
live [2]  28/16 29/2
LLC [6]  1/3 1/12 2/4
 2/11 2/12 3/12
LLP [2]  2/6 2/7
LLP-NC [1]  2/6
located [1]  36/20
long [11]  2/5 4/7 4/12
 4/13 4/14 30/19 42/14
 66/6 66/12 72/18 75/10
Long's [1]  24/14
long-run [1]  75/10
longer [1]  66/23
look [10]  21/10 27/21
 31/3 43/11 44/17 50/8
 64/22 70/8 70/9 76/19
looked [4]  4/18 7/22
 16/7 52/7
looking [4]  4/19 21/9
 39/13 58/12
Loop [1]  2/6
loose [1]  47/6
lose [1]  38/6
lost [3]  35/22 72/5
 75/21
lot [13]  3/4 14/18 20/4
 21/18 22/25 30/2 35/18
 43/5 49/14 51/2 71/8
 73/2 78/19
loud [1]  18/13
love [1]  9/18
lower [2]  4/19 25/11
Lupin [1]  40/25

**M**

machine [3]  71/5 71/5
 71/16
machines [1]  22/24
made [19]  6/10 8/2
 27/5 29/18 32/9 42/16
 45/10 47/13 47/16
 49/17 49/24 52/7 54/1
 55/23 57/23 59/17
 66/22 69/11 73/9
major [1]  30/10
make [25]  7/15 19/5
 21/11 24/24 28/13 30/1
 30/2 30/5 31/6 32/5
 35/6 36/15 46/12 46/22
 49/22 50/1 53/18 56/22

57/5 59/17 60/1 72/4
 72/4 77/25 79/4
makes [4]  28/13 40/13
 45/4 49/12
making [3]  17/8 19/22
 27/8
manufacture [2]  47/4
 47/7
manufacturer [1]  6/7
manufactures [1]  45/6
manufacturing [1]  5/18
many [3]  17/20 19/24
 21/5
March [2]  77/7 77/8
mark [1]  46/6
marked [1]  6/12
market [6]  6/4 6/16
 21/17 30/10 45/16
 53/12
marketing [2]  6/15
 53/12
markings [1]  53/25
marks [1]  28/2
material [1]  42/18
materialize [1]  7/6
matter [16]  15/8 16/20
 32/11 33/23 34/2 40/4
 40/16 46/19 51/1 63/3
 68/24 68/25 69/22 73/5
 76/12 79/19
matters [5]  37/8 51/10
 51/13 60/10 65/10
may [22]  3/24 4/13 8/9
 13/10 13/12 24/5 29/1
 29/11 30/8 35/8 42/12
 45/3 45/4 45/19 47/3
 47/4 56/22 62/11 62/12
 62/13 63/12 75/6
maybe [28]  7/20 7/22
 8/20 8/23 9/7 13/9
 13/17 13/20 19/2 24/7
 26/1 27/15 27/25 33/15
 38/3 63/17 63/17 70/5
 71/3 71/23 71/25 72/3
 73/10 74/25 75/18
 75/21 78/8 78/14
McCamy [1]  2/7
me [53]  3/7 3/16 3/17
 4/16 4/16 4/23 5/11
 5/12 7/4 8/7 8/23 10/1
 12/25 16/8 16/9 16/23
 16/25 18/2 18/15 18/16
 23/12 28/11 30/19 31/5
 32/13 32/22 35/18
 36/10 36/21 38/22
 38/25 43/11 43/22
 43/23 45/22 48/8 51/21
 54/3 54/18 58/11 61/1
 61/21 61/22 65/25 66/1
 66/8 67/16 71/1 72/23
 74/22 74/23 76/19 77/6
mean [56]  5/9 7/12
 11/4 11/4 11/10 13/16
 13/16 13/19 13/22
 14/14 15/1 18/12 18/19
 19/20 20/3 22/19 22/25

23/21 25/14 26/19
 28/17 37/10 37/21
 38/17 45/3 47/2 47/15
 48/2 48/11 52/4 56/2
 56/16 59/9 59/9 59/9
 60/16 62/3 64/5 64/6
 64/7 67/1 67/18 67/18
 67/20 68/19 68/21
 69/23 70/2 70/6 70/6
 71/1 73/6 73/22 73/25
 74/12 78/20
meaning [2]  46/25
 77/10
means [13]  12/1 13/20
 14/9 23/25 40/15 42/25
 43/3 43/7 45/9 59/1
 62/16 64/10 67/19
meant [1]  20/10
mechanical [1]  1/20
mechanism [1]  32/5
meet [2]  49/7 49/20
meeting [11]  14/23
 15/2 15/3 24/20 25/16
 34/21 42/18 42/19
 42/25 43/20 65/13
meetings [1]  30/18
mens [2]  51/15 51/17
mention [1]  51/23
mentioned [5]  17/10
 43/24 51/25 54/11
 55/20
merger [10]  26/22
 26/24 27/13 27/17
 31/13 37/1 39/2 39/22
 39/23 69/23
merits [1]  50/21
met [1]  23/6
Meunier [1]  2/12
microphone [2]  9/20
 9/22
might [19]  5/14 12/8
 12/9 15/10 18/16 22/20
 23/22 29/22 44/20
 48/17 54/15 64/10
 69/19 71/8 74/13 75/1
 75/7 75/10 77/4
Milam's [2]  64/15 64/20
million [4]  14/8 14/10
 38/13 41/8
mind [3]  9/3 15/3 48/23
minds [10]  14/24 15/2
 24/20 25/16 34/21
 42/18 42/20 43/1 43/20
 65/13
mine [1]  3/24
minus [1]  64/25
minute [4]  51/10 54/22
 77/10 77/18
misconduct [9]  25/10
 25/11 38/1 68/8 68/14
 69/3 69/3 69/6 72/19
misled [1]  55/10
misrepresentation [15]
 8/1 25/10 25/10 25/23
 58/7 65/13 68/8 68/13
 68/18 68/21 69/6 69/10

69/16 72/21 72/22
misrepresentations [1]
 51/18
misstate [1]  69/18
misstatements [1]  31/2
mistake [2]  26/7 61/24
mistaken [1]  10/10
misunderstanding [3]
 42/24 54/9 63/13
mold [7]  52/9 64/16
 64/17 64/25 65/2 65/2
 65/20
molds [8]  17/7 52/6
 52/24 53/23 53/25 54/1
 59/2 65/1
moment [3]  48/10 66/6
 66/13
monetary [1]  19/7
money [8]  19/4 19/25
 23/14 23/15 24/3 41/12
 42/4 79/4
month [3]  30/15 77/2
 77/6
months [8]  17/5 54/4
 62/9 62/25 63/5 63/20
 67/5 77/3
mooted [1]  74/14
more [19]  3/24 5/17
 7/20 9/6 9/8 14/17 24/7
 25/24 29/13 44/8 44/20
 51/3 51/4 56/10 61/21
 64/11 64/14 67/6 79/4
morning [7]  3/2 4/5 4/9
 9/14 28/25 29/18 34/15
most [5]  4/7 8/12 27/11
 36/10 39/5
motion [28]  15/16
 15/18 16/13 16/19
 16/22 30/1 35/25 36/1
 36/1 36/1 36/6 36/6
 41/20 42/8 49/8 61/14
 61/25 62/24 68/5 73/15
 76/22 77/3 77/4 77/5
 77/7 77/9 77/12 77/15
motions [2]  1/15 29/20
move [4]  28/11 33/11
 38/11 65/25
moved [2]  36/4 42/8
moving [1]  48/24
Mr [3]  51/11 55/20
 61/17
Mr. [30]  24/14 28/11
 28/23 30/19 51/9 51/23
 52/14 54/11 54/13
 58/13 61/4 61/8 61/11
 61/19 61/22 62/11
 62/14 64/15 64/20 65/7
 65/9 66/5 66/6 66/12
 70/21 72/18 73/6 74/24
 75/11 76/7
Mr. BenGera [3]  61/4
 61/8 61/19
Mr. Cobb [17]  28/11
 28/23 51/23 54/11
 54/13 58/13 61/11
 61/22 62/11 62/14 65/7

**M**

Mr. Cobb... [6] 65/9 66/5 70/21 74/24 75/11 76/7
Mr. Cobb say [1] 52/14
Mr. Cobb's [1] 73/6
Mr. Long [4] 30/19 66/6 66/12 72/18
Mr. Long's [2] 24/14
Mr. Milam's [2] 64/15 64/20
Mr. Schaetzel [1] 51/9
Ms. [1] 29/14
Ms. Carlson [1] 29/14
much [4] 11/8 16/20 18/15 51/9
multiple [1] 31/13
must [1] 16/11
mutual [2] 15/8 26/7
mutually [1] 15/9
my [22] 3/7 3/22 4/6 4/7 7/3 7/10 8/24 9/3 9/24 14/16 16/8 16/9 18/16 37/24 38/5 46/2 59/15 61/24 69/20 69/20 70/21 71/3

**N**

name [12] 20/25 21/16 24/24 46/7 46/8 52/4 52/5 53/6 54/1 55/13 64/3 65/19
names [2] 4/14 55/14
nature [1] 44/21
NC [1] 2/6
NCAA [1] 42/22
necessary [3] 29/23 51/5 60/22
need [15] 9/19 14/16 19/18 23/23 29/13 29/15 29/16 33/16 45/25 48/23 49/23 69/10 70/19 73/25 77/23
needed [2] 12/16 37/13
needs [2] 32/8 34/5
negotiated [11] 11/11 11/15 11/15 11/16 17/22 22/7 30/15 31/4 41/4 47/10 72/4
negotiation [6] 11/24 13/10 14/19 17/22 30/22 31/6
negotiations [14] 8/2 10/25 11/3 11/9 12/25 13/2 13/7 14/25 17/6 25/21 33/10 40/2 43/8 47/19
neighbors [1] 36/18
never [13] 11/2 13/2 14/16 17/2 17/4 20/8 25/21 41/12 47/3 54/14 55/11 65/22 74/3
new [7] 3/13 21/5 40/10 41/11 45/21

**O**

O.C.G.A [1] 41/25
objectively [1] 55/9
obligation [5] 21/21 47/1 54/19 54/20 77/19

49/11 59/13
next [2] 36/20 77/3
night [1] 7/1
nine [1] 77/3
Ninth [10] 50/14 52/12 52/23 53/2 53/14 56/24 57/3 57/12 57/14 57/19
nitty [1] 14/3
nitty-gritty [1] 14/3
no [38] 22/5 22/6 22/13 23/18 25/2 27/12 28/15 32/21 39/2 43/4 43/6 43/9 43/14 45/19 46/13 46/19 46/20 47/1 49/15 51/1 52/14 55/22 55/23 56/16 56/18 59/9 59/19 66/23 68/24 73/1 73/19 73/20 74/4 75/17 75/18 76/12 79/4 79/4
nobody [4] 18/6 31/6 31/14 50/5
Nods [1] 20/15
non [1] 73/20
non-breach [1] 73/20
none [3] 12/11 47/15 50/20
nonprofits [1] 71/5
normal [1] 26/21
normally [2] 12/5 14/16
North [2] 56/2 56/5
NORTHERN [5] 1/1 32/3 33/14 40/24 79/22
not [140]
note [1] 34/12
nothing [4] 12/10 47/24 69/20 74/4
notice [12] 8/20 12/15 15/15 15/19 16/14 16/18 31/18 33/6 33/14 41/20 41/22 54/5
notified [3] 6/11 11/17 12/6
notify [1] 31/21
Novare [2] 40/22 41/23
now [18] 6/20 18/7 23/22 23/22 31/20 32/9 33/24 38/9 40/11 50/18 57/24 58/4 61/7 64/10 67/2 67/19 74/22 78/9
nowhere [1] 76/6
nuances [2] 9/17 24/17
number [13] 1/5 1/10 4/18 4/19 22/3 22/15 29/20 32/10 33/4 33/20 40/19 42/16 44/16
Number 16 [1] 32/10
Number 18 [1] 33/20
Number 43 [1] 33/4
numbers [2] 4/17 4/17
nutshell [1] 26/1

obviously [5] 13/17 21/11 35/8 42/11 77/25
occurred [2] 23/17 60/17
off [3] 30/10 53/19 67/3
off-road [1] 30/10
offer [3] 23/25 24/3 50/10
offered [4] 23/14 23/19 41/12 43/4
office [2] 7/3 36/19
officers [1] 30/17
Official [1] 1/24 79/21
often [1] 36/11
oh [44] 54/13 57/9 57/25 74/25
okay [21] 3/4 3/15 4/14 9/24 12/17 14/7 19/10 20/16 21/4 29/6 51/7 51/21 52/18 53/10 58/15 59/10 61/19 73/4 74/21 76/3 78/18
old [3] 12/9 32/6 41/13
once [3] 16/10 37/10 37/11
one [35] 4/11 5/13 5/14 12/9 23/10 26/13 28/12 34/15 35/10 36/9 39/8 39/14 40/8 43/11 43/24 48/23 49/9 49/11 49/22 50/11 57/5 61/9 61/21 68/14 69/15 70/4 71/24 72/20 73/5 75/5 78/6 79/4
only [13] 14/17 16/13 18/21 24/11 26/11 28/20 33/24 33/25 49/8 56/24 60/20 71/15 71/15
open [6] 5/10 31/7 35/14 45/9 58/12 76/19
opened [1] 31/7
opening [2] 15/18 17/11
operable [1] 7/8
operated [1] 40/6
operating [1] 41/13
opinion [5] 10/9 10/10 21/12 28/15 43/2
opinions [1] 25/15
opportunity [3] 31/8 36/8 38/7
opposed [2] 57/5 58/1
oral [1] 40/3
order [34] 4/25 6/10 7/4 7/12 7/15 10/7 10/17 10/24 11/9 11/19 12/3 12/25 13/1 32/3 32/4 32/10 32/13 32/14 33/5 33/12 34/1 34/4 34/8 34/14 35/10 42/24 49/21 54/6 57/23 58/20 58/24 69/8 77/10 77/18
organization [1] 5/14
origin [1] 5/16

original [16] 3/11 4/20 5/20 10/23 16/14 17/18 23/9 24/18 24/21 26/3 26/6 26/8 28/22 65/15 76/13 78/6
other [28] 4/7 4/11 9/5 10/11 11/6 21/14 24/4 24/11 26/11 26/13 27/8 27/12 31/12 33/8 34/3 36/20 39/20 46/3 49/22 54/13 55/13 65/18 70/16 70/22 71/24 72/20 78/14 79/4
otherwise [5] 8/24 13/25 40/3 44/10 79/8
OTR [38] 1/3 1/6 1/9 1/12 2/4 2/9 2/9 3/11 3/12 3/19 3/21 4/4 5/8 17/20 21/25 22/8 24/22 24/23 30/9 30/21 31/8 31/20 36/18 41/10 43/10 44/7 46/2 46/8 47/1 57/15 57/18 62/8 63/5 63/19 64/1 65/15 65/23 67/2
OTR's [3] 29/2 57/14 68/20
our [22] 3/23 11/21 11/23 13/1 14/7 15/7 19/12 21/1 28/1 28/2 28/2 28/22 34/16 37/16 46/9 49/4 50/11 54/21 59/21 69/8 73/12 74/7
ours [2] 46/6 64/3
ourselves [1] 46/20
out [28] 5/13 6/20 7/6 7/9 7/10 9/24 11/4 13/21 18/13 37/18 50/13 50/24 52/10 54/21 55/16 55/22 56/11 59/13 61/14 61/22 61/23 62/4 65/19 70/10 71/7 78/12 78/22 79/6
outlined [1] 77/16
Outrigger [22] 43/12 43/13 44/23 45/1 46/5 46/18 47/12 47/14 47/15 47/18 47/22 50/4 51/25 52/2 52/19 52/23 53/3 53/6 54/1 55/13 56/11 57/16
outset [1] 65/14
outside [9] 27/4 27/22 30/18 40/17 48/12 56/23 69/21 70/8 70/24
over [19] 9/20 9/25 11/17 14/11 14/14 14/15 25/13 30/15 32/12 33/13 33/13 33/15 34/9 38/12 41/7 62/15 63/13 63/22 64/10
overall [1] 50/8
overnight [1] 30/14
overseas [2] 6/7 45/7

owe [1] 41/15
owed [3] 5/22 19/18 41/15
own [6] 17/8 18/16 24/24 43/18 64/3 71/3
owns [1] 57/15

**P**

page [1] 66/10
paid [6] 19/8 19/10 23/14 41/11 79/2 79/3
paper [1] 12/13
papers [3] 42/10 42/12 43/5
paragraph [4] 39/14 39/15 39/16 44/3
Paragraph 10 [2] 39/14 39/16
Paragraph 11 [1] 39/15
part [21] 6/3 10/7 10/14 10/17 12/12 12/22 20/11 21/24 22/3 22/15 24/2 37/11 44/1 44/16 47/6 47/19 50/11 54/12 56/25 70/19 71/13
participating [1] 30/17
particular [3] 6/5 72/1 72/8
particularly [2] 5/4 12/8
parties [39] 3/10 4/22 6/10 9/18 10/11 12/6 12/13 12/15 14/5 14/20 15/13 17/17 25/4 25/17 26/9 31/6 31/19 31/22 31/23 31/25 32/7 32/16 32/19 33/6 33/8 33/10 33/20 36/12 39/17 40/2 40/5 43/1 43/18 47/10 68/1 75/8 78/7 78/11 79/7
parties' [1] 11/19 15/9 44/19
parts [1] 10/8
party [10] 6/7 19/22 26/13 27/19 34/13 39/16 39/17 45/5 45/6 61/24
passed [3] 16/20 58/14 66/5
past [1] 19/5
patent [5] 3/23 20/20 39/7 39/25 47/13
patents [1] 20/23
pattern [4] 43/13 46/16 50/6 50/7
patterns [1] 46/4
pause [2] 33/3 66/2
pay [8] 14/8 23/14 23/25 23/25 24/3 41/12 44/8 78/18
paying [2] 5/22 6/18
payments [6] 19/4 19/7 41/8 41/9 67/13 67/17
pending [1] 29/21
people [5] 3/5 8/19

**P**

people... [3]  48/6 70/22 78/14
Pepsi [3]  71/4 71/5 71/16
per [1]  56/1
percent [1]  57/4
performance [1]  11/8
performing [1]  31/24
perhaps [6]  6/7 9/5 12/22 19/22 34/5 50/1
period [4]  30/15 61/11 61/13 77/21
permissible [2]  6/24 63/5
permitted [2]  46/14 62/10
person [4]  37/13 45/11 71/22 71/24
personally [2]  30/17 61/12
perspective [2]  20/20 30/6
petition [3]  6/22 8/12 77/20
Pharmaceuticals [1]  40/25
Phillips [1]  2/7
phone [4]  54/11 54/12 54/13 62/24
physically [1]  36/19
picked [1]  30/8
pickers [1]  37/23
piece [4]  57/22 58/17 61/9 61/18
pirated [1]  6/1
place [2]  75/22 76/5
plaintiff [59]  1/4 1/10 5/1 5/5 5/7 5/25 6/6/6 6/15 6/17 6/21 7/17 7/24 8/1 8/5 8/9 9/1 9/11 9/12 13/11 13/13 13/14 13/19 13/21 15/5 15/10 17/9 17/15 18/1 18/4 18/5 19/18 19/24 19/25 27/5 28/21 30/25 31/20 37/20 38/4 45/8 53/11 55/10 55/11 55/11 56/12 59/8 60/3 60/9 63/8 71/23 72/23 73/10 75/6 75/15 76/15 77/19 78/16 78/17
plaintiff's [10]  5/20 5/23 15/11 18/24 21/6 22/18 59/18 71/23 76/10 78/3
plaintiffs [1]  77/13
plan [1]  12/12
planning [1]  55/18
plate [1]  65/1
plates [1]  52/8
platforms [1]  37/22
players [1]  30/10
plead [1]  57/21
pleadings [2]  7/22 49/1
please [1]  3/3

**pleasure** [1]  29/24
pocket [1]  61/15
point [43]  7/13 9/13 10/12 17/18 18/22 19/2 19/6 23/21 24/9 26/1 28/1 28/16 32/17 34/16 35/20 38/2 38/5 41/25 46/23 47/13 49/22 50/8 50/19 50/22 54/23 58/6 62/12 63/2 63/14 65/12 65/22 66/9 69/5 69/20 69/20 69/25 70/24 73/9 74/24 75/5 76/25 77/11 77/15
point at [1]  50/19
point first [1]  9/13
point I [1]  46/23
point in [1]  19/2
point is [3]  50/22 69/5 75/5
point of [3]  18/22 19/6 65/12
point that [2]  47/13 65/22
point they [1]  35/20
point to [3]  54/23 58/6 69/25
point we [1]  63/14
point what [1]  66/9
point when [1]  62/12
point where [1]  28/1
pointed [3]  52/1 70/10 70/11
points [4]  30/1 36/25 42/16 61/21
pool [1]  36/14
PornHub [1]  75/2
portion [3]  39/14 44/4 46/24
portions [1]  44/2
posed [1]  23/3
position [12]  13/1 13/25 20/14 20/21 21/1 25/13 29/3 54/10 57/5 57/11 70/18 76/7
positions [3]  3/10 4/22 58/1
possesses [1]  59/8
possibility [4]  45/10 71/20 72/3 72/3
possible [2]  70/22 72/14
posture [1]  10/20
practical [1]  10/3
practice [2]  5/4 8/24
practiced [1]  37/10
practicing [1]  40/12
pre [1]  34/1
pre-stipulation [1]  34/1
preceded [1]  13/7
precedent [1]  41/23
precisely [2]  52/11 52/24
precursor [1]  71/18
preexisting [1]  41/10
prefer [1]  37/20

**prejudice** [6]  32/1 33/21 76/22 77/1 77/9 77/16
premise [6]  25/6 26/2 27/10 48/19 59/12 68/20
premised [1]  67/24
prepare [1]  29/19
prepared [7]  7/5 23/20 29/23 46/2 53/24 54/1 60/25
preponderance [1]  49/2
present [2]  20/11 51/12
presentation [3]  3/21 24/14 62/11
presented [1]  51/11
presenting [1]  3/21
presents [1]  34/24
preserving [1]  10/24
presume [1]  17/25
pretty [1]  37/13
prevailed [1]  53/1
prevails [1]  75/15
previously [2]  17/11 40/6
price [1]  71/24
prices [1]  44/16
primary [4]  24/7 24/13 51/14 76/17
printed [1]  52/5
prior [3]  21/24 22/7 40/2
private [1]  68/24
probably [5]  3/21 9/19 13/24 64/23 75/23
problem [3]  41/6 64/4 76/14
problems [1]  38/10
procedural [1]  10/3
procedural [5]  10/3 10/5 30/3 35/16 68/25
procedurally [1]  12/21
proceed [1]  77/17
proceeding [1]  73/6
proceedings [5]  1/20 34/6 73/18 79/14 79/19
process [3]  6/3 31/24 52/8
procure [2]  44/7 47/4
procured [3]  58/22 66/16 70/14
procurement [1]  47/7
procuring [1]  55/17
produced [1]  10/20
product [57]  5/19 17/1 17/3 17/5 17/7 17/8 19/22 21/2 21/2 22/14 25/3 27/24 43/14 43/17 43/23 46/9 53/23 54/14 54/18 54/19 54/20 54/24 55/1 55/6 55/10 55/12 55/17 55/22 56/8 56/12 56/13 58/22 59/13 59/14 59/21 62/16 63/14 63/16 63/17 64/1 64/2 66/16 66/18 66/21

**66/22** 66/23 66/24 66/24 67/4 70/3 70/17 71/17 73/2 73/22 74/17 76/9
products [24]  22/1 22/4 22/8 43/7 43/10 44/10 44/10 44/16 47/1 47/5 47/5 58/10 58/19 58/19 58/23 58/24 59/8 70/13 70/22 70/23 71/15 71/16 72/7 74/18
products in [1]  72/7
profile [1]  37/13
profit [1]  72/4
progeny [1]  33/25
progressed [1]  54/8
promise [3]  39/18 71/8 75/3
promises [1]  27/8
promptly [1]  33/10
proof [2]  43/19 49/20
properly [1]  60/8
property [38]  5/17 5/21 18/6 18/8 18/10 18/17 18/24 19/13 19/16 19/16 19/19 20/5 20/17 20/22 21/3 21/6 21/22 22/6 28/2 28/8 28/8 28/15 46/13 46/21 47/8 47/11 47/21 48/5 49/25 50/3 59/7 59/18 59/22 60/5 60/7 60/9 76/11 78/23
proposed [4]  34/14 35/10 40/3 69/8
proposition [3]  40/19 42/13 42/23
propriety [1]  5/10
protected [1]  59/22
protection [6]  48/7 49/25 50/3 50/6 50/10 50/13
prove [4]  30/25 40/13 40/16 72/18
provide [1]  19/17
provided [2]  6/3 43/22
provision [2]  31/11 54/23
provisions [1]  39/5
purchase [2]  44/8 47/1
purchased [1]  71/21
purchasing [2]  6/17 45/10
purpose [4]  17/9 22/22 44/4 69/18
purposes [5]  39/19 42/15 46/1 51/14 60/11
pursuant [4]  5/24 6/24 11/9 67/13
put [11]  4/17 8/19 9/20 13/18 16/22 24/23 25/25 33/1 54/18 71/15 71/16
puts [1]  78/5

**Q**

qualify [2]  42/25 43/14
question [17]  7/7 10/2 10/5 23/3 34/24 35/14 45/18 46/12 48/18 51/11 56/17 59/4 59/15 60/12 66/7 70/21 78/10
questions [10]  3/17 24/15 25/24 30/3 31/8 37/4 42/17 50/21 51/2 51/6
quickly [1]  75/19
quite [1]  13/21
quote [4]  10/25 22/1 66/15 69/17

**R**

raise [5]  35/20 36/8 36/23 37/2 38/8
raised [3]  10/2 36/25 37/6
raised a [1]  10/2
rather [2]  6/6 65/17
Ray [2]  1/16 29/25
RCR [2]  1/23 79/20
rea [2]  51/15 51/17
reached [8]  12/6 12/15 14/20 15/1 30/14 31/22 54/9 71/7
reaches [1]  63/2
read [9]  31/19 32/13 32/22 33/12 57/19 64/15 66/6 66/13 72/11
reads [2]  32/13 46/25
ready [1]  31/5 41/10 78/18 79/5 79/10
real [1]  71/10
really [28]  7/2 7/2 13/13 14/8 18/13 18/22 22/16 24/6 24/7 24/19 25/25 27/14 28/9 38/3 39/8 60/1 60/10 63/13 65/10 67/9 70/19 72/22 73/1 73/4 75/1 76/5 78/1 78/5
reason [4]  73/20 77/1 78/7 78/8
reasonable [1]  40/16
reasons [1]  77/16
recall [1]  23/23
receive [1]  68/2
received [5]  38/13 38/14 41/7 67/15 67/16
recently [2]  16/8 38/14
recognize [1]  9/4
recognized [1]  73/13
record [5]  4/17 49/8 62/20 76/19 79/19
recorded [1]  1/20
reduce [2]  12/7 12/16
reduced [1]  11/16
refer [5]  4/24 5/1 5/7 5/8 11/7
reference [1]  29/5 34/9
referenced [2]  34/4

{PLAINTIFF} v.
{DEFENDANT}

{WITNESSNAME}
{DATE}

**R**

referenced... [1] 52/2
referred [2] 12/14 44/9
referring [4] 12/4 27/2
68/17 74/2
refers [6] 44/11 62/14
68/7 68/8 68/8 68/11
regardless [4] 21/5
57/17 73/7 73/9
regards [1] 73/4
registered [1] 50/16
registration [1] 57/18
registry [1] 24/4
regret [1] 22/17
regular [1] 67/25
reject [1] 41/18
related [3] 50/21 75/15
75/16
relates [9] 38/16 67/9
67/11 67/22 74/23 76/7
76/17 76/21 77/12
relating [1] 37/22
relationship [3] 15/21
15/22 22/8
release [2] 65/23 67/24
relevant [4] 39/5 44/18
51/24 53/5
reliance [3] 37/1 39/3
40/16
relief [3] 38/6 69/16
76/15
relies [1] 10/11
rely [2] 39/18 48/3
relying [7] 28/4 31/1
31/14 41/20 56/10
56/14 56/23
remain [2] 24/19 76/23
remains [1] 77/6
remember [4] 4/23
5/13 71/2 75/23
remove [1] 53/3
removed [4] 52/24 54/2
56/11 59/2
removing [1] 66/22
reopen [22] 10/22
15/16 15/18 16/13
16/19 25/8 25/9 25/20
28/21 30/2 33/11 34/11
34/17 36/1 36/6 42/8
42/8 49/9 61/14 61/25
76/22 77/4
reopening [2] 36/22
38/6
replaced [2] 40/7 44/24
report [1] 20/3
Reporter [2] 1/24 79/21
reporter's [2] 9/22
79/17
reporting [1] 19/23
repose [1] 62/1
representation [3] 28/4
39/17 39/19
representations [4]
27/5 40/14 55/23 55/25
represented [1] 37/13

request [2] 7/2 48/20
require [1] 44/20
required [3] 6/19 19/5
44/25
requisite [1] 5/22
rescind [10] 8/4 8/17
15/15 15/17 16/12
16/15 23/24 26/14
41/21 61/6
rescinding [2] 8/20 9/1
rescission [10] 16/4
16/22 23/13 23/16 24/4
36/25 41/22 42/14
61/18 68/16
resolution [2] 39/10
63/23
resolve [9] 17/23 18/21
21/24 22/7 25/17 27/1
48/17 72/13 78/12
resolved [1] 24/21
resolves [1] 18/22
resolving [1] 25/7
respect [2] 42/13 51/22
respective [1] 31/21
respond [2] 28/20
51/11
response [2] 28/12
77/24
responses [1] 42/17
restriction [1] 58/16
result [1] 26/14
retail [1] 5/18
retain [1] 14/13
retained [1] 32/11
retains [1] 34/2
return [1] 42/3
reverse [1] 57/22
revisit [1] 77/10
rid [1] 33/16
right [59] 3/2 3/7 3/9
3/16 4/3 4/10 4/16 5/15
8/18 11/11 11/18 12/3
13/5 13/10 14/21 14/22
15/8 16/23 17/25 18/17
20/1 20/14 26/17 27/9
29/10 34/19 36/3 36/13
37/3 37/5 37/8 38/19
38/20 45/20 48/10
48/13 51/8 52/20 52/21
55/2 56/17 58/4 59/3
59/19 59/25 60/25 61/3
61/19 62/2 62/5 74/2
74/6 74/22 75/6 75/11
76/3 79/2 79/3 79/11
rights [45] 5/22 17/12
18/6 18/9 18/10 18/24
19/16 19/19 20/17
20/24 20/25 21/3 21/6
21/22 22/6 28/2 28/8
28/15 46/13 46/21 47/8
47/8 47/11 47/13 47/14
47/17 48/5 57/16 57/17
57/21 57/24 58/1 59/8
59/18 59/22 60/3 60/5
60/7 65/18 73/23 74/4
74/7 76/11 76/11 78/3

rise [1] 69/10
river [1] 55/21
road [1] 30/10
Robert [2] 2/7 4/5
Roberts [1] 2/10
Rogers [1] 30/20
ROME [7] 1/2 30/18
36/13 36/14 36/15
36/16 36/18
room [1] 55/21
rose [1] 62/22
routine [1] 9/16
royalties [5] 5/22 6/18
17/19 20/1 41/14
royalty [1] 19/23
RPR [2] 1/23 79/20
Rubble [2] 75/22 75/23
rule [23] 12/12 15/13
25/9 33/20 34/18 34/25
35/5 35/8 35/13 37/11
48/20 48/24 49/19
61/24 67/22 68/3 75/4
75/7 75/18 77/2 77/6
77/7 79/9
Rule 60 [1] 48/24
rules [1] 36/4
ruling [6] 6/23 35/3
75/21 76/24 77/2 77/8
run [3] 75/10 76/5
77/21
running [1] 75/22

**S**

S/T [1] 46/7
said [19] 7/4 10/14
12/25 22/21 26/1 28/18
29/1 31/15 41/7 42/6
42/10 46/19 47/21
54/13 55/22 57/20 65/8
69/21 70/11
sale [1] 47/7
Sam's [1] 71/18
same [33] 3/10 4/22
5/5 8/14 8/14 8/15
25/14 30/12 32/2 46/4
46/15 52/12 53/19 54/4
57/9 64/16 64/16 64/16
64/18 65/23 65/9 65/10
65/19 65/20 66/12 69/4
69/5 69/11 70/3 70/22
73/12 76/6 77/16
Samuel [2] 2/5 4/13
Sarif [1] 40/22
sat [2] 55/20 55/20
saw [1] 7/1
say [54] 11/5 11/22
13/12 13/12 13/13
13/25 14/4 15/10 15/24
16/2 16/3 17/23 24/10
24/16 28/12 28/18
34/20 39/6 40/17 41/19
42/3 42/11 45/21 45/22
46/4 46/15 46/18 50/11
50/18 52/14 56/14
57/15 61/21 63/5 64/5
64/25 65/4 65/7 66/20

66/23 67/3 70/17 70/19
73/23 74/7 74/8 74/23
74/23 74/25 75/6 75/11
75/12 75/13 76/6
saying [6] 16/15 18/13
28/9 31/14 53/17 70/25
says [24] 6/10 6/21
15/5 16/10 25/1 25/9
25/19 26/24 27/11
31/11 33/5 39/9 39/16
43/9 44/4 46/6 53/11
54/24 56/17 65/8 66/13
69/10 69/15 76/13
Scalia [3] 10/9 10/10
10/14
scenario [1] 34/7
Schaetzel [4] 2/12 3/22
4/1 51/9
schedule [17] 22/1
22/14 44/9 44/11 44/12
46/10 47/9 47/12 47/23
47/24 47/25 51/23
51/24 51/25 52/19 53/6
58/25
scheming [1] 20/9
schools [1] 71/4
scope [1] 62/16
scrubbed [2] 63/16
70/4
seat [1] 3/3
second [17] 3/7 3/16
23/10 24/15 35/20
36/25 39/15 46/24 57/6
60/19 65/25 66/1 66/8
66/13 68/9 69/13 73/18
section [8] 39/22 44/2
46/24 46/25 58/14 66/5
66/11 66/19
sections [1] 39/14
see [13] 9/21 18/2
19/20 20/4 28/8 32/13
32/25 36/11 39/4 39/13
43/11 44/1 48/2
seek [1] 8/4
seeking [5] 8/5 10/21
10/22 12/23 36/12
seem [1] 27/4
seems [11] 7/17 8/7
8/8 8/10 9/1 13/9 16/8
16/9 18/17 27/9 60/16
seen [5] 24/1 27/14
32/3 33/13 45/22
self [2] 17/7 19/23
self-launching [1] 17/7
self-reporting [1] 19/23
sell [16] 23/6 24/25
27/24 28/13 28/14
30/11 41/11 44/7 46/15
47/4 54/25 59/21 64/2
65/17 65/20 71/15
selling [11] 16/25 17/20
27/25 55/5 55/9 59/6
59/16 63/9 72/24 73/2
76/9
sells [2] 23/7 56/13
seminal [1] 10/12

send [1] 16/14
sending [1] 19/25
sense [4] 13/2 22/16
26/24 27/18
sensitive [1] 65/7
sent [1] 16/17
sentence [3] 66/6
66/12 66/20
separate [4] 16/17
24/16 31/13 41/6
September [2] 42/9
77/5
September 23rd [1]
42/9
served [2] 37/15 37/15
service [1] 37/12
set [16] 29/19 34/18
34/24 35/5 35/12 37/1
39/21 44/5 47/9 48/20
48/24 49/21 61/21
64/16 67/23 67/25
settle [4] 14/7 25/9
31/22 76/13
settled [10] 6/2 6/7
6/12 7/11 7/16 8/8
18/19 78/7 78/24 78/25
settlement [64] 6/2 6/3
6/9 6/20 7/11 8/2 8/4
8/15 8/18 10/6 10/13
10/15 10/18 10/21
10/25 11/1 11/3 11/24
14/8 15/15 17/6 17/9
17/22 18/21 18/23
18/24 19/6 25/19 26/8
26/22 26/23 27/3 27/15
30/4 30/6 30/14 30/18
31/18 31/23 32/1 32/8
32/12 32/15 33/6 33/9
33/10 33/16 34/4 34/6
34/10 38/13 38/15 39/6
39/9 39/12 41/9 41/16
54/5 55/16 59/12 60/18
63/20 63/24 67/5
settling [2] 37/16 65/14
several [3] 10/11 20/22
62/8
shall [6] 33/8 33/10
58/18 58/20 66/15
70/11
shared [1] 36/19
she [1] 37/15
she's [1] 9/23
short [1] 42/14
should [14] 4/18 6/17
7/19 8/10 24/18 26/14
27/21 36/7 39/6 45/22
61/16 62/13 75/8 76/18
shouldn't [1] 73/11
show [2] 43/23 53/25
shows [2] 54/18 67/5
Shumaker [2] 2/6 4/8
side [6] 5/18 24/5 27/8
46/6 46/8 70/10
sides [1] 14/19
sidewalk [1] 50/7
sign [3] 12/13 14/9

S

sign... [1] 43/1
signed [12] 6/11 11/11
11/16 12/1 12/18 13/5
14/20 15/4 28/5 43/19
55/16 60/2
significance [1] 73/13
similar [13] 19/20
20/19 22/9 22/9 22/12
22/20 24/1 28/1 28/7
28/7 55/13 64/9 65/5
similarities [2] 18/2
49/13
similarity [1] 64/14
simply [4] 19/22 34/11
49/19 76/24
since [1] 36/4
single [3] 17/4 44/17
47/3
sir [8] 4/2 4/15 29/12
51/8 56/4 61/19 66/3
67/7
sit [2] 49/22 67/2
situation [3] 12/8 34/3
78/21
situations [2] 24/1
36/12
six [4] 30/15 77/2 77/3
77/6
six-and-a-half-month [1]
30/15
six-month [2] 77/2 77/6
size [1] 44/16
slide [3] 32/25 33/4
33/4
slides [1] 29/19
slightly [1] 25/11
slip [2] 9/5 9/7
small [1] 78/21
Smalley [2] 2/7 4/6
smart [1] 13/24
so [142]
sold [3] 18/7 19/25
20/3
sole [1] 24/10
solely [1] 58/18
SOLUTIONS [2] 1/9
2/9
some [33] 3/17 5/20
6/6 7/5 8/3 9/17 18/6
19/7 21/20 21/21 22/17
24/15 28/18 29/8 29/18
29/21 30/3 30/12 36/25
37/21 42/12 45/5 49/12
51/8 53/15 60/7 63/14
73/4 74/12 76/4 76/15
77/11 78/14
somehow [1] 48/21
someone [5] 20/4
28/13 45/11 59/17 72/7
someone's [2] 20/5
73/22
something [16] 3/6 8/5
14/6 22/12 23/6 27/18
27/25 28/6 28/7 29/1

50/20 56/23 64/11
64/13 68/22 70/10
somewhat [1] 28/1
somewhere [2] 19/14
24/24
sorry [13] 4/11 7/9 9/12
13/4 15/24 32/20 42/14
56/2 57/7 57/11 68/11
68/18 78/13
sort [4] 62/9 62/12
62/21 64/16
sound [2] 13/16 60/10
sounded [1] 63/11
sounds [1] 35/17
speak [3] 3/18 3/19
51/10 51/15 51/9 61/8
61/17
speak on [1] 51/10
speaking [2] 18/13
76/19
specific [7] 10/22 12/4
22/22 23/4 27/14 44/16
45/13
specifically [6] 24/8
44/8 46/10 47/25 52/1
61/9
specifics [1] 23/8
spread [1] 9/24
springing [1] 8/15
sprung [2] 5/13 6/20
square [1] 78/5
Stabilizer [2] 44/24
45/1
staff [1] 29/4
stage [1] 11/8
stand [1] 9/21
standard [4] 22/10
48/25 49/3 62/6
standing [1] 7/13
stands [2] 18/25 42/23
start [5] 5/3 39/2 58/12
62/13 74/10
started [3] 30/3 55/17
62/21
starting [2] 31/16 62/12
state [5] 8/24 15/23
52/11 52/23 78/22
stated [4] 11/19 11/23
20/14 44/10
statement [1] 39/19
statements [3] 35/10
49/12 69/11
STATES [4] 1/1 1/16
69/13 79/21
statute [2] 41/25 62/1
stay [2] 9/25 12/10
stayed [1] 32/7
stenography [1] 1/20
step [1] 75/9
Stephen [1] 2/12
steps [2] 8/18 36/7
Steve [2] 3/22 3/23
sticker [1] 66/11
still [11] 5/10 14/4
17/12 28/20 41/13
56/13 63/17 66/18

66/21 70/7 76/4
stipulation [9] 31/25
34/1 34/17 34/19 34/25
35/5 35/12 48/24 49/21
stop [1] 74/7
story [4] 37/14 37/16
40/21 73/12
streamline [1] 73/17
structure [3] 60/16
63/24 63/25
structured [1] 31/6
stuff [5] 5/4 5/6 37/18
76/4 79/1
styled [1] 31/23
subject [9] 14/24 17/21
32/11 33/23 34/2 40/4
40/6 44/19 51/1
subject-matter [4]
32/11 33/23 34/2 51/1
submission [1] 11/23
submit [2] 31/25 73/11
submitted [3] 6/11
34/14 53/24
subsequent [1] 12/25
substantial [1] 64/14
substantially [3] 22/19
64/9 65/4
substantive [2] 69/1
79/10
substantively [1] 38/7
succeed [1] 14/25
successful [1] 79/7
succinctly [1] 16/24
such [6] 6/12 8/20
12/14 25/13 47/6 47/8
sue [2] 8/21 73/25
sued [2] 15/14 74/11
suffering [1] 61/13
sufficient [2] 25/17
68/14
sufficiently [2] 22/9
22/12
sugar [1] 71/10
suggest [1] 49/17
suggesting [2] 72/9
72/10
suing [2] 8/10 15/14
suit [1] 41/22
Suite [1] 1/24
summary [1] 79/5
supersedes [1] 40/2
supplier [10] 44/6 44/6
47/2 58/21 58/22 66/15
66/17 70/12 70/12
70/14
supplier's [2] 44/6 47/7
supply [20] 17/3 17/22
21/2 21/23 22/2 22/6
22/13 22/15 24/17
24/21 25/1 39/7 39/25
41/16 53/5 54/3 59/12
62/17 63/24 66/12
support [1] 15/18
supports [1] 25/7
suppose [1] 8/3
supposed [4] 6/22

14/12 14/14 19/12
supposedly [2] 47/17
49/15
supreme [9] 10/9 34/22
35/3 35/15 40/23 41/24
42/23 75/16 75/20
sure [23] 5/23 7/13
9/18 21/4 21/11 21/13
22/24 27/14 28/3 29/17
30/5 31/6 32/5 35/6
36/15 37/24 46/12
46/23 55/7 56/6 70/11
72/4 77/22
surface [1] 14/2
surprised [1] 52/13
surrounding [1] 30/4
survive [2] 74/13 76/18
SW [1] 1/24
swap [1] 65/19
swapped [1] 52/10

T

tab [9] 39/12 43/25
44/12 46/24 47/23
58/13 66/5 66/10 66/11
Tab 10 [3] 58/13 66/5
66/10
Tab 12 [1] 44/12
Tab 13 [1] 47/23
Tab 5 [1] 39/12
Tab 8 [2] 43/25 46/24
tabbed [1] 29/7
tabs [1] 39/4
take [21] 4/7 8/19
12/13 13/25 16/3 16/10
24/5 24/23 29/8 36/7
47/12 51/4 53/19 57/4
57/12 65/17 67/3 67/12
70/24 75/9 75/9
taking [1] 45/25
talk [8] 7/8 7/15 9/12
30/4 36/24 38/1 52/16
52/16
talked [3] 7/4 62/11
64/8
talking [12] 7/10 11/8
23/9 23/10 24/6 27/1
53/9 53/10 58/3 58/4
63/2 74/15
technical [1] 37/21
Ted [1] 1/24
tell [12] 4/23 8/23 9/23
16/25 21/9 24/22 24/25
37/14 37/15 68/22
73/12 78/18
telling [1] 57/25
tender [2] 38/12 41/7
term [10] 22/11 35/8
40/12 42/18 42/20
42/25 43/2 44/10 47/5
62/16
terminate [2] 12/10
77/9
terminated [2] 6/13
40/10
terminology [1] 56/16

terms [24] 7/11 7/18
14/6 25/14 26/13 27/12
27/20 29/9 31/9 38/18
38/22 39/21 40/8 40/17
43/20 44/5 51/19 51/22
56/1 56/24 68/7 68/12
69/21 70/8
test [1] 62/9
testimony [3] 43/9
70/24 72/13
than [18] 3/24 6/6 7/20
9/5 9/6 18/18 22/24
25/11 29/13 30/2 39/20
51/5 56/10 64/11 64/14
67/6 69/6 71/25
Thank [11] 4/3 4/10
4/15 28/24 51/6 51/7
61/20 74/21 79/11
79/12 79/13
that [611]
that there [1] 63/12
that's [90]
their [42] 6/11 12/13
14/24 17/8 22/2 22/3
25/2 31/21 35/10 36/19
36/19 38/12 41/6 41/20
42/5 42/10 43/6 43/18
45/4 45/4 45/10 45/13
45/14 46/14 47/19
47/21 48/4 48/20 49/8
49/9 50/23 60/13 61/5
64/6 70/18 71/15 71/15
74/6 74/13 74/17 75/10
76/11
theirs [1] 46/5
them [32] 3/25 9/11
18/3 21/10 22/15 28/14
38/6 38/23 40/17 41/15
41/15 41/19 45/2 45/11
45/16 45/17 45/23
45/24 45/25 46/12
46/21 48/3 48/21 49/15
52/9 57/21 60/7 67/17
69/23 71/17 71/19
73/25
themselves [1] 62/22
then [73] 3/16 4/4 4/16
4/20 7/18 8/10 8/20
9/22 10/3 11/2 11/17
12/7 12/13 12/17 12/18
12/24 13/25 14/20
19/11 19/25 20/6 20/17
21/19 23/9 23/12 25/5
26/3 26/9 26/14 27/21
28/11 28/16 29/17 32/6
33/16 36/8 39/22 42/6
45/8 45/16 49/13 49/22
52/18 53/1 53/17 54/3
54/4 54/6 54/8 54/9
55/8 55/16 57/5 57/19
59/8 59/18 60/1 62/6
62/23 68/2 69/13 70/19
71/11 72/2 72/6 73/1
73/20 73/23 74/8 75/16
75/21 76/13 79/7
theories [3] 10/22

**T**

theories... [2] 60/12
60/13
theory [5] 11/1 14/23
24/18 25/20 59/20
there [95]
there's [43] 3/4 3/9
3/11 4/20 7/23 18/2
18/11 22/25 25/2 25/13
27/18 31/10 41/24 43/5
43/8 43/14 45/19 46/11
50/1 51/1 51/2 52/8
53/25 56/16 57/25 58/7
61/13 62/6 62/19 62/22
70/2 70/5 70/9 70/15
72/18 72/19 72/19
73/19 73/20 74/3 74/8
75/18 78/12
thereafter [1] 69/18
these [48] 4/25 5/13
5/14 5/15 12/5 22/23
24/7 25/25 31/3 31/6
31/10 36/8 36/11 36/23
37/5 37/23 38/2 38/8
39/4 40/7 40/8 45/6
45/22 45/24 46/2 46/4
46/5 47/19 48/7 49/14
49/18 50/21 51/12 52/2
52/6 52/7 52/8 55/23
57/8 57/17 59/1 64/22
64/24 65/4 65/10 71/14
71/14 79/5
they [151]
they'll [1] 36/8
they're [29] 5/6 20/2
22/24 24/5 24/25 27/25
34/15 34/18 34/19
36/18 39/9 41/19 42/3
49/5 55/5 55/9 56/1
57/25 59/10 59/16 60/8
60/20 64/17 65/5 65/8
73/1 74/2 74/16 78/9
they've [8] 12/6 35/11
35/17 38/7 41/7 42/9
49/7 49/14
thin [1] 7/6
thing [8] 14/11 24/16
34/12 48/23 69/4 69/5
71/6 76/6
things [5] 7/19 14/18
19/15 24/11 67/9
think [93]
think you [1] 36/7
thinking [8] 12/5 12/14
63/20 65/22 73/15
73/15 77/23 78/25
thinks [1] 48/4
third [4] 6/6 19/22 45/5
45/6
this [137]
those [25] 14/22 19/8
19/10 19/24 21/1 21/7
21/13 23/6 23/8 36/7
37/22 38/21 39/8 41/9
45/9 49/13 53/4 53/16

53/25 58/1 68/14 70/3
71/24 76/24 77/11
though [7] 3/22 8/6
41/12 56/15 60/20
61/17 62/1
thought [6] 14/19 29/3
29/21 48/6 54/7 54/8
threatening [1] 73/25
three [7] 14/14 14/15
33/19 39/6 68/7 68/12
68/14
threshold [1] 51/18
through [12] 6/6 7/22
18/14 26/14 29/8 29/22
31/21 38/21 38/23 45/9
47/12 51/4
throughout [1] 5/2
thus [1] 57/15
TikTok [1] 75/2
time [25] 5/14 7/14
14/17 16/20 19/2 24/9
32/7 32/14 40/11 42/2
51/5 54/8 61/11 61/12
61/13 61/15 61/16
62/12 62/20 75/21
76/23 76/25 77/15
77/21 79/8
timeline [1] 53/22
times [2] 32/3 52/10
timing [3] 16/20 61/21
63/1
tire [43] 6/5 6/16 6/18
18/7 20/16 20/23 21/5
24/23 25/2 43/11 43/12
44/16 45/1 45/1 45/1
45/2 45/13 45/13 45/14
45/20 45/21 46/8 46/15
47/3 47/12 47/14 47/15
47/18 50/8 50/15 50/17
53/19 53/19 53/25
57/16 63/9 63/16 64/2
64/12 64/23 65/16
65/17 65/18
tires [51] 3/5 5/19 7/3
7/6 17/20 18/1 19/12
20/7 20/9 20/19 20/23
20/24 20/25 21/9 22/14
22/21 22/23 22/24
30/10 30/12 37/22
37/23 38/2 44/8 45/4
45/4 45/9 45/10 45/20
46/2 46/5 46/21 47/6
49/13 51/12 52/2 52/6
53/4 53/12 64/8 64/14
64/22 64/24 65/3 65/4
65/10 71/21 71/23
71/24 72/5 72/6
TLA [3] 40/4 40/4 40/8
today [21] 3/18 4/24
5/7 9/10 21/11 25/4
25/14 29/23 30/7 30/21
42/2 43/5 45/22 50/9
53/13 76/16 77/22
77/22 77/23 77/25
78/10
told [7] 12/17 40/17

43/10 45/22 47/11 48/8
55/11
Tom [4] 2/5 4/6 4/11
9/14
too [11] 5/3 32/6 35/2
42/4 42/14 42/14 56/22
61/5 64/23 71/2 75/23
top [3] 42/6 44/3 48/5
total [1] 72/16
totally [1] 18/18
touched [1] 25/25
touching [1] 24/11
towards [2] 27/11
66/14
trade [33] 20/24 21/13
21/14 28/2 37/4 46/7
47/14 47/17 47/25 48/6
48/11 48/14 50/5 50/10
50/12 50/15 50/16
50/18 52/7 52/14 52/16
57/15 57/20 57/24
57/25 58/4 58/17 59/7
60/21 63/10 72/24
75/16 76/10
trade license [1] 58/17
trade-dress [1] 75/15
trademark [54] 17/10
17/13 17/14 20/25
21/15 21/16 22/3 24/22
25/1 25/23 30/13 40/5
40/9 41/13 43/12 43/14
44/18 44/22 44/22
44/25 46/18 51/25 52/5
52/24 53/3 53/4 53/8
53/12 53/19 55/14
56/11 57/18 58/16
58/17 58/18 58/21
63/17 63/22 63/25
65/11 65/23 66/16
66/19 66/20 66/22
66/22 66/23 66/25 67/3
70/4 70/13 70/17 72/8
75/15
trademark-related [1]
75/15
trademarks [14] 17/12
44/23 48/1 48/7 52/2
52/9 59/1 59/6 60/21
63/9 65/6 72/6 72/25
76/10
tradename [1] 22/3
traditional [1] 39/23
transaction [1] 8/15
transcends [1] 27/17
transcript [3] 1/15 1/20
79/18
travel [1] 60/11
traveling [1] 75/13
tread [6] 43/13 46/4
46/15 50/6 50/7 57/16
treat [1] 15/17
tried [2] 10/13 28/6
truck [1] 22/24
true [5] 13/19 46/17
49/19 67/14 68/22
trust [7] 17/14 17/16

17/19 17/23 19/21 20/2
63/22
truth [2] 50/24 69/19
try [5] 9/25 19/13 67/20
72/13 78/11
trying [4] 24/5 24/11
52/15 77/25
Tuesday [3] 34/22 35/7
74/25
Tuggles [1] 2/7
Turley [1] 40/25
turn [3] 43/25 44/12
47/23
turned [1] 61/23
Turner [1] 1/24
two [22] 3/9 5/13 10/22
21/9 25/24 29/13 29/20
30/9 39/13 44/1 44/2
46/5 49/13 58/1 64/22
65/1 65/4 65/10 67/9
69/7 69/23 70/3
Twombly [2] 38/11
49/19
type [2] 6/5 30/9
typical [1] 27/13

**U**

U.S [2] 34/22 69/9
ultimate [4] 38/5 50/22
59/5 60/11
ultimately [5] 37/3 40/7
54/10 54/14 72/18
unambiguous [2] 26/13
27/20
uncertainty [1] 74/8
uncovered [1] 69/19
under [41] 6/19 10/22
11/1 21/20 25/9 25/20
25/22 30/13 31/24
34/11 34/18 34/25 35/5
35/13 36/4 38/11 38/13
38/15 40/6 41/8 41/8
41/13 41/15 41/21 44/5
47/1 48/23 49/19 60/2
60/11 60/12 60/13 63/4
67/19 67/25 68/3 68/5
68/5 69/16 75/13 77/17
underneath [1] 41/11
underreporting [1]
17/19
undersigned [1] 31/21
understand [7] 34/8
38/2 46/23 54/21 59/14
70/25 72/15
understanding [2]
39/19 40/1
understands [1] 47/4
understatement [1]
65/5
understood [4] 22/4
32/5 62/15 63/13
undo [3] 61/7 67/20
69/1
unexecuted [1] 14/5
Unfortunately [1] 57/21
unilateral [1] 13/17

UNITED [4] 1/1 1/16
69/13 79/21
units [1] 19/24
unless [7] 9/20 10/16
44/10 48/13 58/22
69/22 70/17
unregistered [6] 20/24
50/18 57/15 57/20
57/24 57/25
until [7] 7/3 14/9 31/17
37/12 42/9 51/17 74/10
unusual [1] 30/24
up [33] 3/7 3/17 3/23
5/12 5/16 9/22 17/6
18/22 19/1 19/5 30/8
31/17 32/17 33/2 33/5
33/24 34/12 37/16
47/20 48/19 50/14 51/4
54/22 54/22 58/14
61/24 63/20 66/5 66/8
67/5 71/6 72/9 74/23
upon [4] 32/1 33/9 50/8
63/8
upper [1] 47/5
us [24] 4/7 4/9 14/8
16/16 17/24 19/13 20/7
20/9 20/9 27/24 43/8
47/11 47/16 47/21 48/8
55/1 55/23 57/25 61/12
64/3 72/8 73/16 75/5
78/5
use [15] 5/23 17/14
19/18 20/1 20/5 22/21
29/17 37/23 39/3 57/17
58/21 66/15 70/13 71/1
72/5
used [13] 11/6 11/21
11/25 21/21 22/11
22/23 59/1 59/1 61/23
64/3 64/18 71/10 76/12
useful [1] 29/3
uses [1] 43/13
using [8] 5/25 22/2
27/1 60/8 61/22 65/19
66/20 66/23
usually [1] 26/23
utilize [1] 19/12 68/3
utilizing [2] 60/8 60/21

**V**

valid [1] 73/9
values [1] 49/4
various [2] 45/9 52/10
vehicle [1] 60/15
version [1] 29/8
very [9] 31/3 39/23
41/2 41/19 42/2 43/16
44/16 52/13 75/9
via [2] 24/21 24/22
view [4] 37/24 43/6
46/9 46/14
views [1] 13/22
violate [10] 21/7 21/19
23/7 28/7 28/14 47/7
59/6 59/18 72/24 76/10
violate supplier's [1]

| | | | |
|---|---|---|---|
| **V** | 14/11 23/9 23/10 24/6 25/18 25/20 26/25 26/25 46/14 53/9 53/9 55/22 57/22 58/3 58/3 58/4 58/25 60/8 63/2 66/11 68/5 70/2 73/5 73/6 73/8 74/8 75/13 75/14 77/17 78/20 | 60/17 61/14 62/8 62/14 63/19 63/21 78/19 78/21 | worse [1] 67/2 |
| violate supplier's... [1] 47/7 | | whereby [2] 6/4 19/21 | would [62] 5/2 6/5 8/13 8/13 8/17 9/18 13/13 |
| violated [2] 59/21 78/4 | | wherever [1] 59/16 | 14/14 15/12 15/23 |
| violates [4] 21/6 28/1 63/9 73/23 | | whether [27] 7/23 17/17 21/12 24/8 24/21 | 18/25 19/1 19/12 19/15 19/15 19/17 19/18 20/7 |
| violating [4] 5/21 7/18 21/22 74/7 | | 27/21 28/21 34/24 35/4 42/17 46/14 47/5 49/24 | 20/12 21/21 22/8 26/2 26/11 26/16 26/22 27/4 |
| violation [5] 18/8 37/4 48/11 48/14 53/2 | we've [14] 29/7 33/22 40/19 40/24 42/12 54/6 | 57/17 59/17 60/1 62/22 64/3 65/14 65/15 66/18 | 29/3 32/25 38/11 41/14 41/15 43/14 46/14 47/7 |
| violations [3] 53/8 53/9 53/12 | 54/9 54/14 63/12 67/15 67/16 67/17 75/21 76/5 | 70/3 72/23 76/17 76/18 78/2 78/3 | 49/17 49/18 53/7 53/19 55/6 55/17 57/12 57/13 |
| virtually [1] 40/13 | Wearmaster [2] 44/23 | which [37] 3/11 4/19 | 58/9 59/11 59/24 64/7 |
| vitiate [2] 18/25 19/1 | 45/1 | 5/19 7/5 10/10 14/9 | 64/11 65/23 69/3 71/23 |
| voiding [1] 42/21 | Weed [1] 40/20 | 16/21 16/22 17/9 22/2 | 71/25 73/11 73/12 |
| voluntary [2] 33/21 35/12 | week [3] 34/22 35/7 38/14 | 22/3 22/4 23/24 24/6 25/9 25/19 32/10 34/8 | 73/14 73/16 73/17 73/18 74/13 74/14 75/6 |
| | weeks [2] 61/23 63/3 | 34/23 35/2 36/7 39/22 | 77/5 78/11 |
| **W** | well [20] 4/14 7/19 11/12 15/5 15/7 27/13 | 40/20 40/25 41/25 42/23 44/5 45/9 46/7 | wouldn't [9] 15/2 18/12 23/8 46/19 48/8 63/7 |
| Waetzig [1] 34/23 | 28/9 49/4 54/9 54/10 | 47/23 59/13 60/11 | 66/20 66/23 70/19 |
| wait [2] 54/22 74/10 | 56/19 56/22 60/19 63/4 | 67/19 68/20 69/7 73/5 | writing [3] 11/16 12/7 |
| walk [3] 51/4 65/7 78/22 | 70/5 70/16 73/21 74/15 76/3 76/7 | 73/16 | 12/16 |
| Walmart [1] 9/7 | went [4] 50/14 52/11 | while [1] 12/12 | written [10] 10/9 13/14 13/18 15/3 23/1 26/4 |
| want [34] 9/9 9/20 12/7 | 52/23 55/16 | whim [1] 21/17 | 26/10 28/17 39/20 40/3 |
| 14/2 24/10 29/19 30/1 | were [42] 5/15 6/1 7/5 | who [6] 3/17 4/11 | wrong [1] 46/23 |
| 30/4 34/12 35/6 35/20 | 7/10 14/6 17/6 18/20 | 30/20 30/25 37/8 45/4 | wrote [1] 28/5 |
| 36/14 36/14 44/3 44/12 | 19/4 19/7 19/10 19/18 | who's [2] 3/19 36/14 | |
| 46/11 46/22 47/12 | 20/9 20/19 22/1 22/5 | whole [5] 7/2 16/9 | **Y** |
| 47/23 49/22 50/1 51/4 | 22/5 22/9 23/5 23/8 | 36/10 38/16 63/23 | y'all [9] 3/3 5/2 8/23 |
| 51/19 52/16 52/16 | 24/2 36/6 41/9 41/13 | wholesale [1] 71/19 | 11/15 14/19 18/15 |
| 54/25 55/3 59/3 61/4 | 42/16 45/23 47/11 | wholly [1] 59/13 | 78/24 79/1 79/11 |
| 61/4 61/9 67/23 67/23 | 53/23 53/25 54/1 54/7 | why [11] 7/8 9/10 10/6 | yeah [13] 7/7 9/13 21/4 |
| 73/12 | 55/18 57/24 60/23 | 23/3 36/21 38/3 38/25 | 23/21 27/16 32/24 |
| wanted [5] 18/1 18/2 | 60/25 61/14 64/14 | 46/23 48/8 49/3 78/7 | 51/22 56/19 56/21 |
| 31/8 64/1 65/17 | 64/15 65/1 67/4 73/17 | wife [1] 37/15 | 59/11 70/7 74/21 74/25 |
| wanting [1] 9/2 | 75/4 75/16 | will [24] 3/20 4/8 5/17 | year [6] 4/21 4/21 |
| wants [4] 15/6 15/12 | West [3] 52/22 56/11 | 9/4 13/12 20/3 24/15 | 49/10 61/24 62/3 62/5 |
| 38/3 64/2 | 56/19 | 24/22 29/17 29/22 | years [3] 8/25 14/15 |
| warehouses [1] 41/10 | Westlaw [1] 41/1 | 31/25 35/7 38/18 39/13 | 14/15 |
| warranted [1] 17/17 | what [108] | 39/18 44/7 44/8 45/9 | yes [16] 4/2 11/19 |
| warranty [3] 39/17 | what's [5] 15/21 28/17 | 71/4 76/14 76/15 76/23 | 12/21 18/11 19/9 29/12 |
| was [151] | 52/25 68/18 68/23 | 77/10 77/21 | 45/19 51/8 53/22 55/1 |
| Washington [4] 50/14 | whatever [8] 6/1 6/9 | William [2] 1/16 2/10 | 56/4 56/17 57/20 60/14 |
| 50/16 52/11 52/22 | 7/14 11/15 22/4 22/9 | willing [1] 42/3 | 67/8 76/2 |
| wasn't [11] 7/2 12/9 | 31/8 71/18 | window [1] 61/15 | yesterday [1] 7/3 |
| 13/20 14/7 14/7 23/1 | whatsoever [2] 43/4 | wish [4] 74/25 77/21 | yet [1] 33/15 |
| 35/2 42/9 54/11 55/14 | 43/6 | 78/20 78/20 | you [271] |
| 66/21 | WHEEL [5] 1/6 2/9 | within [2] 14/14 14/15 | You'll [1] 33/20 |
| watch [1] 76/4 | 3/11 3/19 3/22 | without [13] 8/6 8/6 9/1 | you're [26] 8/20 8/25 |
| watched [1] 76/1 | wheelhouse [1] 3/24 | 14/3 17/8 18/13 55/13 | 12/3 13/22 14/18 15/25 |
| water [1] 71/7 | when [31] 5/3 5/4 7/1 | 66/22 66/24 76/22 77/1 | 17/23 28/3 38/1 38/21 |
| way [26] 5/11 6/1 9/21 | 7/3 11/5 11/17 12/19 | 77/9 77/15 | 45/24 46/12 51/3 53/17 |
| 13/18 13/21 15/6 15/11 | 20/4 20/6 27/1 27/1 | Wizard [1] 40/20 | 56/2 56/14 56/23 61/6 |
| 22/18 23/3 23/4 26/4 | 30/13 31/3 31/17 32/13 | WL [1] 41/1 | 64/22 67/22 69/24 |
| 26/9 35/3 50/6 52/6 | 36/22 41/4 48/2 48/24 | WMR [2] 1/5 1/11 | 70/12 71/2 73/24 74/7 |
| 52/7 53/20 53/22 54/14 | 53/25 54/16 56/11 | Wong [1] 69/9 | 74/9 |
| 54/19 73/12 75/17 | 57/19 62/12 62/20 63/3 | word [5] 11/20 11/25 | you've [9] 5/5 23/16 |
| 78/12 78/23 79/4 79/6 | 64/5 70/11 71/6 71/14 | 27/2 43/7 50/4 | 23/17 28/6 40/20 41/6 |
| ways [2] 21/5 22/25 | 74/8 | wording [1] 27/7 | 69/23 72/4 72/7 |
| we [104] | where [26] 13/9 13/10 | words [2] 34/3 70/16 | young [3] 71/2 75/23 |
| we'd [1] 74/4 | 15/13 17/9 22/8 24/23 | work [3] 37/22 52/6 | 76/2 |
| we'll [4] 7/15 14/7 77/9 | 28/1 30/6 31/7 34/4 | 79/6 | your [115] |
| 77/18 | 36/12 37/20 38/1 43/23 | working [1] 14/18 | yours [1] 73/2 |
| we're [32] 11/8 12/23 | 54/13 55/18 57/2 58/7 | works [2] 8/21 53/23 | |